ALLMTN,APPEAL,JD1,MAGR,NP ProSe,TERMED

# U.S. District Court – District of Colorado
# District of Colorado (Denver)
# CIVIL DOCKET FOR CASE #: 1:23−cv−01875−GPG−KAS

Amarsingh v. Frontier Airlines

Assigned to: District Judge Gordon P Gallagher

Referred to: Magistrate Judge Kathryn A. Starnella

Demand: $115,000,000

Case in other court:  U.S. Court of Appeals, 10th Cir.,
                       24−01391

Cause: 42:1983 Civil Rights Act

Date Filed: 07/24/2023

Date Terminated: 09/24/2024

Jury Demand: Plaintiff

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

**Plaintiff**

Kusmin L. Amarsingh

represented by  **Kusmin L. Amarsingh**
5 Magnolia Drive
Mary Esther, FL 32569
862−201−1305
PRO SE

V.

**Defendant**

Frontier Airlines, Inc.

represented by  **Brian Timothy Maye**
Fitzpatrick Hunt & Pagano LLP
10 South LaSalle Street
Suite 3400
Chicago, IL 60603
312−728−4905
Email: brian.maye@fitzhunt.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/29/2023 | 25 | REPLY to Response to 22 MOTION to Dismiss filed by Defendant Frontier Airlines, Inc.. (Maye, Brian) (Entered: 11/29/2023) |
| 12/01/2023 | 26 | MOTION for Appointment of Counsel, by Plaintiff Kusmin L. Amarsingh. (angar, ) (Entered: 12/01/2023) |
| 12/01/2023 | 27 | MEMORANDUM regarding 22 MOTION to Dismiss filed by Frontier Airlines, Inc. AND 26 MOTION to Appoint Counsel filed by Kusmin L. Amarsingh. Motions referred to Magistrate Judge Kathryn A. Starnella, by District Judge Gordon P Gallagher on 12/1/2023. Text Only Entry (angar, ) (Entered: 12/01/2023) |
| 12/06/2023 | 28 | Request for Court to Consider Supplemental Evidence by Plaintiff Kusmin L. Amarsingh. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(schap, ) (Entered: 12/07/2023) |
| 12/08/2023 | 29 | |

| | | MEMORANDUM regarding 28 MOTION for Order to filed by Kusmin L. Amarsingh. Motion referred to Magistrate Judge Kathryn A. Starnella, by District Judge Gordon P Gallagher on 12/8/2023. Text Only Entry (schap, ) (Entered: 12/08/2023) |
|---|---|---|
| 12/19/2023 | 30 | ORDER Denying 26 Motion to Appoint Counsel by Magistrate Judge Kathryn A. Starnella on 19 December 2023.(cmadr, ) (Entered: 12/19/2023) |
| 08/20/2024 | 31 | ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE by Magistrate Judge Kathryn A. Starnella on 20 August 2024. IT IS HEREBY ORDERED that the Motion to Dismiss 22 be GRANTED and the Complaint 14 be DISMISSED WITHOUT PREJUDICE. IT IS FURTHER ORDERED that Plaintiff's Request for the Court to Consider Supplemental Evidence 28 is DENIED AS MOOT. (cmadr, ) (Entered: 08/20/2024) |
| 08/20/2024 | 32 | ORDER by Magistrate Judge Kathryn A. Starnella on 20 August 2024. The Motion to Supplement 28 is DENIED AS MOOT. Text Only Entry. (Entered pursuant to ECF 31 )(cmadr, ) (Entered: 08/20/2024) |
| 08/20/2024 | 33 | AMENDED ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE by Magistrate Judge Kathryn A. Starnella on 20 August 2024. IT IS HEREBY RECOMMENDED that the Motion to Dismiss 22 be GRANTED and the Complaint 14 be DISMISSED WITHOUT PREJUDICE. IT IS ORDERED that Plaintiff's Request for the Court to Consider Supplemental Evidence 28 is DENIED AS MOOT. (cmadr, ) (Entered: 08/20/2024) |
| 08/21/2024 | 34 | ORDER finding as moot 31 Report and Recommendations in light of the 33 Amended Order and Recommendation. By District Judge Gordon P Gallagher on 8/21/2024. Text Only Entry(schap, ) (Entered: 08/21/2024) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:23-cv-01875-GPG-KAS

KUSMIN L. AMARSINGH

      Plaintiff,                         Hon. Gordon P. Gallagher

v.

FRONTIER AIRLINES, INC.,

      Defendant.

---

**DEFENDANT FRONTIER AIRLINES, INC.'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS WITH PREJUDICE**

---

      Defendant, Frontier Airlines, Inc. ("Frontier"), by its undersigned counsel, hereby files this Reply in support of its Rule 12(b)(6) Motion to Dismiss, and in support thereof states as follows:

## I.   <u>INTRODUCTION</u>

      In her Response to Frontier's Rule 12(b)(6) Motion to Dismiss, Plaintiff asserts that she has a valid claim for breach of contract because Frontier overbooked her flight and denied her boarding. These arguments only support Frontier and demonstrate why Plaintiff's claim fails as a matter of law, as the Contract of Carriage permitted Frontier to deny her boarding if her flight was oversold.

      Plaintiff's inability to establish an infringement of her contractual rights further forecloses her ability to recover under 42 U.S.C. § 1981, as she cannot show an "actual loss of a contract" or interference with a protected activity under a contract. *See Shawl v. Dillard's Inc.,* 17 F. App'x 908, 911-12 (10th Cir. 2001). Moreover, Plaintiff's assertion that a "mixed-race gentleman" was denied boarding undermines her overarching theory that Frontier discriminated against her by providing preferential treatment to African Americans. Indeed, Plaintiff's own allegations reveal

that she was denied boarding for race-neutral reasons. Because allowing Plaintiff to amend her Complaint would be futile, this Court should grant Frontier's Motion and dismiss Plaintiff's claims with prejudice.

## II.     ARGUMENT

### A.     Plaintiff fails to identify a breach of any terms in the Contract of Carriage.

Plaintiff asserts she must "only satisfy [the] simple pleading requirements of Fed. R. Civ. P. 8(a) to survive a motion to dismiss." However, the "short and plain" requirement under Rule 8(a) does not mean a complaint can survive without alleging essential facts. While courts accept as true all well-pleaded facts in the complaint, they do not assume the truth of conclusory allegations. *Brooks v. Mentor Worldwide LLC,* 985 F.3d 1272, 1281 (10th Cir. 2021).

In its Motion to Dismiss, Frontier pointed to language in the applicable Contract of Carriage expressly stating that "published schedules" and "flight times" and "seat assignments" were not guaranteed and formed no part of the Contract. Dkt. 22 at 5, Ex. A, Section 17, p. 20. Frontier cited additional sections of the Contract, providing that Plaintiff was entitled to transport on the next available flight on which space was available and establishing the terms for financially compensating a passenger who is involuntarily denied boarding. Dkt. 22 at 5-6. Further, Frontier argued that Plaintiff failed to show how Frontier breached its contract given that Plaintiff admits she declined Frontier's offered flight accommodation and financial compensation and chose to fly with a different airline to accommodate her own specific scheduling needs.

In her response, Plaintiff ignores the points raised by Frontier and quotes an inadmissible document purportedly prepared by the Department of Transportation ("DOT") on the topic of "bumping" passengers from overbooked flights. Dkt. 24-1. Even if this document were appropriate

61560\315430987.v1

for taking judicial notice (it is not), the sections cited by Plaintiff only support Frontier's arguments and support its right to deny her boarding.

Although Plaintiff's Complaint reflects that she did not purchase a seat assignment, she maintains she was a "bumped" passenger rather than a "standby" passenger because she had a confirmed reservation. Dkt. 24 at 4. This is a distinction without a difference for Plaintiff's purposes. Assuming *arguendo* that Plaintiff was "bumped" from her flight and was not classified as a "standby" passenger, the DOT standards cited in her Response do nothing to show how Frontier failed to honor its contractual obligations. Plaintiff asserts that after she was bumped from her flight, Frontier "intentionally withheld notice of rights," but she points to nothing in the Contract establishing that Frontier owed such an obligation and alleges no facts in her Complaint to support her conclusory allegations.

The true impetus for Plaintiff's Complaint is revealed in her assertion that "Frontier knew her travel was more complex than the other passengers." Dkt. 24 at 1. Plaintiff's primary grievance is that she was not provided preferential treatment over the other passengers due to her "more complex" travel schedule. However, Frontier's contractual obligations did not include catering to Plaintiff's specific scheduling needs. That Plaintiff was merely inconvenienced does not give rise to her asserted causes of action.

**B.    Plaintiff's racial discrimination claim still fails as a matter of law as Plaintiff cannot refute Frontier's race-neutral explanation for its actions.**

A discrimination claim brought under 42 U.S.C. § 1981 is rendered implausible if the complaint identifies an "independent, non-discriminatory reason" for the alleged discriminatory conduct. *Mohsen Sharifi Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1035 (D. Ariz. 2021); *Astre v. McQuaid*, 804 F. App'x 665, 667 (9th Cir. 2020); see also *Domino v. Kentucky Fried Chicken*, 2020 U.S. Dist. LEXIS 182265 (N.D. Cal. Oct. 1, 2020).

61560\315430987.v1

Here, Frontier has identified multiple legitimate, non-discriminatory reasons for its decision to deny Plaintiff boarding: (1) the flight was overbooked, and Plaintiff did not pay to receive a seat assignment; and (2) Frontier endeavors to keep passengers together who are flying in groups. Dkt. 22 at 10. Instead of attempting to refute Frontier's reasonable explanations for denying her boarding, Plaintiff merely reiterates her conclusory allegations from her Complaint that Frontier "racially profiled her" by "confirming she was not African American," and then "hand selected only African-Americans…to board, leaving all the non-African Americans passengers behind to fend for themselves." Dkt. 24 at p. 2.

Not only are Plaintiff's racial profiling allegations pure conjecture, but they do not give rise to a claim of intentional racial discrimination. Moreover, Plaintiff's claim that she was racially profiled is contradicted by her allegations as to who was denied boarding. As alleged in Plaintiff's Complaint, in addition to another woman of "Indian descent," the passengers who were denied boarding possessed the following racial characteristics:

> Among the people waiting for seat assignments were approximately six passengers, who either were or appeared to be Hispanic, one male passenger, who was or appeared to be White, and a gentleman who was or appeared to part of African American. Additionally, there was an apparent Asian woman traveling with a child, accompanied by a white female. Dkt. 14 at p. 5.

Of these individuals, only the Asian woman traveling with a child was allowed to board the flight – in addition to the family of 8-10 African Americans. Thus, viewing Plaintiff's allegations in the most favorable light, the makeup of the involved passengers was as follows:

- Permitted Boarding: 8-10 African Americans, 1 Asian adult, and one child

- Denied Boarding: 6 Hispanic individuals, 2 Indian individuals, 2 Caucasian individuals, and 1 "mixed race" or "partially" African American individual

Plaintiff can state no plausible claim for racial discrimination under these facts, which establish only that she was among a racially diverse group of passengers who were denied boarding

4

pursuant to the terms of their Contracts of Carriage. This Court should dismiss Plaintiff's claim for racial discrimination – with prejudice – because she cannot show that Frontier intentionally discriminated against her based on her race, and that the alleged discrimination was the "but-for" cause of her failure to receive a seat assignment. *See Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020).

### III.    <u>CONCLUSION</u>

For the foregoing reasons, Frontier Airlines, Inc., respectfully requests that this Court enter an Order dismissing the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), and for such further relief as this Court deem just and reasonable.

Respectfully submitted this 29th day of November, 2023.

/s/  Brian T. Maye
Brian T. Maye
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Phone: (312) 345-0700
Email: bmaye@hinshawlaw.com

**Attorneys for Defendant,
Frontier Airlines, Inc.**

61560\315430987.v1

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2023, I caused the foregoing to be electronically filed with the United States District Court for the District of Colorado using the CM/ECF system.

/s/  Brian T. Maye_____

61560\315430987.v1

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
11:28 am, Dec 01, 2023
JEFFREY P. COLWELL, CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

KUSMIN L. AMARSINGH

     Plaintiff(s),

v.                   Civil Action No. 1:23-cv-01875-GPG-KAS

FRONTIER AIRLINES, INC.

     Defendant(s).

---

## MOTION FOR APPOINTMENT OF COUNSEL

---

     I, Kusmin Linda Amarsingh, am the plaintiff in this case and am currently a pro se litigant. I am an attorney myself but my experience is limited mainly to military law, some state practice, but zero experience practicing in the Federal District Court.

     As a result, I believe that I am unable to proceed with my claims in this case without the assistance of an attorney with experience litigating in the Colorado Federal District Court. I believe I qualify for the appointment of counsel from the Civil Pro Bono Panel. I am also without the legal resources that is so readily available to Defendants.

     Under the court's Civil Pro Bono Representation rule, D.C.COLO.LAttyR 15, a judicial officer of this court may enter an Appointment Order authorizing appointment by the clerk of a member of the court's Civil Pro Bono Panel when the following considerations weigh in favor of appointment:

(1) the nature and complexity of the action:

Frontier has asked the Court to deny me the leniency it normally provides to pro se litigants because I am an attorney. The Court has not ruled on that request, but without the pro se guidance from the Court, my limited experience will frustrate the process, and more importantly likely result in my failing to adequately represent myself in this Forum. Frontier Airlines breached their contract with me by overbooking my flight and selecting only African American passengers and leaving all non-African Americans behind, including myself. I cannot afford to hire an attorney because a retainer ranges from $10,000 to $15,000. The cost will likely be even higher. This lawsuit should not be a round of stump-the-chump given the seriousness of the allegations, and, effect on the public.

(2) <u>the potential merit of the claims or defenses of the unrepresented party;</u>

The claims here are of utmost importance.  The facts are clear on its face.  Frontier agents hand selected African American passengers ahead of me and about 6 to 8 other non-African American Passengers ahead of us, despite arriving and checking in before the African American passengers.  Additionally, my flight was a connecting flight, the next available flight was one week later.  The African Americans were on one leg of the trip and had a direct flight from Philadelphia to Orlando.  There was another direct flight that would easily accommodate them an hour later at the same gate from Philadelphia to Orlando. *(I will provide pleadings if required, but they are all publicly available on the Court's website).*

(3) <u>the demonstrated inability of the unrepresented party to retain an attorney by other means.</u>

The financial cost of hiring an attorney is just more than I can afford at this time, and given Frontier's financial strength and experience, the seriousness of the claims, and the disparate impact on protected classes i.e. race, nationality, and, financial status.  Freedom of transportation is a Constitutionally protected right, and, the broad discretion with the result that it had in fact is worthy of fighting and winning.  I intend to represent myself and these issues to the best of my ability and only require some assistance with guidance on procedural aspects of my case, and limited appearances at Court.  Of course, I will gladly accept any assistance a Pro Bono Attorney is willing to provide, but I understand that they must also be very busy.  My claims affect millions of Americans and Frontier's rational for their motion to dismiss my claims is that I was merely inconvenienced and not discriminated against and that they followed their carrier contract.  If this case prevails it will affect everyone, not just Indian Americans like myself.  I called the Colorado State Bar for guidance, as well as the Federal Bar Association, and they directed me to the Court's website and this motion.

        and,

(4) <u>the degree to which the interests of justice, including the benefits to the court, will be served by appointment of counsel:</u>

Millions of Americans, of diverse races, and persons of different nationalities the world over, utilize and depend on commercial flights daily.  Lately the industry has seen a lot of budget airlines offering reduced flights and services.  The market served are primarily people who cannot afford the higher priced airlines.  Frontier's argument and application of the terms of their Contract is in direct conflict with the equal protection clause, commerce clause, and the privileges and immunities clause of the United States Constitution.  Even under purely contract terms, they have breached their contract by knowingly and intentionally overbooking their flight and failing to use a reasonable basis for selecting passengers.

The detrimental effect of Frontier prevailing will be major step back in our jurisprudence such that overbroad discretion will continue to discriminate or have disparate impact on persons based on race or nationality.  D.C.COLO.LAttyR 15(f)(1)(B); *Hill v. SmithKline Beecham Corp.,* 393 F.3d 1111, 1115 (10th Cir. 2004).

I am aware that **I am obligated, as a party in this case representing myself, to meet all obligations and deadlines imposed** under the law and the rules of procedure, local rules, and the practice of standards of this court until appointed counsel formally enters an appearance in this case.  I also confirm that I understand that, in the event this motion is granted, **there is no guarantee that appointment of counsel results in an attorney(s) automatically entering an appearance in this case** – only that a member of the Civil Pro Bono Panel will review the case for possible representation.

**WHEREFORE** I respectfully request:

__X_____ **General Representation** – I request that appointment of volunteer counsel be granted by the court for *general* representation in this civil action subject to the rules and procedures set forth in D.C.COLO.LAttyR 15. **OR if unavailable, then:**

___X_____ **Limited Representation** – I request that appointment of volunteer counsel be granted by the court for the *limited* representation purpose of:  Appearances at Court, procedural guidance, and, occasional review of form documents. I understand that counsel's *limited* representation may be allowed in accordance with D.C.COLO.LAttyR 2(b)(1), under the auspices of the Civil Pro Bono Panel program and its benefits.

I confirm that I have conferred with the opposing counsel in good faith regarding this motion, as required under local rule D.C.COLO.LCivR 7.1(a) [1], and that a copy of this motion has been provided to Frontier Airlines through their attorneys.

Dated at:  Mary Esther, Florida, this 1st day December, 2023.

*Kusmin Amarsingh*

Kusmin Amarsingh

Pro Se Plaintiff

862-201-1305

---

[1] [**Note:** Local Rule D.C.COLOLCivR 7.1(a) requires a party (including an unrepresented party) to confer or make reasonable good faith efforts to confer with any opposing counsel or unrepresented party about the subject of their motion before filing the motion and to describe the specific efforts to fulfill this duty. However, the duty to confer is not required under the local rules for a motion filed in a case involving an unrepresented prisoner.]

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Brian Timothy Maye (bmaye@hinshawlaw.com, druane@hinshawlaw.com,
kdierkes@hinshawlaw.com, rharris@hinshawlaw.com), District Judge Gordon P Gallagher
(gallagher_chambers@cod.uscourts.gov, gordon_p_gallagher@cod.uscourts.gov), Magistrate
Judge Kathryn A. Starnella (starnella_chambers@cod.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:9443311@cod.uscourts.gov
Subject:Activity in Case 1:23-cv-01875-GPG-KAS Amarsingh v. Frontier Airlines Memorandum
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 12/1/2023 at 5:05 PM MST and filed on 12/1/2023

**Case Name:**    Amarsingh v. Frontier Airlines

**Case Number:**    1:23–cv–01875–GPG–KAS

**Filer:**

**Document Number:**  27(No document attached)

**Docket Text:**
 **MEMORANDUM regarding [22] MOTION to Dismiss filed by Frontier Airlines, Inc. AND [26] MOTION to Appoint Counsel filed by Kusmin L. Amarsingh. Motions referred to Magistrate Judge Kathryn A. Starnella, by District Judge Gordon P Gallagher on 12/1/2023. Text Only Entry (angar, )**

**1:23–cv–01875–GPG–KAS Notice has been electronically mailed to:**

Brian Timothy Maye    bmaye@hinshawlaw.com, druane@hinshawlaw.com, kdierkes@hinshawlaw.com, rharris@hinshawlaw.com

**1:23–cv–01875–GPG–KAS Notice has been mailed by the filer to:**

Kusmin L. Amarsingh
5 Magnolia Drive
Mary Esther, FL 32569

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

KUSMIN L. AMARSINGH

    Plaintiff(s),

v.

FRONTIER AIRLINES, INC.

    Defendant(s).

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
10:48 am, Dec 06, 2023
**JEFFREY P. COLWELL, CLERK**

Civil Action No. 1:23-cv-01875-GPG-KAS

---

**REQUEST FOR COURT TO CONSIDER SUPPLEMENTAL EVIDENCE**

---

    I, Kusmin Linda Amarsingh, respectfully request permission to provide the Court with reliable and self-authenticated evidence to the Court in support of my complaint and deciding the motion to dismiss in this case.

**Nature of the evidence:**

    1.  <u>United States Bureau of Transportation Statistics for 13 June 2023</u>:  The schedule shows the number and frequency of flights from Philadelphia to Orlando and Philadelphia to St. Louis flight schedule for 13 June 2023.  There were in fact two additional direct flights from Philadelphia to Orlando that could accommodate the passengers that were boarded ahead of me, and the other non-African American passengers.  This evidence is derived from the 'Bureau of Transportation Statistics' which is an official US Government Agency.

    2.  <u>Plaintiff's Frontier Airlines Trip Confirmation</u>:  My frontier flight confirmation for 13 June 2023 scheduled for 1700 and for which I checked two hours prior, arrived at the gate well before the boarded passengers, and, having paid significantly more.

    Despite my past concerted efforts, this evidence was unknown until today, December 6, 2023, and is critical to deciding the merits of my case.  This request is made in good faith.

    Dated at:  Mary Esther, Florida, this 6th day December 2023.  I certify that a copy of this request has been provided to opposing counsel via email on December 6th 2023.

*Kusmin Amarsingh*

Kusmin Amarsingh

Pro Se Plaintiff

862-201-1305

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*10:50 am, Dec 06, 2023*
**JEFFREY P. COLWELL, CLERK**

Search

BTS> Interliner
Airline On-Time Statistics

## Detailed Statistics Departures

NOTE: Due to the large amount of data to be searched, time period should be limited to a maximum total of 31 days for any combination of Month, Date and Year. For example: if October, November and December Month checkboxes are selected 1,7,14,21 and 28 Day checkboxes are selected and 1997 Year checkbox is selected, then the total time period is 15 days. Times are reported in local time using a 24 hour clock

Statistics
☑All Statistics
☑Scheduled departure time ☑Actual departure time ☑Scheduled elapsed time
☑Actual elapsed time       ☑Departure delay       ☑Wheels-off time
☑Taxi-Out time             ☑Cause of Delay

Origin Airport Philadelphia, PA: Philadelphia International (PHL)

Airline: Frontier Airlines Inc. (F9)

**Month(s):**
☐All Months
☐Jan  ☐Feb  ☐Mar  ☐Apr  ☐May  ☑Jun
☐Jul  ☐Aug  ☐Sep  ☐Oct  ☐Nov  ☐Dec

**Day(s):**
☐All Days
☐1   ☐2   ☐3   ☐4   ☐5   ☐7   ☐8   ☐9   ☐10
☐11  ☐12  ☑13  ☐14  ☐15  ☐16  ☐17  ☐18  ☐19  ☐20
☐21  ☐22  ☐23  ☐24  ☐25  ☐26  ☐27  ☐28  ☐29  ☐30
☐31

**Year(s):**
☐All Years
☐1987  ☐1988  ☐1989  ☐1990  ☐1991  ☐1992
☐1993  ☐1994  ☐1995  ☐1996  ☐1997  ☐1998
☐1999  ☐2000  ☐2001  ☐2002  ☐2003  ☐2004
☐2005  ☐2006  ☐2007  ☐2008  ☐2009  ☐2010
☐2011  ☐2012  ☐2013  ☐2014  ☐2015  ☐2016
☐2017  ☐2018  ☐2019  ☐2020  ☐2021  ☐2022
☑2023

[ Reset ]  [ Submit ]

Origin Airport Philadelphia, PA: Philadelphia International (PHL)
Airline: Frontier Airlines Inc. (F9)
Month(s): June
Day(s): 13
Year(s): 2023

NOTE: A complete listing of airline and airport abbreviations is available. Times are reported in local time using a 24 hour clock.
Airlines began reporting tarmac times for cancelled and diverted flights in October 2008. Tarmac times for cancelled or diverted flights operated prior to Oct. 1, 2008 are not available. Cause of delay data is available on this database beginning with flights operated
Cause of Delay reporting, see Understanding the Reporting of Causes of Flight Delays and Cancellations.
All Causes of Delay (in minutes) are referring to the Arrival Delay.

### Displaying Items 1 - 27 of 27

Excel | CSV

| Carrier Code | Date (MM/DD/YYYY) | Flight Number | Tail Number | Destination Airport | Scheduled departure time | Actual departure time | Scheduled elapsed time (Minutes) | Actual elapsed time (Minutes) | Departure delay (Minutes) | Wheels-off tim |
|---|---|---|---|---|---|---|---|---|---|---|
| F9 | 06/13/2023 | 0155 | N712FR | ATL | 06:05 | 05:59 | 134 | 137 | -6 | 06: |
| F9 | 06/13/2023 | 0511 | N230FR | DEN | 05:30 | 05:37 | 254 | 238 | 7 | 05: |
| F9 | 06/13/2023 | 0519 | N376FR | DEN | 20:45 | 20:35 | 258 | 270 | -10 | 20: |
| F9 | 06/13/2023 | 1185 | N333FR | MCO | 07:59 | 08:52 | 154 | 138 | 53 | 09: |
| F9 | 06/13/2023 | 1187 | N706FR | MCO | 13:20 | 13:11 | 157 | 151 | -9 | 13: |
| F9 | 06/13/2023 | 1188 | N388FR | MCO | 18:32 | 18:26 | 159 | 149 | -6 | 18: |
| F9 | 06/13/2023 | 1171 | N348FR | MCO | 17:00 | 17:58 | 161 | 149 | 58 | 18: |
| F9 | 06/13/2023 | 1173 | N328FR | MCO | 05:30 | 06:20 | 153 | 148 | 50 | 06: |
| F9 | 06/13/2023 | 1175 | N330FR | MCO | 21:34 | 21:57 | 159 | 162 | 23 | 22: |
| F9 | 06/13/2023 | 1651 | N324FR | RDU | 10:48 | 11:17 | 92 | 88 | 29 | 11: |
| F9 | 06/13/2023 | 1653 | N719FR | RDU | 13:33 | 13:25 | 87 | 112 | -8 | 13: |
| F9 | 06/13/2023 | 1707 | N386FR | CVG | 14:14 | 14:05 | 113 | 112 | -9 | 14: |
| F9 | 06/13/2023 | 2143 | N713FR | LAS | 19:03 | 18:54 | 335 | 327 | -9 | 18: |
| F9 | 06/13/2023 | 2298 | N610FR | FLL | 06:00 | 05:58 | 189 | 171 | -2 | 06: |
| F9 | 06/13/2023 | 2297 | N229FR | FLL | 12:35 | 12:44 | 187 | 169 | 9 | 12: |
| F9 | 06/13/2023 | 2303 | N384FR | DFW | 12:52 | 12:49 | 220 | 259 | -3 | 13: |
| F9 | 06/13/2023 | 2315 | N230FR | CLT | 17:26 | 17:17 | 109 | 109 | -9 | 17: |
| F9 | 06/13/2023 | 2327 | N367FR | MIA | 12:00 | 16:51 | 185 | 185 | -9 | 19: |
| F9 | 06/13/2023 | 2347 | N346FR | PBI | 09:32 | 10:42 | 162 | 150 | 70 | 11: |
| F9 | 06/13/2023 | 2356 | N371FR | RSW | 21:32 | 21:20 | 181 | 180 | -12 | 21: |
| F9 | 06/13/2023 | 2363 | N371FR | SAV | 18:05 | 18:03 | 131 | 118 | -2 | 18: |
| F9 | 06/13/2023 | 2375 | N322FR | TPA | 12:19 | 12:13 | 157 | 157 | -6 | 12: |
| F9 | 06/13/2023 | 2377 | N346FR | TPA | 18:37 | 18:25 | 169 | 160 | -12 | 18: |
| F9 | 06/13/2023 | 2385 | N353FR | ATL | 19:48 | 20:31 | 138 | 141 | 46 | 20: |
| F9 | 06/13/2023 | 4802 | N376FR | SJU | 08:40 | 13:07 | 236 | 277 | 87 | 13: |
| F9 | 06/13/2023 | 4864 | N324FR | SJU | 15:54 | 15:45 | 236 | 248 | -9 | 15: |
| F9 | 06/13/2023 | 4870 | N704FR | JAX | 10:31 | 11:58 | 140 | 124 | 87 | 12: |

SOURCE: Bureau of Transportation Statistics

Bureau of Transportation Statistics

| Carrier | Date | Flight | Tail | Origin | Sched Dep | Actual Dep | | | | Wheels-off tm |
|---|---|---|---|---|---|---|---|---|---|---|
| F9 | 06/13/2023 | 0044 | N808FR | ORD | 07:45 | 07:38 | 185 | 180 | -7 | 07:5 |
| F9 | 06/13/2023 | 0678 | N338FR | TTN | 12:06 | 12:02 | 187 | 136 | -7 | 12: |
| F9 | 06/13/2023 | 0678 | N377FR | DEN | 19:15 | 19:21 | 252 | 264 | 6 | 19:4 |
| F9 | 06/13/2023 | 0683 | N379FR | DEN | 11:15 | 11:27 | 247 | 288 | 12 | 11:4 |
| F9 | 06/13/2023 | 0801 | N315FR | DFW | 21:01 | 21:18 | 180 | 193 | 15 | 21: |
| F9 | 06/13/2023 | 0804 | N232FR | TTN | 19:34 | 23:48 | 180 | 134 | 254 | 00:6 |
| F9 | 06/13/2023 | 0862 | N375FR | CLT | 13:51 | 13:55 | 108 | 107 | 4 | 14: |
| F9 | 06/13/2023 | 1011 | N377FR | ATL | 06:30 | 06:21 | 95 | 98 | -9 | 06:4 |
| F9 | 06/13/2023 | 1013 | N706FR | ATL | 18:10 | 18:01 | 101 | 164 | -9 | 18:2 |
| F9 | 06/13/2023 | 1042 | N377FR | CLE | 11:29 | 11:42 | 156 | 152 | 13 | 12:0 |
| F9 | 06/13/2023 | 1046 | N723FR | CLE | 22:02 | 23:41 | 158 | 153 | 99 | 23:5 |
| F9 | 06/13/2023 | 1048 | N238FR | CLE | 14:56 | 16:29 | 158 | 142 | 93 | 16:4 |
| F9 | 06/13/2023 | 1054 | N342FR | CMH | 18:34 | 20:25 | 145 | 137 | 111 | 20:4 |
| F9 | 06/13/2023 | 1062 | N330FR | CVG | 11:29 | 12:07 | 137 | 134 | 38 | 12:2 |
| F9 | 06/13/2023 | 1064 | N375FR | CVG | 21:54 | 00:20 | 139 | 128 | 146 | 00:3 |
| F9 | 06/13/2023 | 1096 | N236FR | ISP | 21:58 | 22:48 | 166 | 141 | 50 | 23:0 |
| F9 | 06/13/2023 | 1098 | N717FR | ISP | 07:40 | 07:40 | 162 | 142 | 0 | 07:5 |
| F9 | 06/13/2023 | 1103 | N306FR | LAS | 09:45 | 10:24 | 302 | 307 | 39 | 10:3 |
| F9 | 06/13/2023 | 1105 | N386FR | LAS | 23:14 | 23:07 | 295 | 302 | -7 | 23:2 |
| F9 | 06/13/2023 | 1151 | N709FR | ONT | 17:43 | 17:49 | 321 | 343 | 6 | 18:0 |
| F9 | 06/13/2023 | 1158 | N236FR | ORF | 08:53 | 10:50 | 125 | 124 | 117 | 11:0 |
| F9 | 06/13/2023 | 1162 | N704FR | PHL | 06:57 | 07:12 | 154 | 147 | 15 | 07:2 |
| F9 | 06/13/2023 | 1164 | N229FR | PHL | 08:57 | 08:55 | 156 | 137 | -2 | 09:0 |
| F9 | 06/13/2023 | 1166 | N386FR | PHL | 10:49 | 10:40 | 155 | 141 | -9 | 10:5 |
| F9 | 06/13/2023 | 1168 | N378FR | PHL | 18:18 | 16:13 | 161 | 138 | 16 | 19:0 |
| F9 | 06/13/2023 | 1170 | N330FR | PHL | 18:06 | 18:22 | 158 | 162 | 59 | 21:5 |
| F9 | 06/13/2023 | 1172 | N348FR | PHL | 20:40 | 21:39 | 161 | 155 | -7 | 10:0 |
| F9 | 06/13/2023 | 1190 | N721FR | RDU | 08:57 | 09:50 | 112 | 89 | 3 | 16:5 |
| F9 | 06/13/2023 | 1192 | N721FR | RDU | 15:46 | 15:49 | 112 | 100 | 4 | 20:0 |
| F9 | 06/13/2023 | 1195 | N328FR | SAN | 19:20 | 19:24 | 310 | 339 | -4 | 07:5 |
| F9 | 06/13/2023 | 1206 | N611FR | BDL | 07:45 | 07:41 | 189 | 155 | 78 | 23:2 |
| F9 | 06/13/2023 | 1211 | N605FR | STL | 22:02 | 23:20 | 147 | 151 | -8 | 09:0 |
| F9 | 06/13/2023 | 1214 | N378FR | SYR | 08:53 | 08:47 | 172 | 164 | 0 | 06:2 |
| F9 | 06/13/2023 | 1238 | N375FR | BOS | 06:00 | 06:00 | 182 | 172 | -9 | 17:0 |
| F9 | 06/13/2023 | 1242 | N396FR | BWI | 16:56 | 16:47 | 143 | 133 | 39 | 12:2 |
| F9 | 06/13/2023 | 1247 | N353FR | DFW | 11:40 | 12:19 | 183 | 181 | 37 | 12:5 |
| F9 | 06/13/2023 | 1251 | N342FR | IAH | 11:57 | 12:34 | 181 | 216 | -5 | 19:2 |
| F9 | 06/13/2023 | 1267 | N716FR | PHX | 19:15 | 19:10 | 206 | 265 | -3 | 14:2 |
| F9 | 06/13/2023 | 1334 | N316FR | LGA | 14:22 | 14:19 | 172 | 145 | 74 | 21:5 |
| F9 | 06/13/2023 | 1737 | N338FR | SFO | 20:25 | 21:30 | 349 | 370 | 11 | 23:4 |
| F9 | 06/13/2023 | 4842 | N717FR | SJU | 23:19 | 23:30 | 173 | 163 | -1 | 06:1 |
| F9 | 06/13/2023 | 4844 | N616FR | SJU | 06:00 | 05:59 | 173 | 173 | 333 | 15:1 |
| F9 | 06/13/2023 | 4846 | N605FR | SJU | 09:30 | 15:03 | 176 | 163 | -6 | 07:0 |
| F9 | 06/13/2023 | 4882 | N316FR | BQN | 06:50 | 06:44 | 168 | 168 | -5 | 08:5 |
| F9 | 06/13/2023 | 4890 | N396FR | PSE | 08:41 | 08:36 | 177 | 172 | | |

SOURCE: Bureau of Transportation Statistics



**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO
10:50 am, Dec 06, 2023
JEFFREY P. COLWELL, CLERK

Kusmin Amarsingh <kusminamarsingh@gmail.com>

---

## Fwd: It's time to check in for your flight to St. Louis
1 message

---

**Linda Amarsingh** <lindaamarsingh@gmail.com>                    Wed, Dec 6, 2023 at 9:19 AM
To: Kusmin Amarsingh <kusminamarsingh@gmail.com>

Sent from my iPhone

Begin forwarded message:

**From:** Frontier Airlines <flights@emails.flyfrontier.com>
**Date:** June 12, 2023 at 4:41:36 PM CDT
**To:** lindaamarsingh@gmail.com
**Subject: It's time to check in for your flight to St. Louis**
**Reply-To:** Frontier Airlines <flights.email@flyfrontier.com>

Your confirmation code: **HIUY6R**
Last name: **Amarsingh**
Manage your trip

# TIME TO CHECK-IN!

Thank you for choosing Frontier with your Priceline booking.
It's almost time to fly - You can check-in online now!

## CHECK-IN NOW!



### ARRIVE AT THE AIRPORT PREPARED!

NEW!!! Pre-purchase your bags and seats NOW and secure your
boarding pass on our website or mobile app. **Assistance from an
airport agent will now cost you $25.**

MANAGE MY BOOKING



**GO MOBILE:** Download our app to get your mobile boarding pass.

 

**PRINT AT HOME:** Complete online check-in to get your printable boarding pass.



### PLANNING ON BRINGING A CARRY ON?

Alert: You will be denied boarding unless you pay for your bag.

**Pay for your bags now for the best price!** A carry-on bag is anything larger than a personal item (14H" x 18W" x 8D").

BUY BAGS NOW

**Did you buy your bags? Get the best deal when you buy online!**

☑ 1 free personal item that must be no larger than *14H" x 18W" x 8D"*

☐ I bought my carry-on bag(s)

☐ I bought my checked bag(s)

**Checked bags can be up to 40lbs.** Need more weight? You can add additional weight for your bag online now.

ADD MORE BAGS

## DEPARTURE AIRPORT DETAILS

**Philadelphia International Airport (PHL)**

**Address:** 8000 Essington Ave, Philadelphia, PA 19153
**Website:** phl.org

## ARRIVAL AIRPORT DETAILS

**St. Louis Lambert International Airport (STL)**

**Address:** 10701 Lambert International Blvd, St. Louis, MO 63145

Website: www.flystl.com

# DAY OF TRAVEL TIMELINE

**Arrive at airport: 3:00 PM**
Get to the airport **2** hr. before your flight.

**Drop off your checked bags and make sure you have your boarding pass: 4:15 PM**
Bag drop off closes 45 min. before your flight. Be sure to buy your bags now online, bags cost more at the airport.

**Boarding begins: 4:30 PM**
Your seat is assigned and on your boarding pass. Want a better seat? Upgrade online now!

**Doors close: 4:45 PM**
Doors close 15 min. before your flight. Get ready for takeoff!

**Flight Departs: 5:00 PM**
Enjoy your flight. Thanks for flying Frontier!

*Please note:* The time and flight details are accurate as of when this email was sent. For up to the minute information on your flight, check your current flight status.

# YOUR TRIP



**Departing Flights 1171 & 1211**
Jun. 13, 2023

| PHL | | MCO | ✈ | MCO | | STL |
|---|---|---|---|---|---|---|
| 5:00 PM | | 7:41 PM | | 10:02 PM | | 11:29 PM |

🕐 **Total Time:** 7 hrs 29 min | 1 Stop (MCO)
*MCO: 2 hrs 21 min layover*

**Kusmin Amarsingh**

Carry-On: 0 | Checked Bag(s): 0

**Seat Assignment:**
PHL to MCO: Not Assigned
MCO to STL: Not Assigned

**LOOKING FOR TRAVEL INSURANCE?**
Protect your trip with Travel Guard™ travel insurance

**Be Prepared!**
Pack a travel insurance plan.

AIG®

GET A QUOTE

18

BOOK A FLIGHT                    ONLINE DEALS                    MANAGE TRAVEL



CONNECT WITH US                          DOWNLOAD THE APP

             

You are receiving this email because of account activity with Frontier Airlines.
Privacy Policy

This message was sent to lindaamarsingh@gmail.com
©2023 Frontier Airlines. All Rights Reserved.
4545 Airport Way | Denver, CO 80239

**Tips to assist with your travel planning:**

Want more legroom? We have it! STRETCH seating is now available on all our airplanes. Learn More.

Rental Cars: Choose from Avis or Budget, all from one easy search! Rent a Car. Book Now.

**Terms and Conditions**

**IMPORTANT: By purchasing you have agreed to our terms and conditions and contract of carriage.**

You can add Checked and Carry-On Bag options, choose pre-assigned seats, and check the status of your flight on Frontier Airlines' mobile app: Android or iOS.

All passengers are permitted to take one personal item not to exceed 14" tall, 18" wide, and 8" long, on-board the aircraft with no additional charge. Visit our carry-on baggage page for details.

Passengers are required to have their boarding pass in hand 45 minutes prior to departure for domestic flights and 60 minutes for international flights. Passengers must be at the designated gate 30 minutes prior to departure.

To contact Customer Relations, visit www.flyfrontier.com/customer-support/ or mail to: Attn: Customer Relations, Frontier Airlines, 4545 Airport Way, Denver, CO 80239

**AIRLINE PASSENGERS WITH DISABILITIES BILL OF RIGHTS**

If you are a passenger with a disability and require special services, please review the Airline Passengers with Disabilities Bill of Rights for more information.

**TERMS AND CONDITIONS FRONTIER AIRLINES MASTER CARD**

1. Offer subject to credit approval. This offer is available through this advertisement and may not be accessible elsewhere. For complete pricing and other details, please see the Terms and Conditions.

This one-time offer is valid for eligible cardmembers. You may not be eligible for this offer if you currently have or previously had an account with us in this program. In addition, you may not be eligible for this offer if, at any time during our relationship with you, we have cause, as determined by us in our sole discretion, to suspect that the account is being obtained or will be used for abusive or gaming activity (such as, but not limited to, obtaining or using the account to maximize rewards earned in a manner that is not consistent with typical consumer activity and/or multiple credit card account applications/openings). Please see the About This Offer section of the Terms and Conditions for important information.

2. Conditions and limitations apply. Please refer to the Frequently Asked Questions section of the website and the Reward Rules within the Terms and Conditions for additional information about the rewards program.

The FRONTIER Airlines World Mastercard[®] is issued by Barclays Bank Delaware (Barclays) pursuant to a license from Mastercard international Incorporated. Mastercard and World Mastercard are registered trademarks, and the circles design is a trademark of Mastercard International Incorporated.

©2020 Barclays Bank Delaware, PO Box 8801, Wilmington DE 19801, Member FDIC.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
10:50 am, Dec 06, 2023
JEFFREY P. COLWELL, CLERK

M Gmail                                      Kusmin Amarsingh <kusminamarsingh@gmail.com>

---

### Fwd: Your Flight Confirmation Code A8722S
1 message

**Linda Amarsingh** <lindaamarsingh@gmail.com>                    Wed, Dec 6, 2023 at 9:19 AM
To: Kusmin Amarsingh <kusminamarsingh@gmail.com>

Sent from my iPhone

Begin forwarded message:

> **From:** Frontier Airlines <flights@emails.flyfrontier.com>
> **Date:** June 4, 2023 at 11:50:22 AM CDT
> **To:** lindaamarsingh@gmail.com
> **Subject: Your Flight Confirmation Code A8722S**
> **Reply-To:** Frontier Airlines <flights.email@flyfrontier.com>

# PURCHASE CONFIRMATION

Thank you for your purchase with us!

Your flight confirmation code is:        A8722S

You can check-in and retrieve your boarding pass 24 hours before your flight.

Need to update or cancel/change your flight?



ACCESS YOUR BOOKING

## PURCHASE SUMMARY

### AMOUNT PAID: $287.95

FLIGHTS                                          Subtotal: $187.96

## DEPARTING FLIGHT 639 & 520



### Pensacola (PNS) to Philadelphia (PHL)

Depart: 6/6/2023 9:33 PM | Arrive: 6/7/2023 1:26 PM
Total Duration: 14 hr 53 min

🕐 This flight arrives 1 day after departure (+1)

#### 1 Stop - Denver (DEN)

**PNS to DEN**
Depart: 6/6/2023 9:33 PM | Arrive: 6/6/2023 11:59 PM
**Layover:** 7 hr 51 min Note: This layover is +6 hours.

**DEN to PHL**
Depart: 6/7/2023 7:50 AM | Arrive: 6/7/2023 1:26 PM

## RETURNING FLIGHT 511 & 638



### Philadelphia (PHL) to Pensacola (PNS)

Depart: 6/12/2023 5:55 AM | Arrive: 6/12/2023 1:23 PM
Total Duration: 8 hr 28 min

#### 1 Stop - Denver (DEN)

**PHL to DEN**
Depart: 6/12/2023 5:55 AM | Arrive: 6/12/2023 8:09 AM
**Layover:** 1 hr 14 min

**DEN to PNS**
Depart: 6/12/2023 9:23 AM | Arrive: 6/12/2023 1:23 PM

## MEMBERSHIPS                                                    $99.99

### DISCOUNT DEN®



**ANNUAL MEMBERSHIP FEE $59.99**
**INITIAL SIGN UP FEE $40.00**

## PASSENGERS

### ADULT(S)



**1 - Kusmin Amarsingh**
*FRONTIER Miles*[sm] *#*: 90095850361

## BUNDLE IT

### BUNDLE AND SAVE



Add the PERKS℠ Bundle and save!
Buy Now And Save!
You get: 1 Carry-on, 1 Checked Bag & Seat Assignment

## SERVICES                                          Subtotal: $0.00

### Self-Service

$0.00 | No Pre-Purchased Airport Agent Assistance

**FREE -** You have chosen Self-Service and will not need assistance from an airport agent. Please download our mobile app or visit flyfrontier.com.

If you prefer Agent Assistance at the airport ticket counter for things like checking in and printing your boarding pass, you may purchase that now. See exclusions.

 Reminder, bags and seats cost more at the airport.

## SEATS                                             Subtotal: $0.00

 **You have not purchased a seat assignment(s)**
You will be randomly assigned seat(s) at check-in.
**Buy Seat Assignments Now!**

## BAGS                                              Subtotal: $0.00

 **You have not purchased bags**
You can bring one personal item no larger than larger than 14"H X 18"W X 8"D.
**Buy Bags Now!**

### LOOKING FOR TRAVEL INSURANCE?
Protect your trip with Travel Guard™ travel insurance

**Be Prepared!**
**Pack a travel insurance plan.**



GET A QUOTE

## PASSENGER OPTIONS & EXTRAS DETAIL

**Kusmin Amarsingh**

Discount Den Sign up Fee                                    $59.99
New Enrollment Fee                                          $40.00

## TAXES AND CARRIER IMPOSED FEES

US Transportation Tax                                       $2.01
Carrier Interface Charge *Non-Refundable                    $23.00
US Passenger Security Fee                                   $5.60
US Domestic Flight Segment Tax                              $4.80
DEN Passenger Facility Charge                               $4.50
Carrier Interface Charge *Non-Refundable                    $23.00
US Domestic Flight Segment Tax                              $4.80
DEN Passenger Facility Charge                               $4.50
US Transportation Tax                                       $1.31
Carrier Interface Charge *Non-Refundable                    $23.00
US Passenger Security Fee                                   $5.60
US Domestic Flight Segment Tax                              $4.80
DEN Passenger Facility Charge                               $4.50
Carrier Interface Charge *Non-Refundable                    $23.00
US Domestic Flight Segment Tax                              $4.80
DEN Passenger Facility Charge                               $4.50

## PURCHASE TOTAL

Airfare                                                     $44.24
Options                                                     $40.00
Memberships                                                 $59.99
Taxes and Carrier-Imposed Fees                              $143.72
**Grand Total**                                             **$287.95**

## PAYMENT: VISA

**Total**                                                   **$287.95**

Payment Date                                                06-04-2023
Payment Type                                                VISA
***Approved***                                              XXXXXXXXXXXX8119



$89 Annual Fee

# EARN UP TO 60,000 BONUS MILES

Enough to redeem for up to 5 domestic one-way tickets with the FRONTIER Airlines World Mastercard® after qualifying account activity. Terms apply.

APPLY NOW

BOOK A FLIGHT          ONLINE DEALS          MANAGE TRAVEL



## CONNECT WITH US

## DOWNLOAD THE APP

  

 

You are receiving this email because of account activity with Frontier Airlines.
Privacy Policy

This message was sent to lindaamarsingh@gmail.com
©2023 Frontier Airlines. All Rights Reserved.
4545 Airport Way | Denver, CO 80239

**AIRLINE PASSENGERS WITH DISABILITIES BILL OF RIGHTS**

If you are a passenger with a disability and require special services, please review the Airline Passengers with Disabilities Bill of Rights for more information.

**Tips to assist with your travel planning:**

Save time at the airport: check in online within 24 hours of your departure.

Want more legroom? We have it! STRETCH seating is now available on all our airplanes. Learn More.

Rental Cars: Choose from Avis or Budget, all from one easy search! Rent a Car. Book Now.

**Terms and Conditions**

**IMPORTANT:** By purchasing you have agreed to our **terms and conditions** and **contract of carriage.**

You can add Checked and Carry-On Bag options, choose pre-assigned seats, and check the status of your flight on Frontier Airlines' mobile app: Android or iOS.

All passengers are permitted to take one personal item not to exceed 14" tall, 18" wide, and 8" deep on-board the aircraft with no additional charge. Visit our carry-on baggage page for details.

BAG OPTION PRICES:

| Purchase Location | Carry-On Bag | 1st Checked Bag | 2nd Checked Bag | >3+ Checked Bag |
|---|---|---|---|---|
| BEST VALUE! At booking on web/mobile | $54 | $54 | $74 | $94 |
| After booking and up to 24 hrs before departure on web/mobile | $64 | $64 | $84 | $104 |
| Customer Support Agent | $79 | $79 | $89 | $95 |
| Web/mobile check-in | $64 | $64 | $84 | $104 |
| Airport ticket counter or self-serve kiosk | $79 | $79 | $89 | $95 |
| Departure gate | $99 | $99 for bags exceeding our size requirements | N/A | N/A |

All prices are per passenger, per direction. A service agent charge of up to $25 per person per direction applies to all agent assisted transactions.

Charges for seating upgrades are charged per flight, including connecting flights in the itinerary.

All Elite members may bring a large carry-on bag for free. All passengers on an Elite 100k members' booking may bring a large carry-on bag and/or may check one bag for free. Active military passengers, subject to verification, may bring one carry-on bag and/or may check up to two bags, which may be oversize and/or overweight, for free. This benefit does not extend to family members or other travelling companions.

PERSONAL ITEM: Personal items can be no larger than 14" tall, 18" wide, and 8" deep.

CARRY-ON BAG SPECIFICATIONS: Carry-On Bags can be no larger than 24" tall, 10" wide, and 16" long (including handles, wheels, and straps) and no heavier than 35 pounds. Any customer who arrives at the gate with a carry-on bag that exceeds the allowable dimensions will be charged the Checked Bag price to gate check the bag.

OVERWEIGHT CHECKED BAGGAGE: $75-$100 per bag, per direction (Non-Refundable) For tickets purchased on or after May 11, 2023, bags weighing 41-50 pounds will be charged $75 per bag, per direction. Bags weighing 51-100 pounds will be charged $100 per bag, per direction. Bags in excess of 100 pounds will not be accepted.

For tickets purchased before May 11, 2023, bags weighing 41-50 pounds will be charged $50 per bag, per direction. Bags weighing 51-100 pounds will be charged $100 per bag, per direction. Bags in excess of 100 pounds will not be accepted

If you purchased your ticket at FlyFrontier.com or through our Reservations Department, you may request a full refund up to 24 hours after the time of purchase if the purchase was made 7 days (168 hours) or more prior to your flight's departure. This ticket may be canceled and refunded at the My Trips section on FlyFrontier.com.

Passengers are required to have their boarding pass in hand 45 minutes prior to departure for domestic flights and 60 minutes for international flights. Passengers must be at the designated gate 30 minutes prior to departure.

You may change an Economy ticket provided that (1) you do so prior to the scheduled flight departure time and (2) you pay any difference between the fare purchased and the fare for the new flight(s) (no refund will apply if the fare of the new ticket is less) plus a service fee. For full details, visit FlyFrontier.com.

If you purchased a Discount Den membership, you can find all details of your subscription on the Membership Terms and Conditions page.

To contact Customer Relations, visit www.flyfrontier.com/customer-support/ or mail to: Attn: Customer Relations, Frontier Airlines, 4545 Airport Way, Denver, CO 80239

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Brian Timothy Maye (bmaye@hinshawlaw.com, druane@hinshawlaw.com,
kdierkes@hinshawlaw.com, rharris@hinshawlaw.com), Magistrate Judge Kathryn A. Starnella
(starnella_chambers@cod.uscourts.gov), District Judge Gordon P Gallagher
(gallagher_chambers@cod.uscourts.gov, gordon_p_gallagher@cod.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:9452508@cod.uscourts.gov
Subject:Activity in Case 1:23-cv-01875-GPG-KAS Amarsingh v. Frontier Airlines Memorandum
```
Content−Type: text/html

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing


The following transaction was entered on 12/8/2023 at 10:39 AM MST and filed on 12/8/2023


**Case Name:**       Amarsingh v. Frontier Airlines

**Case Number:**     <u>1:23−cv−01875−GPG−KAS</u>

**Filer:**

**Document Number:** 29(No document attached)

**Docket Text:**
 **MEMORANDUM regarding [28] MOTION for Order to filed by Kusmin L. Amarsingh. Motion referred to Magistrate Judge Kathryn A. Starnella, by District Judge Gordon P Gallagher on 12/8/2023. Text Only Entry (schap, )**


**1:23−cv−01875−GPG−KAS Notice has been electronically mailed to:**

Brian Timothy Maye     bmaye@hinshawlaw.com, druane@hinshawlaw.com, kdierkes@hinshawlaw.com, rharris@hinshawlaw.com


**1:23−cv−01875−GPG−KAS Notice has been mailed by the filer to:**

Kusmin L. Amarsingh
5 Magnolia Drive
Mary Esther, FL 32569

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01875-GPG-KAS

KUSMIN L. AMARSINGH,

      Plaintiff,

v.

FRONTIER AIRLINES, INC.,

      Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on Plaintiff's **Motion for Appointment of Counsel** [#26][1] (the "Motion"). Plaintiff's Complaint against Defendant Frontier Airlines, Inc. asserts two claims: (1) breach of contract; and (2) racial discrimination in violation of "The Racial Discrimination Act of 1975." *Fifth Amend. Compl.* [#14] at 3-4.

      The Court does not have the power to appoint an attorney without his or her consent, *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 310 (1989), nor does the Court have funds available to pay an attorney who agrees to represent an indigent litigant in a civil case. Nevertheless, the Court can seek volunteer counsel to represent a plaintiff if the Court determines in its discretion that it is appropriate to do so. The Clerk of the Court maintains a list of pro se cases for which the Court is seeking volunteer counsel. Placement on this list does not mean that a plaintiff will automatically

_____

[1] "[#26]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

receive counsel. Rather, placement on the list results in representation being secured for the plaintiff only if an attorney <u>volunteers</u> to represent him or her. Because of the number of cases on the list and the shortage of volunteer attorneys, placement on the list frequently does not result in counsel being obtained. In such circumstances, despite placement of their case on the list, a pro se plaintiff remains responsible for litigating his or her case themselves.

The Court will only seek volunteer counsel for a pro se plaintiff if consideration of the following factors so warrants: (1) the nature and complexity of the action; (2) the potential merit of the pro se party's claims; (3) the demonstrated inability of the pro se party to retain counsel by other means; and (4) the degree to which the interests of justice will be served by appointment of counsel, including the benefit the Court may derive from the assistance of the appointed counsel. *See Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (citing *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991)). As part of the fourth factor, the Court also considers whether there exist any special circumstances such as those in *McCarthy v. Weinberg*, 753 F.2d 836, 837 (10th Cir. 1985), where the pro se plaintiff was confined to a wheelchair, had poor eyesight, suffered from a speech impediment and memory lapses, and had general difficulty in communications. *See Rucks*, 57 F.3d at 979.

In this case, Plaintiff has demonstrated her ability to frame facts and state claims for relief through the pleadings and motions she has filed. The legal issues presented are not overly complex, novel, or particularly difficult to state or analyze. The fact that Plaintiff, who is herself an attorney, has no experience practicing in federal court and cannot afford to hire an attorney because of her financial situation, *see* [#26], have made it difficult for

her to obtain representation does not, by itself, warrant the need for volunteer counsel. Although mindful of the difficulties faced by pro se parties, courts and legislating bodies have made a distinction between civil and criminal cases regarding the necessity of counsel. *See, e.g.*, *Mallard*, 490 U.S. at 301 (1989) ("Congress did not intend § 1915[(e] to license compulsory appointments of counsel[.]"); *Custard v. Turner*, No. 06-cv-01036-WYD-CBS, 2008 WL 4838564, at *1 (D. Colo. Nov. 6, 2008) (noting that the court lacks statutory authority to commit federal funds to "require counsel to represent" an indigent civil litigant).

Plaintiff argues that the claims here "are of the utmost importance" and that the "claims affect millions of Americans and Frontier's rational for their motion to dismiss [Plaintiff's] claims is that [she] was merely inconvenienced and not discriminated against and that they followed their carrier contract." *Motion* [#26] at 2. Although there are extraordinary circumstances where fundamental due process concerns may demand that a plaintiff be provided with counsel, the Court finds that this Plaintiff's particular circumstances do not merit the appointment of counsel in this case.

Plaintiff chose to bring this civil action voluntarily knowing the limitations she would face due to her lack of experience in this forum. To the extent that Plaintiff believes that she cannot bear the responsibility at this time, she may voluntarily dismiss her case without prejudice pursuant to Fed. R. Civ. P. 41(a). However, while the case is pending, it remains Plaintiff's legal obligation to comply with the Federal Rules of Civil Procedure, the Local Rules in this District, and all orders of this Court. *See Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).

Accordingly, based on the foregoing and the entire record in this case, it is hereby **ORDERED** that Plaintiff's Motion [#26] is **DENIED without prejudice**.

The Court notes that the Federal Pro Se Clinic provides **free** legal assistance to people representing themselves in the U.S. District Court for the District of Colorado. The Clinic is located at: Alfred A. Arraj Courthouse (first floor), 901 19th Street, Denver, CO 80294. Pro se litigants are **strongly encouraged** to contact the Federal Pro Se Clinic at **303-380-8786** to make an appointment to speak with a lawyer. Pro se litigants may also make an appointment online (and find additional information) at **www.cobar.org/fpsc/**. The Court notes that Clinic attorneys **cannot** provide representation to pro se litigants and **cannot** appear at hearings on behalf of pro se litigants.  Clinic attorneys may help pro se litigants to prepare complaints and responsive pleadings, provide assistance with other common pleadings, answer procedural questions, and explain legal concepts. Though Plaintiff is a lawyer, because she is representing herself and is unfamiliar with litigating in this forum, *see Motion* [#26] at 1, she may be able to obtain guidance from the Federal Pro Sec Clinic.

Dated: December 19, 2023                    BY THE COURT:

                                            Kathryn A. Starnella
                                            United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01875-GPG-KAS

KUSMIN L. AMARSINGH,

     Plaintiff,

v.

FRONTIER AIRLINES, INC.,

     Defendant.
_____

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

     This matter is before the Court on **Defendant Frontier Airlines, Inc.'s Motion to Dismiss With Prejudice** [#22] (the "Motion to Dismiss"). Plaintiff, an attorney who proceeds in this matter pro se,[1] filed a Response [#24] in opposition to the Motion to Dismiss [#22], and Defendant filed a Reply [#25]. The Motion to Dismiss [#22] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See Memorandum* [#27]. Separately, Plaintiff filed a **Request for the Court to Consider Supplemental Evidence** [#28] (the "Motion to Supplement"), asking the Court to consider additional exhibits as it

---

[1] Generally, the Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). However, here, Plaintiff specifically alleges that she is "a United States Army JAG Attorney." *Fifth Am. Compl.* [#14], ¶ 20. Because she is an attorney, Plaintiff's filings are not entitled to lenient interpretation. *See, e.g.*, *Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007) ("While we generally construe pro se pleadings liberally, . . . the same courtesy need not be extended to licensed attorneys.") (citing *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001)); *McNamara v. Brauchler*, 570 F. App'x 741, 743 n.2 (10th Cir. 2014) (finding no reason to hold a disbarred attorney "to a less stringent standard than other legally trained individuals"). Plaintiff is not entitled to special license or liberal construction.

reviews the Motion to Dismiss [#22]. No responses or replies to the Motion to Supplement [#28] were filed.

The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Motion to Supplement [#28] is **DENIED AS MOOT**. Additionally, the Court **RECOMMENDS** that the Motion to Dismiss [#22] be **GRANTED**, and that the Court decline to exercise supplemental jurisdiction over Plaintiff's breach of contract claim (Claim One).

## I. Background

Unless otherwise stated, all facts in this section come from Plaintiff's Fifth Amended Complaint [#14][2] and are accepted as true for purposes of the Motion to Dismiss [#22]. *See, e.g.*, *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014) (stating that on a Rule 12(b)(6) motion the court must accept all well-pled factual allegations in the complaint as true).

On June 13, 2023, Plaintiff arrived at the airport in Philadelphia, to catch a flight to St. Louis with a connection through Orlando. *Fifth Am. Compl.* [#14], ¶ 1. Plaintiff checked into her flight online, arrived at the departure gate "well before the flight departure time," and waited to board. *Id.*, ¶ 3. Three agents of Defendant Frontier ("Frontier"), all of whom

---

[2] There are five items on the docket entitled "Amended Complaint". *See Amended Complaint* [#2]; *Second Amended Complaint* [#8]; *Amended Complaint* [#11]; *Amended Complaint* [#13]; *Amended Complaint* [#14]. The last two were both filed on August 14, 2023, with some differences between them. *Compare Fourth Amended Complaint* [#13] *and Attachments* [#13-1, #13-2], *with Fifth Amended Complaint* [#14]. The Fourth Amended Complaint [#13] was, notably, unsigned, but there were other changes between the two complaints as well. *See Fourth Am. Compl.* [#13] at 3; *Statement of Claims* [#13-1] (containing 17 paragraphs in Facts section); *Fifth Am. Compl.* [#14] at 4-9 (containing 20 paragraphs in Facts section). Nonetheless, because the Fifth Amended Complaint [#14] was the most recently filed, and because Defendant cited to it in its Motion to Dismiss [#22], the Court considers it to be the operative complaint. *See Motion to Dismiss* [#22] at 2 (citing to "Dkt. 14").

appeared (to Plaintiff) to be African American, were at the boarding gate. *Id.*, ¶¶ 3, 5. Frontier's "lead agent, Mr. Tyron or Tyrone, announced that the flight was overbooked by approximately 10 passengers." *Id.* Frontier's agent asked for volunteers to receive a refund and rebook their flight, and later offered an additional $800.00 for volunteers—but no one volunteered. *Id.* Thereafter, the boarding process began by zone number. *Id.*, ¶ 4. Plaintiff's zone was called and she approached the agent, but she had not been assigned a seat and her boarding pass stated, "Seat: TBD." *Id.*

A Frontier agent directed Plaintiff to the back of the line because only passengers with assigned seats were permitted to board. *Id.*, ¶ 5. Plaintiff requested a seat assignment but was told she needed to wait until after the boarding process. *Id.* Plaintiff encountered several other passengers who awaited seat assignments, including a family of 8 to 10 people who appeared (to Plaintiff) to be African American. *Id.* There were six other passengers waiting for seat assignments, who "either were or appeared to be Hispanic, one male passenger, who was or appeared to be White, and a gentleman who was or appeared to part of [sic] African American," as well as "an apparent Asian woman traveling with a child, accompanied by a white female." *Id.*, ¶ 6.

After all the passengers with assigned seats had boarded, Frontier agents approached the waiting passengers. *Id.*, ¶ 7. "The child and the adult Asian female passenger were given seats and allowed to board" and "the party of 8-10 African American passengers" were also allowed to board. *Id.* After the latter group boarded, Frontier's agents returned to the gate counter. *Id.*, ¶ 8. Plaintiff again approached them, asking about a seat assignment, "hop[ing] to explain and impress upon the agents that [her] flight was a connecting flight, and that there were no alternative/feasible flights for

[her] schedule for at least a week." *Id.* One of the three Frontier agents kept interrupting Plaintiff and would not let her speak. *Id.* Plaintiff alleges that "[o]f the passengers left without seats, none were African American, except the possible mixed race [sic] gentleman [she had] mentioned previously." *Id.*, ¶ 9.  Plaintiff and the other passengers, which included "approximately 5 Hispanic / Spanish Speaking passengers, two of Indian descent, [Plaintiff] being one, and one white male, were told to have a seat and wait [their] turn." *Id.*

The flight departed and the remaining passengers approached the counter. *Id.*, ¶ 10. The "Indian female passenger" went to speak with Frontier's lead agent, who began yelling at her "in what sounded like a mocking Indian accent and while pointing to each passenger in front of him asked her do you think you are more important than her, him, her[.]" *Id.* Frontier's lead agent "kept on speaking in a raised and unprofessional manner" and the other passenger was also told to sit down. *Id.* One of the waiting "male Hispanic passenger[s]" received a meal voucher as, apparently, he had already been bumped from a flight the day before. *Id.*, ¶ 11. A Frontier agent told that man that "tomorrow's flight was similarly overbooked." *Id.*

Eventually, the lead Frontier agent asked all the waiting passengers for their name, email, and phone number to process refunds and compensation, and he stated that they would all receive $400.00 plus the cost of their tickets. *Id.*, ¶ 12. When Plaintiff went to the other Frontier agents, instead of processing everything, they only offered her a refund or to rebook. *Id*. One of the agents was handing out cards "with the link to Frontier's refund." *Id.*, ¶ 13. Plaintiff asked the lead agent for clarification, and he again stated that compensation and a refund would be provided. *Id.*, ¶ 14. After the lead agent left, Plaintiff

waited longer and was told that she would receive an email with her refund information. *Id.*, ¶ 15. The following day, Plaintiff booked a flight home with a different airline because there were no Frontier flights to St. Louis for another week. *Id.*, ¶ 16. She incurred unspecified "costs associated with returning home rather than visiting St. Louis" and "lost approximately $1000.00 in flights" and missed the opportunity to attend her grandson's birth announcement and family reunion. *Id.*

Plaintiff later filed two complaints with Frontier and was told that she had already been refunded her flight; however, Plaintiff claims that she has not accepted or received any compensation or money from Frontier. *Id.*, ¶ 17. She also filed a complaint with the Department of Transportation. *Id.*

Plaintiff claims that Defendant, through its agents, racially discriminated against her because she was not African American. *Id.*, ¶¶ 18-20. She asserts that the Frontier agents "had authority to select which passengers to board based on non-discriminatory characteristics." *Id.* She further claims that her flight ticket was a contract whereby Frontier promised to transport her from Philadelphia to St. Louis on the date and time of her ticket, provided she "substantially perform" by checking into the flight. *Id.*, ¶ 19. She asserts that, even though she "did not contract for a specific seat, neither did many other passengers, and, [she] was still entitled to a seat and transport to [her] final destination unless [she] elected for a refund of [her] ticket which [she] did not." *Id.*

Plaintiff's operative complaint raises two causes of action: breach of contract (Claim One) and racial discrimination (Claim Two). *Id.* at 3; *see also Response* [#24] at 1 (identifying claims). Plaintiff asserts federal question jurisdiction exists, pursuant to 28 U.S.C. § 1331, in connection with her racial discrimination claim, and she asserts diversity

jurisdiction exists, pursuant to 28 U.S.C. § 1332, in connection with her breach of contract claim. *Fifth Am. Compl.* [#14] at 2. Defendant asks the Court to dismiss both claims under Rule 12(b)(6) because Plaintiff "fails to plead sufficient facts to support either cause of action." *Motion to Dismiss* [#22] at 1.

## II.  Standard of Review

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitled to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, [n]or does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6)

motion is not to weigh potential evidence that the parties might present at trial." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III.  Analysis

**A.    Claim Two (Racial Discrimination)**

The Court first considers Plaintiff's second claim for racial discrimination in violation of 42 U.S.C. § 1981, over which the Court has federal question jurisdiction.

Plaintiff alleges that Defendant's agents racially discriminated against her because she was not African American. *See, e.g.*, *Fifth Am. Compl.* [#14], ¶¶ 18-19. She asserts that Defendant violated the "Racial Discrimination Act of 1975"[3] and 42 U.S.C. § 1981. Defendant argues that Plaintiff fails to plausibly allege any racial discrimination because Plaintiff does not adequately allege that race was the but for cause of her alleged injury. *See Motion to Dismiss* [#22] at 8-11.

Under 42 U.S.C. § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" The making and enforcement of contracts includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). These rights "are protected against impairment by nongovernmental discrimination and impairment under color of State law."   42 U.S.C. § 1981(c). By its

---

[3] Defendant points out that the Racial Discrimination Act of 1975 is an Australian law, not an American law, and is thus inapplicable; Plaintiff does not dispute this point. *See Motion to Dismiss* [#22] at 11-12; *Response* [#24] at 2 n.2. Accordingly, the Court focuses its analysis on the § 1981 aspect of Plaintiff's claim.

terms, Section 1981 creates four protected interests: "(1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments." *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989).

To establish a prima facie case of discrimination under § 1981, Plaintiff must show that: (1) she is a member of a protected class; (2) Defendant intended to discriminate against her on the basis of race; and (3) the discrimination interfered with a protected activity as defined in § 1981. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001). These prima facie elements "are flexible and are not to be applied rigidly"; however, Plaintiff still "must show that [D]efendant intentionally discriminated against her." *Id.* at 1102, 1111.

Here, the Court finds that several of Plaintiff's allegations are not entitled to the presumption of truth because they are entirely conclusory, including her allegations that she was specifically targeted because of her race or ethnicity. *See Fifth Am. Compl.* [#14], ¶¶ 18-20; *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (identifying this kind of allegation as conclusory).

Setting the conclusory allegations aside, Plaintiff's well-pleaded factual allegations show that:

- She purchased a ticket with no assigned seat;

- Defendant's lead agent announced that the flight was overbooked by about 10 people;

- Of the people without seat assignments, eventually two groups without seat assignments were boarded: an Asian woman with a baby, and 8 to 10 members of an African American family, of whom "most" did not have assigned seating;

8

- After these two groups were boarded, Plaintiff approached Defendant's agents "to explain and impress upon the agents that [her] flight was a connecting flight, and that there were no other alternative/feasible flights for [her] schedule for at least a week";

- Defendant's agents rudely responded;

- The flight left without her;

- The group of passengers who were not given seats included several Hispanic passengers, a white male, Plaintiff, and another Indian woman;

- Defendant's lead agent yelled at another passenger in "what sounded like a mocking Indian accent" while pointing to each passenger in front of him and asking that other passenger if she thought she was more important than each of them;

- Defendant's agents promised not only refunds but also additional compensation;

- Plaintiff "had to tilt [her] head into [the lead agent's] personal space to hear him";

- Plaintiff never accepted or received a refund from Frontier; and

- Defendant's agents had a passenger log in front of them during boarding, they called out Plaintiff's last name and that of the other woman of Indian descent, and they made a notation on the passenger log before asking them to take a seat.

*Fifth Am. Compl.*, ¶¶ 3-4, 7-10, 12, 14, 17, 19.

Plaintiff plausibly alleges that she is a member of a protected class—a woman of Indian descent. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (stating that, in enacting § 1981, Congress intended to protect "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics"). However, none of the alleged events, even taken as true and viewed in the light most favorable to her, suggest racial discrimination. By her own admission, she and other stand-by passengers were told that the flight was overbooked by about 10

people, and while Defendant was able to board some extra passengers, it could not board them all. *Fifth Am. Compl.* [#14], ¶¶ 7, 10. The group left behind was not just Indian women like Plaintiff, but included a white man, a mixed-race man, and several Hispanic people. *Id.*, ¶ 10. The stand-by passengers who were later permitted to board were also racially diverse. *Id.*, ¶ 7. Nothing suggests that Defendant's agents considered race as they allowed some stand-by passengers to board. By Plaintiff's own admission, no matter which combination of passengers had been boarded and no matter which six passengers had been left behind, each group would have been racially diverse.

The Court declines to infer discrimination arising from a boarding gate agent's calling out a standby passenger's last name, writing something on the passenger log, and then asking her to take a seat. *See Fifth Am. Compl.* [#14], ¶ 19. Even if Defendant's gate agents were unprofessional or rude to Plaintiff and other passengers, that does not demonstrate an intent to discriminate *based on her race*. *See, e.g.*, *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (stating that the defendant's agent "could be unconscionably rude and unfair to [the plaintiff] without violating Title VII").

In sum, Plaintiff fails to plausibly allege intentional or purposeful racial discrimination and, therefore, Claim Two (racial discrimination) should be dismissed for failure to state a claim. *Vu Phan v. State Farm Ins. Co*, No. 17-cv-03073-GPG, 2018 WL 10425417, at *5 (D. Colo. July 30, 2018). Accordingly, the Court **recommends** that Claim Two (racial discrimination) be **dismissed without prejudice**. *See, e.g.*, *id.* (dismissing without prejudice pro se plaintiff's implausibly pleaded § 1981 claims).

**B.     Claim One (Breach of Contract)**

The Court next considers Plaintiff's first claim for breach of contract, over which she asserts diversity jurisdiction exists.

Pursuant to 28 U.S.C. § 1332, a district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"

In the Complaint [#14], Plaintiff represents that she is a citizen of Florida, Defendant is incorporated under Colorado laws and, therefore, the parties are citizens of different states. *Fifth Am. Compl.* [#14] at 2. Plaintiff also represents that the "amount in controversy exceeds $75,000." *Id*. However, closer scrutiny of Plaintiff's breach of contract claim reveals that is not so. Specifically, Plaintiff claims that, due to Defendant's contractual breach, she "lost approximately $1000.00 in flights" and "the opportunity to attend [her] grandson[']s birth announcement and family reunion in his honor." *Id*., ¶ 16. To the extent Plaintiff seeks emotional damages, *see id*. at 10 (requesting "emotional distress" damages), those are not recoverable in a breach of contract claim where the breach was not willful and wanton. *See Brossia v. Rick Constr., L.T.D. Liab. Co.*, 81 P.3d 1126, 1131 (Colo. App. 2003). Plaintiff has not alleged willful and wanton conduct. To the extent that Plaintiff represents the amount in controversy exceeds $75,000 because she seeks "[attorney] fees" if she prevails, *see id*., she has not asserted a "right, based on contract, statute, or legal authority, to an award of attorney's fees if [she] prevails in the litigation[.]" *Gerig v. Krause Publ'ns, Inc.*, 58 F. Supp. 2d 1261, 1264 (D. Kan. 1999) (internal quotation marks and citations omitted). Therefore, any anticipated fee award may not be included in determining whether the jurisdictional minimum is met. *See Plus*

*Sys. Inc. v. New England Network, Inc.*, 804 F. Supp. 111, 116-17 (D. Colo. 1992) (noting well established principle "that attorneys' fees may be included in the amount in controversy for purposes of satisfying the jurisdictional requirement where such fees are provided by statute or contract.") (collecting authorities). That leaves "approximately $1000.00 in flights" as the amount in controversy. Because $1,000 falls well short of the $75,000 jurisdictional threshold, diversity jurisdiction does not exist.

Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" *See also Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (stating, "[once] the bases for federal subject matter jurisdiction have been extinguished . . ., the district court may decline to exercise continuing . . . supplemental jurisdiction over [the] plaintiff's state claims"). Because the Court has recommended dismissal of Plaintiff's 42 U.S.C. § 1981 racial discrimination claim, the Court **further recommends** that the District Judge decline to exercise supplemental jurisdiction over Plaintiff's breach of contract claim (Claim One) and dismiss that claim **without prejudice** pursuant to 28 U.S.C. § 1367(c)(3). *See McDonald v. Sch. Dist. No. 1*, 83 F. Supp. 3d 1134, 1153-54 (D. Colo. 2015) ("Finding no compelling reason to retain jurisdiction, the Court will dismiss plaintiff's remaining claims without prejudice"). Because of the recommendation to dismiss the breach of contract claim without prejudice, the Court **denies as moot** Plaintiff's Request for the Court to Consider Supplemental Evidence [#28].

## IV.  Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion to Dismiss [#22] be **GRANTED** and the Complaint [#14] be **DISMISSED WITHOUT PREJUDICE**.

IT IS FURTHER **ORDERED** that Plaintiff's Request for the Court to Consider Supplemental Evidence [#28] is **DENIED AS MOOT**.

IT IS FURTHER **ORDERED** that any party may file objections Recommendation **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 20, 2024                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Brian Timothy Maye (brian.maye@fitzhunt.com,
kathleen.argus@fitzhunt.com), Magistrate Judge Kathryn A. Starnella
(starnella_chambers@cod.uscourts.gov), District Judge Gordon P Gallagher
(gallagher_chambers@cod.uscourts.gov, gordon_p_gallagher@cod.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:9820790@cod.uscourts.gov
Subject:Activity in Case 1:23-cv-01875-GPG-KAS Amarsingh v. Frontier Airlines Order on
Motion for Order
```
Content–Type: text/html

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 8/20/2024 at 3:27 PM MDT and filed on 8/20/2024

| | |
|---|---|
| **Case Name:** | Amarsingh v. Frontier Airlines |
| **Case Number:** | <u>1:23–cv–01875–GPG–KAS</u> |
| **Filer:** | |
| **Document Number:** | 32(No document attached) |

**Docket Text:**
 **ORDER by Magistrate Judge Kathryn A. Starnella on 20 August 2024. The Motion to Supplement [28] is DENIED AS MOOT. Text Only Entry. (Entered pursuant to ECF [31])(cmadr, )**

**1:23–cv–01875–GPG–KAS Notice has been electronically mailed to:**

Brian Timothy Maye    brian.maye@fitzhunt.com, kathleen.argus@fitzhunt.com

**1:23–cv–01875–GPG–KAS Notice has been mailed by the filer to:**

Kusmin L. Amarsingh
5 Magnolia Drive
Mary Esther, FL 32569

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01875-GPG-KAS

KUSMIN L. AMARSINGH,

    Plaintiff,

v.

FRONTIER AIRLINES, INC.,

    Defendant.

_____

**AMENDED ORDER AND RECOMMENDATION[1] OF UNITED STATES MAGISTRATE
JUDGE**

_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court on **Defendant Frontier Airlines, Inc.'s Motion to
Dismiss With Prejudice** [#22] (the "Motion to Dismiss"). Plaintiff, an attorney who
proceeds in this matter pro se,[2] filed a Response [#24] in opposition to the Motion to
Dismiss [#22], and Defendant filed a Reply [#25]. The Motion to Dismiss [#22] has been
referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B),
Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See Memorandum* [#27].

_____

[1] This amendment corrects Section IV ("Conclusion") to reflect that the undersigned *recommends*
that the Motion to Dismiss [#22] be granted.

[2] Generally, the Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*,
404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). However,
here, Plaintiff specifically alleges that she is "a United States Army JAG Attorney." *Fifth Am.
Compl.* [#14], ¶ 20. Because she is an attorney, Plaintiff's filings are not entitled to lenient
interpretation. *See, e.g.*, *Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007) ("While we
generally construe pro se pleadings liberally, . . . the same courtesy need not be extended to
licensed attorneys.") (citing *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001)); *McNamara v.
Brauchler*, 570 F. App'x 741, 743 n.2 (10th Cir. 2014) (finding no reason to hold a disbarred
attorney "to a less stringent standard than other legally trained individuals"). Plaintiff is not entitled
to special license or liberal construction.

Separately, Plaintiff filed a **Request for the Court to Consider Supplemental Evidence** [#28] (the "Motion to Supplement"), asking the Court to consider additional exhibits as it reviews the Motion to Dismiss [#22]. No responses or replies to the Motion to Supplement [#28] were filed.

The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Motion to Supplement [#28] is **DENIED AS MOOT**. Additionally, the Court **RECOMMENDS** that the Motion to Dismiss [#22] be **GRANTED**, and that the Court decline to exercise supplemental jurisdiction over Plaintiff's breach of contract claim (Claim One).

### I. Background

Unless otherwise stated, all facts in this section come from Plaintiff's Fifth Amended Complaint [#14][3] and are accepted as true for purposes of the Motion to Dismiss [#22]. *See, e.g.*, *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014) (stating that on a Rule 12(b)(6) motion the court must accept all well-pled factual allegations in the complaint as true).

On June 13, 2023, Plaintiff arrived at the airport in Philadelphia, to catch a flight to St. Louis with a connection through Orlando. *Fifth Am. Compl.* [#14], ¶ 1. Plaintiff checked

---

[3] There are five items on the docket entitled "Amended Complaint". *See Amended Complaint* [#2]; *Second Amended Complaint* [#8]; *Amended Complaint* [#11]; *Amended Complaint* [#13]; *Amended Complaint* [#14]. The last two were both filed on August 14, 2023, with some differences between them. *Compare Fourth Amended Complaint* [#13] *and Attachments* [#13-1, #13-2], *with Fifth Amended Complaint* [#14]. The Fourth Amended Complaint [#13] was, notably, unsigned, but there were other changes between the two complaints as well. *See Fourth Am. Compl.* [#13] at 3; *Statement of Claims* [#13-1] (containing 17 paragraphs in Facts section); *Fifth Am. Compl.* [#14] at 4-9 (containing 20 paragraphs in Facts section). Nonetheless, because the Fifth Amended Complaint [#14] was the most recently filed, and because Defendant cited to it in its Motion to Dismiss [#22], the Court considers it to be the operative complaint. *See Motion to Dismiss* [#22] at 2 (citing to "Dkt. 14").

into her flight online, arrived at the departure gate "well before the flight departure time," and waited to board. *Id.*, ¶ 3. Three agents of Defendant Frontier ("Frontier"), all of whom appeared (to Plaintiff) to be African American, were at the boarding gate. *Id.*, ¶¶ 3, 5. Frontier's "lead agent, Mr. Tyron or Tyrone, announced that the flight was overbooked by approximately 10 passengers." *Id.* Frontier's agent asked for volunteers to receive a refund and rebook their flight, and later offered an additional $800.00 for volunteers—but no one volunteered. *Id.* Thereafter, the boarding process began by zone number. *Id.*, ¶ 4. Plaintiff's zone was called and she approached the agent, but she had not been assigned a seat and her boarding pass stated, "Seat: TBD." *Id.*

A Frontier agent directed Plaintiff to the back of the line because only passengers with assigned seats were permitted to board. *Id.*, ¶ 5. Plaintiff requested a seat assignment but was told she needed to wait until after the boarding process. *Id.* Plaintiff encountered several other passengers who awaited seat assignments, including a family of 8 to 10 people who appeared (to Plaintiff) to be African American. *Id.* There were six other passengers waiting for seat assignments, who "either were or appeared to be Hispanic, one male passenger, who was or appeared to be White, and a gentleman who was or appeared to part of [sic] African American," as well as "an apparent Asian woman traveling with a child, accompanied by a white female." *Id.*, ¶ 6.

After all the passengers with assigned seats had boarded, Frontier agents approached the waiting passengers. *Id.*, ¶ 7. "The child and the adult Asian female passenger were given seats and allowed to board" and "the party of 8-10 African American passengers" were also allowed to board. *Id.* After the latter group boarded, Frontier's agents returned to the gate counter. *Id.*, ¶ 8. Plaintiff again approached them,

asking about a seat assignment, "hop[ing] to explain and impress upon the agents that [her] flight was a connecting flight, and that there were no alternative/feasible flights for [her] schedule for at least a week." *Id.* One of the three Frontier agents kept interrupting Plaintiff and would not let her speak. *Id.* Plaintiff alleges that "[o]f the passengers left without seats, none were African American, except the possible mixed race [sic] gentleman [she had] mentioned previously." *Id.*, ¶ 9. Plaintiff and the other passengers, which included "approximately 5 Hispanic / Spanish Speaking passengers, two of Indian descent, [Plaintiff] being one, and one white male, were told to have a seat and wait [their] turn." *Id.*

The flight departed and the remaining passengers approached the counter. *Id.*, ¶ 10. The "Indian female passenger" went to speak with Frontier's lead agent, who began yelling at her "in what sounded like a mocking Indian accent and while pointing to each passenger in front of him asked her do you think you are more important than her, him, her[.]" *Id.* Frontier's lead agent "kept on speaking in a raised and unprofessional manner" and the other passenger was also told to sit down. *Id.* One of the waiting "male Hispanic passenger[s]" received a meal voucher as, apparently, he had already been bumped from a flight the day before. *Id.*, ¶ 11. A Frontier agent told that man that "tomorrow's flight was similarly overbooked." *Id.*

Eventually, the lead Frontier agent asked all the waiting passengers for their name, email, and phone number to process refunds and compensation, and he stated that they would all receive $400.00 plus the cost of their tickets. *Id.*, ¶ 12. When Plaintiff went to the other Frontier agents, instead of processing everything, they only offered her a refund or to rebook. *Id*. One of the agents was handing out cards "with the link to Frontier's

refund." *Id.*, ¶ 13. Plaintiff asked the lead agent for clarification, and he again stated that compensation and a refund would be provided. *Id.*, ¶ 14. After the lead agent left, Plaintiff waited longer and was told that she would receive an email with her refund information. *Id.*, ¶ 15. The following day, Plaintiff booked a flight home with a different airline because there were no Frontier flights to St. Louis for another week. *Id.*, ¶ 16. She incurred unspecified "costs associated with returning home rather than visiting St. Louis" and "lost approximately $1000.00 in flights" and missed the opportunity to attend her grandson's birth announcement and family reunion. *Id.*

Plaintiff later filed two complaints with Frontier and was told that she had already been refunded her flight; however, Plaintiff claims that she has not accepted or received any compensation or money from Frontier. *Id.*, ¶ 17. She also filed a complaint with the Department of Transportation. *Id.*

Plaintiff claims that Defendant, through its agents, racially discriminated against her because she was not African American. *Id.*, ¶¶ 18-20. She asserts that the Frontier agents "had authority to select which passengers to board based on non-discriminatory characteristics." *Id.* She further claims that her flight ticket was a contract whereby Frontier promised to transport her from Philadelphia to St. Louis on the date and time of her ticket, provided she "substantially perform" by checking into the flight. *Id.*, ¶ 19. She asserts that, even though she "did not contract for a specific seat, neither did many other passengers, and, [she] was still entitled to a seat and transport to [her] final destination unless [she] elected for a refund of [her] ticket which [she] did not." *Id.*

Plaintiff's operative complaint raises two causes of action: breach of contract (Claim One) and racial discrimination (Claim Two). *Id.* at 3; *see also Response* [#24] at 1

(identifying claims). Plaintiff asserts federal question jurisdiction exists, pursuant to 28 U.S.C. § 1331, in connection with her racial discrimination claim, and she asserts diversity jurisdiction exists, pursuant to 28 U.S.C. § 1332, in connection with her breach of contract claim. *Fifth Am. Compl.* [#14] at 2. Defendant asks the Court to dismiss both claims under Rule 12(b)(6) because Plaintiff "fails to plead sufficient facts to support either cause of action." *Motion to Dismiss* [#22] at 1.

## II.  Standard of Review

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitled to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, [n]or does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal,*

*Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6)

motion is not to weigh potential evidence that the parties might present at trial." *Sutton v.*

*Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III.  Analysis

**A.      Claim Two (Racial Discrimination)**

The Court first considers Plaintiff's second claim for racial discrimination in

violation of 42 U.S.C. § 1981, over which the Court has federal question jurisdiction.

Plaintiff alleges that Defendant's agents racially discriminated against her because

she was not African American. *See, e.g.*, *Fifth Am. Compl.* [#14], ¶¶ 18-19. She asserts

that Defendant violated the "Racial Discrimination Act of 1975"[4] and 42 U.S.C. § 1981.

Defendant argues that Plaintiff fails to plausibly allege any racial discrimination because

Plaintiff does not adequately allege that race was the but for cause of her alleged injury.

*See Motion to Dismiss* [#22] at 8-11.

Under 42 U.S.C. § 1981(a), "[a]ll persons within the jurisdiction of the United States

shall have the same right in every State and Territory to make and enforce contracts . . .

and to the full and equal benefit of all laws and proceedings for the security of persons

and property as is enjoyed by white citizens[.]" The making and enforcement of contracts

includes "the making, performance, modification, and termination of contracts, and the

enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

42 U.S.C. § 1981(b). These rights "are protected against impairment by nongovernmental

---

[4] Defendant points out that the Racial Discrimination Act of 1975 is an Australian law, not an American law, and is thus inapplicable; Plaintiff does not dispute this point. *See Motion to Dismiss* [#22] at 11-12; *Response* [#24] at 2 n.2. Accordingly, the Court focuses its analysis on the § 1981 aspect of Plaintiff's claim.

discrimination and impairment under color of State law."   42 U.S.C. § 1981(c). By its terms, Section 1981 creates four protected interests: "(1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments." *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989).

To establish a prima facie case of discrimination under § 1981, Plaintiff must show that: (1) she is a member of a protected class; (2) Defendant intended to discriminate against her on the basis of race; and (3) the discrimination interfered with a protected activity as defined in § 1981. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001). These prima facie elements "are flexible and are not to be applied rigidly"; however, Plaintiff still "must show that [D]efendant intentionally discriminated against her." *Id.* at 1102, 1111.

Here, the Court finds that several of Plaintiff's allegations are not entitled to the presumption of truth because they are entirely conclusory, including her allegations that she was specifically targeted because of her race or ethnicity. *See Fifth Am. Compl.* [#14], ¶¶ 18-20; *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (identifying this kind of allegation as conclusory).

Setting the conclusory allegations aside, Plaintiff's well-pleaded factual allegations show that:

- She purchased a ticket with no assigned seat;

- Defendant's lead agent announced that the flight was overbooked by about 10 people;

- Of the people without seat assignments, eventually two groups without seat assignments were boarded: an Asian woman with a baby, and 8 to 10

members of an African American family, of whom "most" did not have assigned seating;

- After these two groups were boarded, Plaintiff approached Defendant's agents "to explain and impress upon the agents that [her] flight was a connecting flight, and that there were no other alternative/feasible flights for [her] schedule for at least a week";

- Defendant's agents rudely responded;

- The flight left without her;

- The group of passengers who were not given seats included several Hispanic passengers, a white male, Plaintiff, and another Indian woman;

- Defendant's lead agent yelled at another passenger in "what sounded like a mocking Indian accent" while pointing to each passenger in front of him and asking that other passenger if she thought she was more important than each of them;

- Defendant's agents promised not only refunds but also additional compensation;

- Plaintiff "had to tilt [her] head into [the lead agent's] personal space to hear him";

- Plaintiff never accepted or received a refund from Frontier; and

- Defendant's agents had a passenger log in front of them during boarding, they called out Plaintiff's last name and that of the other woman of Indian descent, and they made a notation on the passenger log before asking them to take a seat.

*Fifth Am. Compl.,* ¶¶ 3-4, 7-10, 12, 14, 17, 19.

Plaintiff plausibly alleges that she is a member of a protected class—a woman of Indian descent. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (stating that, in enacting § 1981, Congress intended to protect "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics"). However, none of the alleged events, even taken as true and viewed in

the light most favorable to her, suggest racial discrimination. By her own admission, she and other stand-by passengers were told that the flight was overbooked by about 10 people, and while Defendant was able to board some extra passengers, it could not board them all. *Fifth Am. Compl.* [#14], ¶¶ 7, 10. The group left behind was not just Indian women like Plaintiff, but included a white man, a mixed-race man, and several Hispanic people. *Id.*, ¶ 10. The stand-by passengers who were later permitted to board were also racially diverse. *Id.*, ¶ 7. Nothing suggests that Defendant's agents considered race as they allowed some stand-by passengers to board. By Plaintiff's own admission, no matter which combination of passengers had been boarded and no matter which six passengers had been left behind, each group would have been racially diverse.

The Court declines to infer discrimination arising from a boarding gate agent's calling out a standby passenger's last name, writing something on the passenger log, and then asking her to take a seat. *See Fifth Am. Compl.* [#14], ¶ 19. Even if Defendant's gate agents were unprofessional or rude to Plaintiff and other passengers, that does not demonstrate an intent to discriminate *based on her race*. *See, e.g.*, *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (stating that the defendant's agent "could be unconscionably rude and unfair to [the plaintiff] without violating Title VII").

In sum, Plaintiff fails to plausibly allege intentional or purposeful racial discrimination and, therefore, Claim Two (racial discrimination) should be dismissed for failure to state a claim. *Vu Phan v. State Farm Ins. Co*, No. 17-cv-03073-GPG, 2018 WL 10425417, at *5 (D. Colo. July 30, 2018). Accordingly, the Court **recommends** that Claim Two (racial discrimination) be **dismissed without prejudice**. *See, e.g.*, *id.* (dismissing without prejudice pro se plaintiff's implausibly pleaded § 1981 claims).

**B.       Claim One (Breach of Contract)**

The Court next considers Plaintiff's first claim for breach of contract, over which she asserts diversity jurisdiction exists.

Pursuant to 28 U.S.C. § 1332, a district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"

In the Complaint [#14], Plaintiff represents that she is a citizen of Florida, Defendant is incorporated under Colorado laws and, therefore, the parties are citizens of different states. *Fifth Am. Compl.* [#14] at 2. Plaintiff also represents that the "amount in controversy exceeds $75,000." *Id.* However, closer scrutiny of Plaintiff's breach of contract claim reveals that is not so. Specifically, Plaintiff claims that, due to Defendant's contractual breach, she "lost approximately $1000.00 in flights" and "the opportunity to attend [her] grandson[']s birth announcement and family reunion in his honor." *Id.*, ¶ 16. To the extent Plaintiff seeks emotional damages, *see id.* at 10 (requesting "emotional distress" damages), those are not recoverable in a breach of contract claim where the breach was not willful and wanton. *See Brossia v. Rick Constr., L.T.D. Liab. Co.*, 81 P.3d 1126, 1131 (Colo. App. 2003). Plaintiff has not alleged willful and wanton conduct. To the extent that Plaintiff represents the amount in controversy exceeds $75,000 because she seeks "[attorney] fees" if she prevails, *see id.*, she has not asserted a "right, based on contract, statute, or legal authority, to an award of attorney's fees if [she] prevails in the litigation[.]" *Gerig v. Krause Publ'ns, Inc.*, 58 F. Supp. 2d 1261, 1264 (D. Kan. 1999) (internal quotation marks and citations omitted). Therefore, any anticipated fee award may not be included in determining whether the jurisdictional minimum is met. *See Plus*

*Sys. Inc. v. New England Network, Inc.*, 804 F. Supp. 111, 116-17 (D. Colo. 1992) (noting well established principle "that attorneys' fees may be included in the amount in controversy for purposes of satisfying the jurisdictional requirement where such fees are provided by statute or contract.") (collecting authorities). That leaves "approximately $1000.00 in flights" as the amount in controversy. Because $1,000 falls well short of the $75,000 jurisdictional threshold, diversity jurisdiction does not exist.

Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" *See also Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (stating, "[once] the bases for federal subject matter jurisdiction have been extinguished . . ., the district court may decline to exercise continuing . . . supplemental jurisdiction over [the] plaintiff's state claims"). Because the Court has recommended dismissal of Plaintiff's 42 U.S.C. § 1981 racial discrimination claim, the Court **further recommends** that the District Judge decline to exercise supplemental jurisdiction over Plaintiff's breach of contract claim (Claim One) and dismiss that claim **without prejudice** pursuant to 28 U.S.C. § 1367(c)(3). *See McDonald v. Sch. Dist. No. 1*, 83 F. Supp. 3d 1134, 1153-54 (D. Colo. 2015) ("Finding no compelling reason to retain jurisdiction, the Court will dismiss plaintiff's remaining claims without prejudice"). Because of the recommendation to dismiss the breach of contract claim without prejudice, the Court **denies as moot** Plaintiff's Request for the Court to Consider Supplemental Evidence [#28].

### IV.  Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion to Dismiss [#22] be **GRANTED** and the Complaint [#14] be **DISMISSED WITHOUT PREJUDICE**.

IT IS **ORDERED** that Plaintiff's Request for the Court to Consider Supplemental Evidence [#28] is **DENIED AS MOOT**.

IT IS FURTHER **ORDERED** that any party may file objections Recommendation **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 20, 2024                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Brian Timothy Maye (brian.maye@fitzhunt.com,
kathleen.argus@fitzhunt.com), District Judge Gordon P Gallagher
(gallagher_chambers@cod.uscourts.gov, gordon_p_gallagher@cod.uscourts.gov), Magistrate
Judge Kathryn A. Starnella (starnella_chambers@cod.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:9821974@cod.uscourts.gov
Subject:Activity in Case 1:23-cv-01875-GPG-KAS Amarsingh v. Frontier Airlines Order on
Report and Recommendations
```
Content–Type: text/html

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 8/21/2024 at 10:20 AM MDT and filed on 8/21/2024

| | |
|---|---|
| **Case Name:** | Amarsingh v. Frontier Airlines |
| **Case Number:** | 1:23–cv–01875–GPG–KAS |
| **Filer:** | |
| **Document Number:** | 34(No document attached) |

**Docket Text:**
 **ORDER finding as moot [31] Report and Recommendations in light of the [33] Amended Order and Recommendation. By District Judge Gordon P Gallagher on 8/21/2024. Text Only Entry(schap, )**


**1:23–cv–01875–GPG–KAS Notice has been electronically mailed to:**

Brian Timothy Maye    brian.maye@fitzhunt.com, kathleen.argus@fitzhunt.com

**1:23–cv–01875–GPG–KAS Notice has been mailed by the filer to:**

Kusmin L. Amarsingh
5 Magnolia Drive
Mary Esther, FL 32569