ALLMTN,APPEAL,JD1,MAGR,NP ProSe,TERMED

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: 1:23–cv–01875–GPG–KAS

| | |
|---|---|
| Amarsingh v. Frontier Airlines | Date Filed: 07/24/2023 |
| Assigned to: District Judge Gordon P Gallagher | Date Terminated: 09/24/2024 |
| Referred to: Magistrate Judge Kathryn A. Starnella | Jury Demand: Plaintiff |
| Demand: $115,000,000 | Nature of Suit: 440 Civil Rights: Other |
| Case in other court:  U.S. Court of Appeals, 10th Cir., 24–01391 | Jurisdiction: Federal Question |
| Cause: 42:1983 Civil Rights Act | |

**Plaintiff**

**Kusmin L. Amarsingh**                    represented by   **Kusmin L. Amarsingh**
                                                           5 Magnolia Drive
                                                           Mary Esther, FL 32569
                                                           862–201–1305
                                                           PRO SE


V.

**Defendant**

**Frontier Airlines, Inc.**                represented by   **Brian Timothy Maye**
                                                           Fitzpatrick Hunt & Pagano LLP
                                                           10 South LaSalle Street
                                                           Suite 3400
                                                           Chicago, IL 60603
                                                           312–728–4905
                                                           Email: brian.maye@fitzhunt.com
                                                           *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/03/2024 | 35 | OBJECTION to 33 Report and Recommendations filed by Plaintiff Kusmin L. Amarsingh. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(schap, ) (Entered: 09/04/2024) |
| 09/04/2024 | 36 | OBJECTION to 33 Report and Recommendations filed by Plaintiff Kusmin L. Amarsingh. (schap, ) (Entered: 09/04/2024) |
| 09/18/2024 | 37 | RESPONSE to Objection to 33 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE re 14 Amended Complaint filed by Kusmin L. Amarsingh, 22 MOTION to Dismiss filed by Frontier Airlines, Inc. filed by Defendant Frontier Airlines, Inc.. (Maye, Brian) (Entered: 09/18/2024) |
| 09/24/2024 | 38 | ORDER adopting Report and Recommendations re 33 Report and Recommendations and granting in part and denying in part 22 Motion to Dismiss by District Judge Gordon P Gallagher on |

| | | |
|---|---:|---|
| | | 09/24/2024.(dclem) (Entered: 09/24/2024) |
| 09/24/2024 | 39 | FINAL JUDGMENT in favor of Frontier Airlines, Inc. and against Kusmin L. Amarsingh. Entered by the Clerk on 09/24/2024. (dclem) (Entered: 09/24/2024) |
| 10/03/2024 | 40 | MOTION for Reconsideration re 39 Judgment by Plaintiff Kusmin L. Amarsingh. (sphil, ) (Entered: 10/03/2024) |
| 10/06/2024 | 41 | ORDER denying 40 Motion for Reconsideration re 40 MOTION for Reconsideration re 39 Judgment filed by Kusmin L. Amarsingh. The motion for reconsideration or for further explanation is DENIED. The Court set forth its reasoning in the prior Order (D. 38). So Ordered. by District Judge Gordon P Gallagher on 10/6/24. Text Only Entry(Gallagher, Gordon) (Entered: 10/06/2024) |
| 10/07/2024 | 42 | NOTICE OF APPEAL as to 39 Judgment, 38 Order on Motion to Dismiss, Order on Report and Recommendations by Plaintiff Kusmin L. Amarsingh. (sphil, ) (Entered: 10/07/2024) |
| 10/08/2024 | 43 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 42 Notice of Appeal filed by Kusmin L. Amarsingh to the U.S. Court of Appeals. (Pro Se, Fee not paid and 1915 motion not filed,) (Attachments: # 1 Preliminary Record)(sphil, ) (Entered: 10/08/2024) |

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
11:13 am, Sep 03, 2024
JEFFREY P. COLWELL, CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**KUSMIN L. AMARSINGH**

      Plaintiff,

v.                    **Civil Action No. 23-cv-01875-GPG-KAS**

**FRONTIER AIRLINES, INC.,**

      Defendant.

---

## PLAINTIFF OBJECTIONS

## TO MAGISTRATE AMENDED ORDER AND RECOMMENDATION

---

    **COMES NOW** Plaintiff, Kusmin L. Amarsingh, by invitation of the Court, makes the following objections to the Magistrate's Amended Order and Recommendation dated 8/20/2024, and in support thereof states as follows:

    As the Court stated, Plaintiff must show:  1) She is a member of a protected class; 2) Defendant intended to discriminate against her based on race; and 3) The discrimination interfered with a protected activity.  (*Ref. Order @ page 8, line 12*).  The Magistrate's Order found that Plaintiff plausibly alleged that she is a protected class member – a woman of Indian Descent.  (Ref. Order @ page 9, line 67) and implied that Plaintiff met Element 3 that she her allegations go to certain protected activities including the fundamental right to travel and to contract free of discrimination.

The Court found that Plaintiff failed Element 2: That Defendant intentionally discriminated against her based on *her* race'. As a result, the following objection(s) are specific to Element 2.

## LEGAL STANDARD

In deciding a Motion to Dismiss under Rule 12(b)(6) the Court must weigh ALL factual allegations contained in Plaintiff's Complaint against the Defendant's motion to dismiss under a 'plausibility standard'. <u>Brokers' Choice of Am., Inc. v. NBC Universal, Inc.</u>, 757 F.3d 1125, 1131 (10th Cir. 2014) holding that 'a Plaintiff does not need detailed factual allegations, however, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. A claim has facial plausibility when the plaintiff pleads factual content, allowing the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Factual allegations must be enough to raise the right to relief above the speculative level.' Id; <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939 (2009). A claim is plausible when Plaintiff pleads **<u>factual content</u>** that allows the court to draw the reasonable inference that Defendant is liable for the misconduct alleged. Id. <u>Snow v. DirecTV, Inc.</u>, reiterated that all facts set forth in a plaintiff's complaint must be accepted as true, and a complaint should not be dismissed unless the plaintiff can prove no set of facts that would support the claims. <u>*See* Snow v. DirecTV, Inc., 450 F.3d 1314</u>.

The Plaintiff can allege either direct facts showing discrimination or indirect facts that give rise to a <u>plausible inference</u> of discrimination. <u>Doherty</u> (2d Cir. Sep. 27, 2022). The plausibility

standard is not akin to a probability requirement, nor does Plaintiff have to establish a prima facie case of discrimination at the pleading stage. Myers v. Doherty, No. 21-3012-cv, 2022 U.S. App. LEXIS 26982 (2d Cir. Sep. 27, 2022). Vega v. Hempstead Union Free Sch. Dist. further clarifies that a plaintiff does not need to plead a prima facie case under the McDonnell Douglas framework to defeat a motion to dismiss. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72 (2d Cir. 2015). The deference given to a Plaintiff at the motion to dismiss stage is rooted in the requirement to allege sufficient facts to make a claim plausible, rather than proving the claim outright. Id. This ensures that plaintiffs can present their case and gather evidence through discovery before being required to meet the higher burden of proof necessary at later stages of litigation. Id.

In Katib v. USF Holland LLC, 640 F. Supp. 3d 788, the court emphasized the importance of providing specific factual context to support allegations of discrimination, such as identifying comparators who were treated differently under similar circumstances Katib v. USF Holland LLC, 640 F. Supp. 3d 788. This approach aligns with the general requirement that a plaintiff must show they were treated less favorably than individuals outside their protected class to establish a prima facie case of discrimination Marria v. MV Transp. Inc., 2018 U.S. Dist. LEXIS 242351.

Therefore, even if the Defendant denies the allegations, the plaintiff must still meet the burden of establishing a prima facie case of discrimination, and the Defendant can counter by providing legitimate, nondiscriminatory reasons for their actions. The court will then determine if the plaintiff can show that these reasons are pretextual. Gulley v. County of Oakland, 496 Fed. Appx. 603, Katib v. USF Holland LLC, 640 F. Supp. 3d 788, Marria v. MV Transp. Inc., 2018 U.S. Dist. LEXIS 242351.

The United States Supreme Court has held that 42 U.S.C.S. § 1981 phrase "as is enjoyed by white citizens" applies to all persons 'including white persons' because, the Court explained, it could not accept the view that the terms of § 1981 exclude its application to racial discrimination against white persons. § 1981 is clarified by an examination of the legislative history, which suggests that the statute applies to every race and color. Rajaram v. Meta Platforms, Inc., 105 F.4th 1179, 1181 (9th Cir. 2024). In its 10-page analysis of the history of the phrase 'white person,' the Court rejected the position that the term 'as white persons' as a floor of measurement for discrimination would necessarily mean that a white person cannot claim discrimination. *Id*.

## ANALYSIS

Plaintiff did state sufficient factual allegations for a court to plausibly find that Defendant intentionally discriminated against her, though unartfully so, due in part to her limited experience and resources at the time of filing. In the instant case, Plaintiff respectfully argues that the Magistrate appears to have left off crucial facts from her analysis and recommendations, which are itemized below:

1. FACT 1: CHARACTERIZATION OF RACIAL DISCRIMINATION (Order @ Page 10, line 7): The Magistrate's Order states that the passengers who were not selected were '*diverse'* which demonstrates there was no discrimination against Plaintiff because she appeared to be of Indian Descent and the other passengers were NOT of Indian Descent. I respectfully object to this mischaracterization of Plaintiff's complaint.

The racial discrimination distinction is not that everyone discriminated against was of "Indian Descent" as the Court and Defense states. Plaintiff contends that she was not provided a seat because she was "NON-AFRICAN AMERICAN".

The critical fact in Plaintiff's complaint is that *only African American passengers were selected to board to the detriment of the passengers who were NOT African American*. To illustrate further, imagine there was a group of people, and the agents drew a line and said only White people get in this line and all others sit down and wait. Then the agents said only white passengers could get on the flight, and the other non-White passengers were left without any guidance or assistance. Next, the agents misled the non-White passengers and assured them they were working on seating additional passengers when in fact the flight had departed 45 minutes before.

As a result, it did not matter if the other passengers were diverse or not of Indian descent, what mattered was Plaintiff was not a member of the underlined preferred race. (*See* Plaintiff Complaint, page 6, lines 23, 32; page 7, line 11; page 7, line 38; page 9, lines 20-26). These factual allegations are not mere labels or conclusory statements prohibited under Iqbal and its progeny. As a result, Plaintiff objects to the Order stating otherwise.

The Order states that both groups were 'diverse' the one that was boarded and the one that was not. Defense motion similarly argues that Plaintiff and the remaining passengers were diverse and that at least one "White male" was also left behind. In other words, Defense argues that Plaintiff experienced the same, acceptable discrimination as the White person so therefore she was not discriminated against. Such a reading is inconsistent with our Supreme Court's recent option Rajaram v. Meta Platforms, Inc. Adopting this 'diverse' group including a 'white person' as the standard to measure Plaintiff's claim not only means white people are barred from claiming

discrimination, but also that Plaintiff may never claim discrimination if other races are also discriminated against.

Next, Defendant argues that they boarded the Asian child and her adult companion, who were non-African American, therefore this proves they raced neutral selection criteria to seat groups. This argument fails because boarding the Asian minor and the Asian woman has no bearing on the Plaintiff's complaint.  In this instance, the Defendant did exercise a non-race-based determination because there was an unaccompanied minor, and that was therefore reasonable and warrants the Court's inference.  However, at issue is the lack of race-neutral selection of the other passengers that were bumped.

Furthermore, this fact proves that Frontier could therefore apply objective standards but chose not to when it came to the other remaining passengers.

2. <u>FACT 2:  Omitted Facts:  Flights Available</u>:  The Order does not mention or refer to Plaintiff's alleged facts, contained in her Complaint that there was another direct flight leaving the same gate less than 30 minutes direct to Orlando that could accommodate the African American passengers and that the next available flight for Plaintiff was a week later.  (*See*:  Plaintiff Complaint, page 3, page 9).  Furthermore, the Defense denied the allegation that the next available flight was a week later with nothing more only that Plaintiff was mistaken.  Defendant did not provide a schedule or allege any fact to rebut Plaintiff's factual allegation.  Defendant is not entitled to deference or the inference that Plaintiff's alleged flight schedule was untrue at this stage. Instead, following the <u>Gulley v. County of Oakland</u>, and <u>Katib v. USF Holland</u> procedure, when the defendant denies the Plaintiff's factual allegation, the Court must then ask, "Could the Plaintiff prove this fact after discovery or at a later trial.  If she can, Defendant's motion to dismiss on this

basis is improper.  Granting it would reduce the importance of ensuring a well-pleaded complaint. As the Court points out, the Plaintiff is limited to what she has alleged in her Complaint, and nothing more.  The Court may in limited instances consider additional evidence, but here the Court applied a strict interpretation and did not consider her response to the Defense motion to dismiss or the Plaintiff's request to consider supplemental evidence of the Defendant's flight schedule.

The result of not considering this allegation, which was contained in Plaintiff's complaint, resulted in the Court's inference that Defendant had a <u>reasonable</u> race-neutral basis for their seating criteria and is therefore not entitled to the Court's inference of one.  Plaintiff respectfully disagrees – Plaintiff's blanket denial of a known fact in their control was markedly unreasonable.

*In the interest of judicial economy and fairness, Plaintiff respectfully requests that this Court consider Defendant's flight schedule as published as true in the US Bureau of Flight Statistics.  This evidence is not 'new or external evidence', rather it explains Plaintiff's factual allegations that there were additional flights and rebuts Defendant's denial of the same.*

*After Defendant filed its Motion to Dismiss, Plaintiff learned that there was not one, but **2 additional flights** leaving that gate within less than 2 hours from Plaintiff's flight direct to Orlando.  Later still, Plaintiff learned that there was a total of **35 flights** from Philadelphia to (Orlando) MCO, two of which were scheduled the same evening as the flight at issue – one within about 30 minutes after departure and the other less than 2 hours after Plaintiff's flight.  From 14 June to 23 June 2023, there were 33 additional flights from Philadelphia to MCO.  The ONLY other flight that could accommodate Plaintiff and the other St. Louis passenger of Indian Descent was on 23 June 2023.  (See Highlighted Plaintiff Supplemental Evidence and Attachment 1, Frontier Flight Schedule 13 June to 23 June 2023;* Plaintiff Complaint, page 3, page 9.

This evidence goes to Plaintiff's claim 2 because it proves, by independent reliable evidence, that there were two other flights available to accommodate the chosen passengers, but only one flight a week later to accommodate Plaintiff and the other St. Louis passenger.  By not considering this evidence, the Court erroneously found that Frontier had a reasonable race-neutral basis for the priority seating of the bumped passengers.  Plaintiff respectfully requests that the Court consider this evidence in the interest of fairness and judicial economy.

This supplemental evidence is reliable self-authenticating evidence.  _See_ Bureau of Transportation Statistics, Detailed Statistics Departures (www.bts.gov), August 29, 2024.  This evidence provided, pre-discovery, weighs in favor of the truth of Plaintiff's factual allegations rather than relying on what may be viewed as self-serving facts.  As a result, Plaintiff respectfully requests that the Court consider this evidence in its de novo review.  Plaintiff respectfully requests that the Court direct its attention to Plaintiff's supplemental evidence that:

3. FACT 3:  OBJECTIVE FACTORS FOR PRIORITY SEATING:  The Magistrate's Order omitted the facts that Plaintiff paid substantially more for her flights, arrived earlier than the non-African American passengers, and checked in hours before the African American passengers who were selected.

These factors are objective legal factors that Frontier could have considered, but they did NOT.  Instead, the agents ignored all these factors and relied on the race of the passengers, again African American vs. Non-African American.  These facts weigh against the Court's finding that the Defendant had some reasonable alternative reason for the selection process of who would or would not be seated.  (_See_:  Plaintiff Complaint, page 5, 6 and 10; _See_ also Supplemental Evidence,

page 9). Plaintiff also note that the Magistrate mentioned, by did not analyze the fact that the Agents mocked the other Indian passenger's strong Indian accent.

To direct the Court's attention to a common character, imagine that the Agent sounded like the character 'Apu' from the Simpsons. His mocking was directed at Plaintiff and the other Indian passengers as they stood before him in a crowded airport and while determining the seating criteria for the bumped passengers. Race and national origin were a major factor in the Defendant's intentional selection criteria for seating. Plaintiff respectfully objects to the Defense and Magistrate's order classifying the Defendant's behavior as merely rude or dismissive.

The Court declined to consider the Defendant verifying her and the other Indian passenger when they called them both to the Agent's desk where the names are unique 'Chaudry (sic) and Amarsingh'. Considering all that had occurred previously, and the lead agent saying nothing but having both passengers stand directly in front of him, proceeding to annotate the flight roster, and then sending the two passengers back to their seats when taken together is entitled to deference. What purpose then was the annotation – if they did take notice of the two passengers' flight (without regard to race in any way) they would have seated them because they both had more complex travel that could not be reasonably and readily accommodated. Furthermore, Plaintiff alleged that the other Indian passenger told the agents that she was traveling on an international flight and her destination from India was St. Louis, Missouri.

When taken together Defendant is not entitled to a reasonable inference that this act was race neutral. On these facts, it is understandable why the Court declined to adopt this fact, however, that is not the standard. Plaintiff is limited in her allegations, which when taken as true, plausibly support her allegation that 'Defendant intended to discriminate against her'.

4. FACT 4: PLAINTIFF ADDRESSED AGENTS BEFORE DURING AND AFTER THE

BOARDING PERIOD (page 9, line 19):   The Magistrate's Order states that the Plaintiff only

addressed her flight and connection through St. Louis with the Agents AFTER the African

American passengers were boarded and gates closed.   Plaintiff's complaint alleges that she

approached and spoke to the Agents about her flight and requested a seat at least three times

BEFORE the selection of passengers was made.   In addition, Plaintiff stated that she wished to

'**again**' impress upon the Agents her flight and the availability of the other flight to MCO. The

word 'again' taken in the full context of all the other times Plaintiff alleged she approached or

attempted to speak with the Agents, is sufficient to demonstrate that she did not only raise the issue

AFTER the African American group boarded.   (*See* Plaintiff's complaint @ page 6, paragraph 8).

Notably, this information was already available to the Agents.   Therefore, even if Plaintiff never

spoke to the Agents, they had a duty to act reasonably.

Stating that Plaintiff only raised these issues AFTER the boarding process paints a very

different picture.   Specifically, the Magistrates misstatement of this fact suggests that the Agents

were not aware of the Plaintiff's issues because she never brought it to their attention in a timely

manner.   In the common parlance of our profession, the Magistrate's Order makes it seem like the

Plaintiff 'acquiesced by failing to object' which is not the case here.   (*See* Plaintiff Complaint, page

5 – 9).

Furthermore, Plaintiff alleged that the flight departed at least 45 minutes BEFORE

Defendant updated the Monitor.   This amounts to deceptive and unfair trade practices under the

Department of Transportation Regulation, 49 USCS § 41712, Unfair and deceptive practices.   The

Agents continued to assure the Plaintiff and the other remaining passengers that they were working on getting them seats.  (*See* Plaintiff Complaint, page 6, line 36).  This is a crucial fact because, as the Magistrate did here, leaving this fact off makes it appear as if the Plaintiff knew the boarding process was complete, that no more seats were remaining, and, that the flight had already departed. This is a critical fact that substantially changes the analysis and outcome of the Magistrate's findings.

5.  <u>FACT 5:  MISSTATED REASON FOR TRAVEL Page 11, line 8:</u>  The Magistrate's Order failed to state the complete reasons for Plaintiff's travel.  Plaintiff was in Philadelphia for a funeral celebrating the untimely death of a close loved one.  The Magistrate addressed emotional damages based only on Plaintiff missing her grandson's birth announcement and not the death, which together with the rest of the Magistrate Order and omitted facts does not adequately present all the facts in Plaintiff's complaint further.  (*See* Plaintiff Complaint, page 4).  While this fact does not have any bearing on the Defendant's discriminatory intent, it does provide the Court with the context of why we are here.  Defendant is under an obligation to consider objective factors in seat assignments – they did not. In addition to stating factual allegations in the Complaint, Plaintiff must also allege harm and request relief that could be granted.

6.  <u>FACT 6:  INFERENCE 'BUT FOR TEST':</u>  The Magistrate stated that Plaintiff failed to demonstrate that but for her race, she would have been selected for the flight.  Considering **all** the facts and circumstances Plaintiff has demonstrated that if she were African American, she would have been boarded which is the same as 'But for not being African American Plaintiff would have been boarded on the flight'.

7. FACT 7: 'DEFENDANT DID NOT PROVIDE OR PUBLISH THEIR PRIORITY SELECTION PROCEDURES': When an airline overbooks a flight, the determination of which passengers should be seated or not is governed by both federal regulations and the airline's own boarding priority rules. The boarding priority rules typically include considerations such as the severity of hardship that would be caused by denying boarding to certain passengers, such as those who are physically handicapped or unaccompanied minors, and the fare class of the ticket purchased. For example, United Airlines' boarding priorities, as outlined in Domestic General Rules Tariff No. DGR-1, Rule 245, prioritizes passengers who are physically handicapped or unaccompanied children, followed by those who have paid full fare for First Class, Business Class, or Coach OPPMANN v. UNITED AIRLINES, INC., 1986 U.S. Dist. LEXIS 27438.

Additionally, **airlines are required to file their priority rules** with the Department of Transportation and adhere to them. In Karp v. North Central Airlines, 583 F.2d 364 (7th Cir. 1978), this court held that § 404(b) created an implied private right of action for passengers of a domestic airline who were bumped due to a failure of the airline to follow its own boarding priority rules. Similarly, in Nader v. Allegheny Airlines, the court recognized the necessity of non-discriminatory priority rules to prevent arbitrary or discriminatory bumping of passengers Nader v. Allegheny Airlines, 426 U.S. 290.

Here Defense argued and Order agreed that Frontier had some other non-race-based priority boarding procedure, however, that inference is misplaced. The facts are to be taken as true and, in the light, most favorable to the Plaintiff. Rather than attempting to cure the breach and Board the passengers according to the availability of flights or any of the objective basis previously discussed by Plaintiff, Frontier used race as the deciding factor. Once again, deference at this early

stage goes to Plaintiff, not Defendant, particularly here where Defendant claims race-neutral selection criteria without submitting ANY evidence that they published the same or provided notice to Plaintiff or the other bumped non-African American passengers.

8. **FACT 8: MOOTNESS:**  The Magistrate denied consideration of Plaintiff's request to consider supplemental evidence as *moot*.  Respectfully, Plaintiff is uncertain what issue the Magistrate finds moot.  (*Ref.* Order @ page 2, line 12).  Evidence that directly proves a fact alleged in a complaint is not considered external evidence when deciding a motion to dismiss if it falls within certain exceptions.

Generally, courts consider only the allegations in the complaint, exhibits attached to the complaint, and matters of public record when deciding a motion to dismiss.   Schmidt v. Skolas, 770 F.3d 241 (3d Cir. 2014).   Documents that are integral to or explicitly relied upon in the complaint are not external if it is central to the plaintiff's claim and their authenticity must not be disputed Revitalizing Auto Cmtys. Envtl. Response Tr. v. Nat'l Grid USA, 92 F.4th 415 (2d Cir. 2024). If these conditions are met, the court can consider the document as part of the pleadings. *Id*.  LoCicero v. Sanofi-Aventis United States Inc., 2009 U.S. Dist. LEXIS 59767.

Here evidence of Defendant's published flight schedule is mandatory, and Plaintiff provided such evidence from a U.S. government website, which is readily authenticating and a matter of public record.  According to 39 USCS § 5402, "scheduled service" is defined as flights operated in common carriage available to the public under a published schedule. Additionally, 49 USCS § 41104(b) specifies that air carriers providing regularly scheduled charter air transportation must provide the public in advance with a schedule containing the departure location, departure time, and arrival location of the flight (*See* § 41104. Additional limitations and requirements of

charter air carriers. Furthermore, the Federal Aviation Administration (FAA) regulates airline computerized reservation systems, requiring them to display information, including schedules, in specific ways. *See* Flytenow, Inc. v. FAA, 420 U.S. App. D.C. 343, 808 F.3d 882 (2015). This regulatory framework ensures that flight schedules are made available to the public consistently and transparently. (*Ref* Order @ page 8, line 19). As a result, Plaintiff respectfully asks that the Court consider the additional/supplementary evidence of Defendant's flight schedule.

10. **FACT 10: PLAINIFF ALLEGED DAMAGES IN EXCESS OF $75,000 FOR DIVERSITY JURISDICTION ON HER CONTRACT CLAIM**. Plaintiff did not clearly specify the basis for the damages and wishes to now correct that oversight. Plaintiff included in the supplemental evidence the compensation rate for Airline delays at 400% for 4-hour delays. (*See*: Defense motion to dismiss 'Carrier Contract', and Plaintiff's Response to Motion to Dismiss, Page 4).

In the instant case, Plaintiff alleged that the passengers who were discriminated against and left behind were approximately 8 to 10 passengers. Plaintiff intends to join all known parties after Discovery because their claims arise out of the same transaction and are therefore compulsory. In addition, the only way the Plaintiff can prove damages is through the Discovery process.

However, even if the Court finds that aggregating damages is speculative, then Plaintiff contends that the breach of contract resulted from racial discrimination and denial of her fundamental right to travel. As a result, Plaintiff respectfully requests that the Court grant supplemental jurisdiction or view the Contract Claim as based on federal question jurisdiction.

**CONCLUSION**

To fairly apply Iqbal, the Court must consider all the factual allegations in the Plaintiff's pleadings and make all reasonable inferences in favor of the Plaintiff. The omitted facts were crucial to the Court's analysis. Correcting these factual inaccuracies is essential not only for the fairness of the proceedings but also for judicial efficiency. Addressing these specific errors will advance these interests. The objections presented here are both specific and timely, as required by the Federal Rules and relevant case law.

Plaintiff respectfully requests the Court consider the foregoing objections to the Magistrate's order and recommendation and find that Plaintiff has met her burden to survive Defendant's motion to dismiss.

**CERTIFICATE OF SERVICE**

I hereby certify that I filed this motion with the Clerk of Court via email at COD_ProSe_Filing@cod.uscourts.gov and sent a copy to Mr. Brian Maye for Defendant at bmaye@hinshawlaw.com on 3 September 2024.

*Kusmin L. Amarsingh*
Kusmin L. Amarsingh
Pro Se

**ATTACHMENTS**

1. MAGISTRATE ORDER LINE NUMBERED

2. COMPLAINT LINE NUMBERED

3. PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

4. PLAINTIFF SUPPLEMENTAL EVIDENCE

5. DEFENDANT FLIGHT SCHEDULE FROM 13 JUNE TO 23 JUNE 2023

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

1    Civil Action No. 23-cv-01875-GPG-KAS

2    KUSMIN L. AMARSINGH,

3         Plaintiff,

4    v.

5    FRONTIER AIRLINES, INC.,

6         Defendant.

7    _____

8    **AMENDED ORDER AND RECOMMENDATION**[1] **OF UNITED STATES MAGISTRATE**

9                                     **JUDGE**

10   _____

11   **ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

12        This matter is before the Court on **Defendant Frontier Airlines, Inc.'s Motion to**

13   **Dismiss With Prejudice** [#22] (the "Motion to Dismiss"). Plaintiff, an attorney who

14   proceeds in this matter pro se,[2] filed a Response [#24] in opposition to the Motion to

15   Dismiss [#22], and Defendant filed a Reply [#25]. The Motion to Dismiss [#22] has been

16   referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B),

17   ~~Fed. R. Civ. P. 72(b)(1),~~ and  D.C.COLO.LCivR 72.1(c)(3).  *See Memorandum* [#27].

18
19
20

21   [1] This amendment corrects Section IV ("Conclusion") to reflect that the undersigned *recommends*
22   that the Motion to Dismiss [#22] be granted.

23   [2] Generally, the Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*,
24   404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). However,
25   here, Plaintiff specifically alleges that she is "a United States Army JAG Attorney." *Fifth Am.*
26   *Compl.* [#14], ¶ 20. Because she is an attorney, Plaintiff's filings are not entitled to lenient
27   interpretation. *See, e.g.*, *Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007) ("While we
28   generally construe pro se pleadings liberally, . . . the same courtesy need not be extended to
29   licensed attorneys.") (citing *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001)); *McNamara v.*
30   *Brauchler*, 570 F. App'x 741, 743 n.2 (10th Cir. 2014) (finding no reason to hold a disbarred
31   attorney "to a less stringent standard than other legally trained individuals"). Plaintiff is not entitled
32   to special license or liberal construction.

Separately, Plaintiff filed a **Request for the Court to Consider Supplemental Evidence** [#28] (the "Motion to Supplement"), asking the Court to consider additional exhibits as it reviews the Motion to Dismiss [#22]. No responses or replies to the Motion to Supplement [#28] were filed.

The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Motion to Supplement [#28] is **DENIED AS MOOT**. Additionally, the Court **RECOMMENDS** that the Motion to Dismiss [#22] be **GRANTED**, and that the Court decline to exercise supplemental jurisdiction over Plaintiff's breach of contract claim (Claim One).

## I. Background

Unless otherwise stated, all facts in this section come from Plaintiff's Fifth Amended Complaint [#14][3] and are accepted as true for purposes of the Motion to Dismiss [#22]. *See, e.g.*, *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014) (stating that on a Rule 12(b)(6) motion the court must accept all well-pled factual allegations in the complaint as true).

On June 13, 2023, Plaintiff arrived at the airport in Philadelphia, to catch a flight to St. Louis with a connection through Orlando. *Fifth Am. Compl.* [#14], ¶ 1. Plaintiff checked

---

[3] There are five items on the docket entitled "Amended Complaint". *See Amended Complaint* [#2]; *Second Amended Complaint* [#8]; *Amended Complaint* [#11]; *Amended Complaint* [#13]; *Amended Complaint* [#14]. The last two were both filed on August 14, 2023, with some differences between them. *Compare Fourth Amended Complaint* [#13] *and Attachments* [#13-1, #13-2], *with Fifth Amended Complaint* [#14]. The Fourth Amended Complaint [#13] was, notably, unsigned, but there were other changes between the two complaints as well. *See Fourth Am. Compl.* [#13] at 3; *Statement of Claims* [#13-1] (containing 17 paragraphs in Facts section); *Fifth Am. Compl.* [#14] at 4-9(containing 20 paragraphs in Facts section). Nonetheless, because the Fifth Amended Complaint [#14] was the most recently filed, and because Defendant cited to it in its Motion to Dismiss [#22], the Court considers it to be the operative complaint. *See Motion to Dismiss* [#22] at 2 (citing to "Dkt. 14").

1
2
3
4
5
6

7   into her flight online, arrived at the departure gate "well before the flight departure time,"

8   and waited to board. *Id.*, ¶ 3. Three agents of Defendant Frontier ("Frontier"), all of whom

9   appeared (to Plaintiff) to be African American, were at the boarding gate. *Id.*, ¶¶ 3, 5.

10  Frontier's "lead agent, Mr. Tyron or Tyrone, announced that the flight was overbooked by

11  approximately 10 passengers." *Id.* Frontier's agent asked for volunteers to receive a

12  refund and rebook their flight, and later offered an additional $800.00 for volunteers—but

4.

13  no one volunteered. *Id.* Thereafter, the boarding process began by zone number. *Id.*, ¶

14  Plaintiff's zone was called and she approached the agent, but she had not been

15  assigned a seat and her boarding pass stated, "Seat: TBD." *Id.*

16  A Frontier agent directed Plaintiff to the back of the line because only passengers

17  with assigned seats were permitted to board. *Id.*, ¶ 5. Plaintiff requested a seat

18  assignment but was told she needed to wait until after the boarding process. *Id.* Plaintiff

19  encountered several other passengers who awaited seat assignments, including a family

20  of 8 to 10 people who appeared (to Plaintiff) to be African American. *Id.* There were six

21  other passengers waiting for seat assignments, who "either were or appeared to be

22  Hispanic, one male passenger, who was or appeared to be White, and a gentleman who

23  was or appeared to part of [sic] African American," as well as "an apparent Asian woman

24  traveling with a child, accompanied by a white female." *Id.*, ¶ 6.

25  After all the passengers with assigned seats had boarded, Frontier agents

26  approached the waiting passengers. *Id.*, ¶ 7. "The child and the adult Asian female

27  passenger were given seats and allowed to board" and "the party of 8-10 African

28  American passengers" were also allowed to board. *Id.* After the latter group boarded,

29  Frontier's agents returned to the gate counter. *Id.*, ¶ 8. Plaintiff again approached them,

asking about a seat assignment, "hop[ing] to explain and impress upon the agents that [her] flight was a connecting flight, and that there were no alternative/feasible flights for [her] schedule for at least a week." *Id.* One of the three Frontier agents kept interrupting Plaintiff and would not let her speak. *Id.* Plaintiff alleges that "[o]f the passengers left without seats, none were African American, except the possible mixed race [sic] gentleman [she had] mentioned previously." *Id.*, ¶ 9. Plaintiff and the other passengers, which included "approximately 5 Hispanic / Spanish Speaking passengers, two of Indian descent, [Plaintiff] being one, and one white male, were told to have a seat and wait [their] turn." *Id.*

The flight departed and the remaining passengers approached the counter. *Id.*, ¶ 10. The "Indian female passenger" went to speak with Frontier's lead agent, who began yelling at her "in what sounded like a mocking Indian accent and while pointing to each passenger in front of him asked her do you think you are more important than her, him, her[.]" *Id.* Frontier's lead agent "kept on speaking in a raised and unprofessional manner" and the other passenger was also told to sit down. *Id.* One of the waiting "male Hispanic passenger[s]" received a meal voucher as, apparently, he had already been bumped from a flight the day before. *Id.*, ¶ 11. A Frontier agent told that man that "tomorrow's flight was similarly overbooked." *Id.*

Eventually, the lead Frontier agent asked all the waiting passengers for their name, email, and phone number to process refunds and compensation, and he stated that they would all receive $400.00 plus the cost of their tickets. *Id.*, ¶ 12. When Plaintiff went to the other Frontier agents, instead of processing everything, they only offered her a refund or to rebook. *Id.* One of the agents was handing out cards "with the link to Frontier's

refund." *Id.*, ¶ 13. Plaintiff asked the lead agent for clarification, and he again stated that compensation and a refund would be provided. *Id.*, ¶ 14. After the lead agent left, Plaintiff waited longer and was told that she would receive an email with her refund information. *Id.*, ¶ 15. The following day, Plaintiff booked a flight home with a different airline because there were no Frontier flights to St. Louis for another week. *Id.*, ¶ 16. She incurred unspecified "costs associated with returning home rather than visiting St. Louis" and "lost approximately $1000.00 in flights" and missed the opportunity to attend her grandson's birth announcement and family reunion. *Id.*

Plaintiff later filed two complaints with Frontier and was told that she had already been refunded her flight; however, Plaintiff claims that she has not accepted or received any compensation or money from Frontier. *Id.*, ¶ 17. She also filed a complaint with the Department of Transportation. *Id.*

Plaintiff claims that Defendant, through its agents, racially discriminated against her because she was not African American. *Id.*, ¶¶ 18-20. She asserts that the Frontier agents "had authority to select which passengers to board based on non-discriminatory characteristics." *Id.* She further claims that her flight ticket was a contract whereby Frontier promised to transport her from Philadelphia to St. Louis on the date and time of her ticket, provided she "substantially perform" by checking into the flight. *Id.*, ¶ 19. She asserts that, even though she "did not contract for a specific seat, neither did many other passengers, and, [she] was still entitled to a seat and transport to [her] final destination unless [she] elected for a refund of [her] ticket which [she] did not." *Id.*

Plaintiff's operative complaint raises two causes of action: breach of contract (Claim One) and racial discrimination (Claim Two). *Id.* at 3; *see also Response* [#24] at 1

(identifying claims). Plaintiff asserts federal question jurisdiction exists, pursuant to 28 U.S.C. § 1331, in connection with her racial discrimination claim, and she asserts diversity jurisdiction exists, pursuant to 28 U.S.C. § 1332, in connection with her breach of contract claim. *Fifth Am. Compl.* [#14] at 2. Defendant asks the Court to dismiss both claims under Rule 12(b)(6) because Plaintiff "fails to plead sufficient facts to support either cause of action." *Motion to Dismiss* [#22] at 1.

## II.  Standard of Review

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitled to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, [n]or does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice ofAm., Inc. v. NBC Universal,*

*Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III.  Analysis

**A.     Claim Two (Racial Discrimination)**

The Court first considers Plaintiff's second claim for racial discrimination in violation of 42 U.S.C. § 1981, over which the Court has federal question jurisdiction.

Plaintiff alleges that Defendant's agents racially discriminated against her because she was not African American. *See, e.g.*, *Fifth Am. Compl.* [#14], ¶¶ 18-19. She asserts that Defendant violated the "Racial Discrimination Act of 1975"[4] and 42 U.S.C. § 1981. Defendant argues that Plaintiff fails to plausibly allege any racial discrimination because Plaintiff does not adequately allege that race was the but for cause of her alleged injury. *See Motion to Dismiss* [#22] at 8-11.

Under 42 U.S.C. § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" The making and enforcement of contracts includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." ~~42 U.S.C. § 1981(b). These~~ rights "are protected against impairment by nongovernmental

---

[4] Defendant points out that the Racial Discrimination Act of 1975 is an Australian law, not an American law, and is thus inapplicable; Plaintiff does not dispute this point. *See Motion to Dismiss* [#22] at 11-12; *Response* [#24] at 2 n.2. Accordingly, the Court focuses its analysis on the § 1981 aspect of Plaintiff's claim.

discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). By its terms, Section 1981 creates four protected interests: "(1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments." *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989).

To establish a prima facie case of discrimination under § 1981, Plaintiff must show that: (1) she is a member of a protected class; (2) Defendant intended to discriminate against her on the basis of race; and (3) the discrimination interfered with a protected activity as defined in § 1981. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001). These prima facie elements "are flexible and are not to be applied rigidly"; however, Plaintiff still "must show that [D]efendant intentionally discriminated against her." *Id.* at 1102, 1111.

Here, the Court finds that several of Plaintiff's allegations are not entitled to the presumption of truth because they are entirely conclusory, including her allegations that she was specifically targeted because of her race or ethnicity. *See Fifth Am. Compl.* [#14], ¶¶ 18-20; *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (identifying this kind of allegation as conclusory).

Setting the conclusory allegations aside, Plaintiff's well-pleaded factual allegations show that:

She purchased a ticket with no assigned seat;

Defendant's lead agent announced that the flight was overbooked by about 10 people;

Of the people without seat assignments, eventually two groups without seat assignments were boarded: an Asian woman with a baby, and 8 to 10

members of an African American family, of whom "most" did not have assigned seating;

After these two groups were boarded, Plaintiff approached Defendant's agents "to explain and impress upon the agents that [her] flight was a connecting flight, and that there were no other alternative/feasible flights for [her] schedule for at least a week";

Defendant's agents rudely responded;

The flight left without her;

The group of passengers who were not given seats included several Hispanic passengers, a white male, Plaintiff, and another Indian woman;

Defendant's lead agent yelled at another passenger in "what sounded like a mocking Indian accent" while pointing to each passenger in front of him and asking that other passenger if she thought she was more important than each of them;

Defendant's agents promised not only refunds but also additional compensation;

Plaintiff "had to tilt [her] head into [the lead agent's] personal space to hear him";

Plaintiff never accepted or received a refund from Frontier; and

Defendant's agents had a passenger log in front of them during boarding, they called out Plaintiff's last name and that of the other woman of Indian descent, and they made a notation on the passenger log before asking them to take a seat.

*Fifth Am. Compl.*, ¶¶ 3-4, 7-10, 12, 14, 17, 19.

Plaintiff plausibly alleges that she is a member of a protected class—a woman of Indian descent. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (stating that, in enacting § 1981, Congress intended to protect "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics"). However, none of the alleged events, even taken as true and viewed in

the light most favorable to her, suggest racial discrimination. By her own admission, she and other stand-by passengers were told that the flight was overbooked by about 10 people, and while Defendant was able to board some extra passengers, it could not board them all. *Fifth Am. Compl.* [#14], ¶¶ 7, 10. The group left behind was not just Indian women like Plaintiff, but included a white man, a mixed-race man, and several Hispanic people. *Id.*, ¶ 10. The stand-by passengers who were later permitted to board were also racially diverse. *Id.*, ¶ 7. Nothing suggests that Defendant's agents considered race as they allowed some stand-by passengers to board. By Plaintiff's own admission, no matter which combination of passengers had been boarded and no matter which six passengers had been left behind, each group would have been racially diverse.

The Court declines to infer discrimination arising from a boarding gate agent's calling out a standby passenger's last name, writing something on the passenger log, and then asking her to take a seat. *See Fifth Am. Compl.* [#14], ¶ 19. Even if Defendant's gate agents were unprofessional or rude to Plaintiff and other passengers, that does not demonstrate an intent to discriminate *based on her race*. *See, e.g.*, *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (stating that the defendant's agent "could be unconscionably rude and unfair to [the plaintiff] without violating Title VII").

In sum, Plaintiff fails to plausibly allege intentional or purposeful racial discrimination and, therefore, Claim Two (racial discrimination) should be dismissed for failure to state a claim. *Vu Phan v. State Farm Ins. Co*, No. 17-cv-03073-GPG, 2018 WL 10425417, at *5 (D. Colo. July 30, 2018). Accordingly, the Court **recommends** that Claim Two (racial discrimination) be **dismissed without prejudice**. *See, e.g.*, *id.* (dismissing without prejudice pro se plaintiff's implausibly pleaded § 1981 claims).

**B.      Claim One (Breach of Contract)**

The Court next considers Plaintiff's first claim for breach of contract, over which she asserts diversity jurisdiction exists.

Pursuant to 28 U.S.C. § 1332, a district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"

In the Complaint [#14], Plaintiff represents that she is a citizen of Florida, Defendant is incorporated under Colorado laws and, therefore, the parties are citizens of different states. *Fifth Am. Compl.* [#14] at 2. Plaintiff also represents that the "amount in controversy exceeds $75,000." *Id*. However, closer scrutiny of Plaintiff's breach of contract claim reveals that is not so. Specifically, Plaintiff claims that, due to Defendant's contractual breach, she "lost approximately $1000.00 in flights" and "the opportunity to attend [her] grandson[']s birth announcement and family reunion in his honor." *Id*., ¶ 16. To the extent Plaintiff seeks emotional damages, *see id*. at 10 (requesting "emotional distress" damages), those are not recoverable in a breach of contract claim where the breach was not willful and wanton. *See Brossia v. Rick Constr., L.T.D. Liab. Co.*, 81 P.3d 1126, 1131 (Colo. App. 2003). Plaintiff has not alleged willful and wanton conduct. To the extent that Plaintiff represents the amount in controversy exceeds $75,000 because she seeks "[attorney] fees" if she prevails, *see id*., she has not asserted a "right, based on contract, statute, or legal authority, to an award of attorney's fees if [she] prevails in the litigation[.]" *Gerig v. Krause Publ'ns, Inc.*, 58 F. Supp. 2d 1261, 1264 (D. Kan. 1999) (internal quotation marks and citations omitted). Therefore, any anticipated fee award may not be included in determining whether the jurisdictional minimum is met. *See Plus*

*Sys. Inc. v. New England Network, Inc.*, 804 F. Supp. 111, 116-17 (D. Colo. 1992) (noting well established principle "that attorneys' fees may be included in the amount in controversy for purposes of satisfying the jurisdictional requirement where such fees are provided by statute or contract.") (collecting authorities). That leaves "approximately $1000.00 in flights" as the amount in controversy. Because $1,000 falls well short of the $75,000 jurisdictional threshold, diversity jurisdiction does not exist.

Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" *See also Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (stating, "[once] the bases for federal subject matter jurisdiction have been extinguished . . ., the district court may decline to exercise continuing . . . supplemental jurisdiction over [the] plaintiff's state claims"). Because the Court has recommended dismissal of Plaintiff's 42 U.S.C. § 1981 racial discrimination claim, the Court **further recommends** that the District Judge decline to exercise supplemental jurisdiction over Plaintiff's breach of contract claim (Claim One) and dismiss that claim **without prejudice** pursuant to 28 U.S.C. § 1367(c)(3). *See McDonald v. Sch. Dist. No. 1*, 83 F. Supp. 3d 1134, 1153-54 (D. Colo. 2015) ("Finding no compelling reason to retain jurisdiction, the Court will dismiss plaintiff's remaining claims without prejudice"). Because of the recommendation to dismiss the breach of contract claim without prejudice, the Court **denies as moot** Plaintiff's Request for the Court to Consider Supplemental Evidence [#28].

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion to Dismiss [#22] be **GRANTED** and the Complaint [#14] be **DISMISSED WITHOUT PREJUDICE**.

IT IS **ORDERED** that Plaintiff's Request for the Court to Consider Supplemental Evidence [#28] is **DENIED AS MOOT**.

IT IS FURTHER **ORDERED** that any party may file objections Recommendation **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 20, 2024          BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.  _____1:2023cv01875_____

Kusmin L. Amarsingh _____, Plaintiff

v.                                                    **Jury Trial requested:**
                                                      **(please check one)**
                                                      **_X__ Yes ___ No**

_Frontier Airlines, Inc._____, Defendant

*(List each named defendant on a separate line.  If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names of the defendants listed in the above caption must be identical to those contained in Section B.  Do not include addresses here.)*

---

## COMPLAINT

---

## NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Kusmin L. Amarsingh, 5 Magnolia Drive, Mary Esther, FL 32569

(Name and complete mailing address)

862-201-1305;  lindaamarsingh@gmail.com

(Telephone number and e-mail address)

## B.   DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:   Frontier Airlines, 4545 Airport Way, Denver, CO 80239

(Name and complete mailing address)

801-401-9021.

(Telephone number and e-mail address if known)

## C.   JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

___x___   Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

The Racial Discrimination Act of 1975, as embodied in the Equal Protection Clause, of the 14th Amendment, to the Consitution of the United States of America

___x___   Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of ___Florida___.

If Defendant 1 is an individual, Defendant 1 is a citizen of _____.

If Defendant 1 is a corporation,

Defendant 1 is incorporated under the laws of ___Colorado___ (name of state or foreign nation).

Defendant 1 has its principal place of business in ___Colorado___ (name of state or foreign nation).

2

(*If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.*)

**D. STATEMENT OF CLAIM(S):**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

1) CLAIM 1: Frontier Airlines breached their contract with me by failing to provide fair and reasonable transport on an aircraft after I had substantially performed on said contract. Frontier also breached their covenant of good faith and fair dealing, and failed to fulfill reasonable expectations, arising out of Frontier's failure to refund my full ticket prices for unused tickets, and, by failing to accommodate my more difficult travels plans ahead of passengers with a direct flight, particularly since there was another direct flight from Philadelphia to Orlando about an Hour after my flight. My flight on the other hand, went from Philadelphia to Orlando to St. Louis. Frontier did not have an available connecting or other flight that would accommodate my travel plans for at least a week.

2) CLAIM 2: Frontier discriminated against me based on my race by racial profiling, in violation of: The Racial Discrimination Act of 1975: (1) It is unlawful for a person to do any act involving a distinction, exclusion, restriction or preference based on race, color, descent or national or ethnic origin which has the purpose or effect of nullifying or impairing the recognition, enjoyment or exercise, on an equal footing, of any human right or fundamental freedom in the political, economic, social, cultural or any other field of public life. § 11 Access to places and facilities It is unlawful for a person: (a) to refuse to allow another person access to or use of any place or vehicle that members of the public are, or a section of the public is, entitled or allowed to enter or use, or to refuse to allow another person access to or use of any such place or vehicle except on less favourable terms or conditions than those upon or subject to which he or she would otherwise allow access to or use of that place or vehicle; (b) to refuse to

3

allow another person use of any facilities in any such place or vehicle that are available to
members of the public or to a section of the public, or to refuse to allow another person use of
any such facilities except on less favourable terms or conditions than those upon or subject to
which he or she would otherwise allow use of those facilities; or (c) to require another person to
leave or cease to use any such place or vehicle or any such facilities; by reason of the race,
colour or national or ethnic origin of that other person or of any relative or associate of that other
person. Section 42 U.S.C. § 1981 of Airline Deregulation Act: …prohibits any air carrier from
subjecting persons in air transportation to discrimination on basis of race, color, national origin,
sex, or ancestry See Oliver v. Joint Logistics Managers, Inc., 893 F.3d 408, 411 (7th Cir. 2018).
Section 1981 of the Civil Rights Act of 1866; protects the right of all persons to make and
enforce contracts regardless of race" Carter v. Chi. State Univ., 778 F.3d 651, 657 (7th Cir.
2015) (quoting in part 42 U.S.C. § 1981(a)).

FACTS:

1. On 13 June 2023 I arrived at the Philadelphia Airport to catch my flight from Philadelphia,
connecting through Orlando, FL, and to my final destination, St. Louis, Missouri on Flight 1171
and 1211. I had traveled to Philadelphia to attend a funeral of a close family friend, and loved
one.

2. My fight to St. Louis was to reunite with my minor daughter who was missing me
tremendously, my husband, and, my recently born Grandson, Jonah who I had yet to meet.

3. I checked into my flight online and had no bags other than a small backpack that fits
comfortably under my seat. I arrived at Gate 6A well before the flight departure time, and waited
to start the boarding process. As the time drew near to boarding, the Frontier Agents on duty, of
which there were three, announced that the flight was overbooked by approximately 10
passengers. The lead agent, Mr. Tyron or Tyrone, announced that volunteers will be given a
refund of their flight, a new flight. Subsequently the agent then announced that they would
compensate volunteers $800.00 in addition to the flight refund and rebooking. Once again, there
were no volunteers.

4

4. Subsequently, the boarding process started by zone number which is common practice. I approached the agent when my zone was called and provided my ID Card and Boarding Pass. I had not yet been assigned a seat, and my boarding pass stated &quot;Seat: TBD (To Be Determined).

5. The agent then directed me to the back of the line because they were boarding passengers with assigned seats only. I requested a seat assignment and again was told I needed to wait until after the boarding process. There was a cluster of people and no real line, so I inquired from a group of passengers whether they were also waiting for a seat assignment. They responded in the affirmative. We started talking about our travel plans, and the African American family of about 8 to 10 people were traveling to Orlando as their final destination. Most of the party did not have assigned seating and we shared our frustrations with each other. The passengers were or appeared to be African American passengers, based on their physical characteristics. Similarly, the Frontier agents on duty were or appeared to be African American, based once again on my observation.

6. Among the people waiting for seat assignments were approximately six passengers, who either were or appeared to be Hispanic, one male passenger, who was or appeared to be White, and a gentleman who was or appeared to part of African American. Additionally, there was an apparent Asian woman traveling with a child, accompanied by a white female.

7. After all passengers with seat assignments boarded, the Frontier agent asked the party of three, with the child passenger, if one of the adults would give up their seat. The child and the adult Asian female passenger were given seats and allowed to board. Next, the lead Frontier Agent, Tyron(e) came out from behind the Frontier Counter and approached the party of 8-10 African American passengers and ushered them on board. One of the young women I was speaking to looked at me in a knowing manner as she boarded because we conversed on our travel plans, and, the possibility we may not make the flight. Additionally, she was in close enough proximity to hear the Frontier agents yell at me and their treatment of me, and the other passengers who were asked to remain seated. Like me, her group did not have a seat assignment. The Courts have

recognized that racial profiling is a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

8. Once all the African American passengers were boarded, the agents resumed their position behind the Frontier counter. I once again approached the agents to inquire about my seat assignment, and hoped to explain and impress upon the agents that my flight was a connecting flight, and that there were no other alternative / feasible flights for my schedule for at least a week. Rather than permit me to speak, one of the agents, a young African American female, with long blonde braids, kept interrupting me saying 'have a seat' 'have a seat' and kept saying about 25 more times. She spoke at me in a loud voice as she stared right at me in a rude and very unprofessional manner. I continued to speak in between her chants, so she changed her tune to 'I can hear you' 'I can hear you' she parroted them for some time without allowing me to get a word in.

9. Of the passengers left without seats, none were African American, except the possible mixed race gentleman I mentioned previously. The lead agent called that individual to the front of the line, and provided him alone with some information which I could not hear. I did not have a phone with me, and before leaving I asked the young man to use his phone to call a taxi, and he kindly obliged. After a few minutes the gentleman left the gate and went on his way. The rest of the passengers, approximately 5 Hispanic / Spanish Speaking passengers, two of Indian descent, myself being one, and one white male were told to have a seat and wait our turn.

10. At no time did the Agents inform us of the status of the flight, and the monitor continued to say. In fact the plane had already departed, but as the passengers were unaware of this we were under the impression that they would call us soon for seats. 10. 30 minutes after the flight departed, the Agents finally updated the monitor to 'Departed'. There was a moment of quiet desperation and then everyone stated making their way towards the Frontier counter. A number of the passengers could not speak English, but they were clearly asking for updates and for assistance on getting to their respective destination. The Agents became irate and told everyone to sit down in a very loud voice. The Indian female passenger asked me if I knew what was going on. I told her I did not and so she approached the counter to speak with the lead agent.

6

I was standing within arm's length of her and the lead agent began yelling at her in what sounded like a mocking Indian accent and while pointing to each passenger in front of him asked her do you think you are more important than her, him, her.....etc'. The young woman was clearly distraught and told the agent she was traveling on an international flight with a connecting flight to Orlando then onto St. Louis. She was soft spoken and the lead agent kept on speaking in a raised and very unprofessional manner. Like me, her request was met with more instructions to 'sit down' again in a commanding and extremely disrespectful manner.

11. Among the left passengers, one male Hispanic passenger, who spoke limited English asked what he was supposed to do. The agent gave him a meal voucher and told him to return the following day and they would try to get him on a flight. He became irate and said, that is what you told me yesterday. He inquired whether tomorrow's flight was similarly overbooked, and the agents looked up the flight, and told him yes it was. He then told the agent he wanted a refund and that he would not come back the following day because the same thing would likely happen, for the third time.

12. Sometime later, the lead agent asked everyone for their name, email, and, phone number so that he can process refunds and compensation. He stated that we would all receive $400.00 plus the cost of our ticket. The two female attendants were supposed to process this for each passenger, but when I went to them they only offered to refund my flight or rebook my flight.

13. I attempted to inform the remaining agents was the lead agent said, and asked that they could kindly get clarification from him. They refused to listen and instead insisted that they already heard what he said and that I could only elect to receive a refund OR a new flight. One female agent was handing out a card with the link to Frontier's refund, with no other information or saying anything to anyone. She was very nonchalant and appeared to be bored.

14. I again asked the lead agent to clarify for the benefit of everyone, particularly because it was very apparent that the other passengers, with the exception of the white male and myself, had little command of English. The lead Frontier Agent then mumbled softly to the point I had to tilt my head into his personal space to hear him and he reiterated that we should receive

7

compensation AND a refund of our flight, because as he stated 'we were inconvenienced', along with a rebooked flight. Shortly after the Lead Agent left the counter and walked away. There were three agents left at the counter. One male, a Mr. Rivera, and, two females including the young woman with the long blonde braids. I took a seat along with the other passengers and waited for approximately an hour.

15. I returned to the Counter and asked the remaining agents whether the Mr. Tyrone, the lead agent, was going to return with a check or money disbursement, and whether I am required to still wait at the gate. They advised me that he was not going to return and that I will receive an email with my refund information. I therefore left the gate area and exited the Airport. I observed that there was only one passenger left waiting at the gate, the other young woman of Indian descent. She asked me to stay with her and appeared to still be distraught because of the male agent's treatment of her earlier on. Unfortunately, I could not because I did not have a phone and needed to wait outside for my ride back to my hotel.

16. The following day, I booked a flight with American Airlines taking me to Destin Florida, my home. I had no choice because there were no flights to St. Louis for at least another week with Frontier Airlines. As a result, I incurred costs associated with returning home rather than visiting St. Louis. Additionally, I had no choice but to cancel my flight from St. Louis was for my daughter and me. In total I lost approximately $1000.00 in flights, but more importantly lost the opportunity to attend my grandson&#39;s birth announcement and family reunion in his honor.

17. Subsequent to this incident, I filed two complaints with Frontier Airlines both of which were met with disregard and insistence that I was already refunded my flight. This is wholly untrue as I have not accepted nor received any money or compensation of any kind from Frontier Airlines. I have also filed a complaint with the Department of Transportation as that body is tasked with regulating instances of racial discrimination by Airlines

18  Frontier Airlines, by its Agents, under a theory of Agency Liability, did racially discriminate against me based on my race through racial profiling. Under a theory of Agency Liability, a complaint must demonstrate that the Agents had authority to act on behalf of the Principal. In the

instant case, the Frontier Agents wore Frontier uniforms, and stood at the Frontier counter. They were in charge of boarding the plane, and had authority to select which passengers to board based on non-discriminatory characteristics. Additionally, the Lead Agent in particular had actual authority to determine value of refund to each passenger / customer. Federal Rule of Civil Procedure 50(b).

19. My flight ticket was a contract with Frontier Airlines that they would transport me from Philadelphia to St. Louis, Missouri on the date and time of my airline ticket, or within the period of my checking in. By checking into my flight, I substantially performed on the contract. Although I did not contract for a specific seat, neither did many other passengers, and, I was still entitled to a seat and transport to my final destination unless I elected for a refund of my ticket which I did not. Frontier Airlines racially discriminated against me when it's Agents racially profiled passengers and excluded me because I was not or appeared to be African American. I am clearly of Indian descent, and, my name on the passenger log, last name 'Amarsingh' is also telling as to my descent. The Frontier agents had the passenger log in front of them during the boarding. In fact, at one point, the lead agent called out my last name and the last name of the other Indian passenger who's appearance, Indian accent, and, her last name was also clearly of Indian descent, Chaudry or similar. He called our names and we both walked to the front desk. He wrote something on the passenger log and asked us to take a seat.

20. Frontier Airline agents degraded me and deliberately humiliated me by yelling at me in a crowded airport because I was not African American. Absolutely no one deserves to be treated in this manner, especially on the basis of race. Frontier Airlines is under an obligation to provide airline transportation based on a rule of contract such that perform due diligence and make reasonable accommodations to provide transportation from point A, to point B. Frontier Airlines disregarded the needs of its customers and based their decision on which passengers to assign seats based on race and preferential treatment based on race. As discussed in Facts above, there was another Frontier flight leaving Philadelphia into Orlando scheduled to depart a mere hour later. It therefore stands to reason that passengers with connecting flights, or in the instance of the one Hispanic male who had already been inconvenienced the day before, to take priority in seat assignments. I am a United States Citizen, a United States Army JAG Attorney, and a proud

9

veteran. None of this should matter when traveling. The blatant disrespect, mistreatment, and disregard towards the non-African American passengers is a clear violation of the Civil Rights Act, and Airline Regulations.

2. ADMINISTRATIVE ACTION – PRIOR TO FILING 1. On or about 15 June 2023, after arriving at my home and having access to my phone and computer, I contacted Frontier Airlines via their online chat service, and by email. I do not have a copy of the chat, however, I have attached a copy of the email exchange between me and Frontier. Frontier insisted that I received compensation at the Airport, which is wholly untrue. I intend on requesting the chats with Frontier during discovery. On the same day, I completed the online complaint form on the Department of Transportation website stating the facts as presented here, and requested their assistance. I do not have a copy of this document; however, I will request it in discovery.

**E. REQUEST FOR RELIEF:**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

1. In addition to the discovery stated above, I intend on requesting the release of the names and contact information of all passengers left behind on flight 1171 Philadelphia to Orlando, on 13 June 2023.

2. I request compensation in the amount of $15 million dollars should I be granted summary judgement. Should this case go to trial, I request $100 million dollars for fees, expenses, and, emotional distress caused by Frontier Airlines and its agents. I request discovery in this case, of all complaints filed against Frontier Airlines on the basis of race, or, any other discriminatory practice in violation of the laws cited above. I also request discovery into the facts and circumstances of all passengers left behind on the flight, their contact information, their names, and, addresses. I request a jury in this case. The facts presented here are irrefutable and discovery by Frontier of the passenger log, their tickets, in relation to the passengers left behind, will demonstrate in no uncertain terms that this case warrants summary judgement for the Plaintiff.

3. The relief sought here is reasonable for the harm caused, and, to send a clear message to Frontier and all airlines that they must ensure equal treatment of all passengers. As the facts are clear on its face, I request summary judgment.

**F.   PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*Kasmin L. Amarsingh*
_____
(Plaintiff's signature)

August 14 2023
_____
(Date)

Case No. 1:23-cv-01875-GPG-KAS   Document 24   Filed 11/13/23   USDC Colorado   Page 1 of 4

Appellate Case: 24-1391   Document: 10-3   Date Filed: 11/06/2024   Page: 44
Amarsingh v. Frontier, Case No. 1:23-cv-01875-GPG-KAS

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
11/13/2023
**JEFFREY P. COLWELL, CLERK**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF COLORADO

Case No. 1:23-cv-01875-GPG-KAS

KUSMIN L. AMARSINGH

District Judge Gordon P. Gallagher

     Plaintiff,                              Magistrate Judge Kathryn A. Starnella

v.

FRONTIER AIRLINES, INC.

     Defendant.

---

### PLAINTIFF'S RESPONSE TO MOTION TO DISMISS[1]

---

**NOW COMES** Plaintiff Kusmin L. Amarsingh, by Pro Se representation, responding to Defendant, Frontier Airline's Inc. (hereafter Frontier) Motion To Dismiss pursuant to 12(b)(6), and in support thereof states as follows:

## I: CLAIMS:

### A) BREACH OF CONTRACT:

1. First, this case is about a breach of contract by Frontier Airlines when they knowingly, and intentionally overbooked Ms. Amarsingh's flight to her detriment; Frontier overbooked the flight with more passengers than there were seats and knew that some passengers would be left behind. Most importantly, Frontier Airlines had the ability to prevent this Breach of Contract but chose not to.

2. Second, when an Airline chooses to overbook a flight, they assume the responsibility of accommodating their passengers lawfully, reasonably, and, in good faith, guided by their Carrier Contract and applicable laws and regulations. Additionally, an Airline must inform its affected passengers by providing notice of the selection criteria and of their rights.

3. Third, Frontier Airlines denied Ms. Amarsingh from boarding her flight through an unlawful selection process.

4. Four, Frontier Airlines failed to adequately inform Ms. Amarsingh of the remedies available to her resulting from their breach of contract.

### B) CLAIM 2: RACIAL DISCRIMINATION

1. After Frontier breached their contract with Ms. Amarsingh, they then denied her priority travel by relying on unlawful selection criteria; Ms. Amarsingh checked in to her flight first, arrived at the gate first, and Frontier knew her travel was more complex than the other passengers. There were no other flights from Philadelphia to St. Louis for 7 days, a fact Ms. Amarsingh learned when the Agents first announced that they were overbooked.

---

[1] Plaintiff adopts all facts and law previously asserted in her original complaint to this Response.

Amarsingh v. Frontier, Case No. 1:23-cv-01875-GPG-KAS

2. Frontier did have another direct flight from Philadelphia to Orlando 1 hour later at the same gate. Frontier deliberately and knowingly approached and selected African American passengers and escorted them to the front of the line for boarding. The reasonable conclusion, considering all facts and circumstances, is that Ms. Amarsingh was denied boarding because she was not African American.

3. Assuming arguendo, that Frontier's assertion is true, and they did make a plausible determination to Board certain groups to keep them together, they had an obligation to inform Ms. Amarsingh of that determination, which they did not.

4. Frontier disregarded any lawful, reasonable, appropriate, or, common sense approach to the selection criteria; and then, humiliated Ms. Amarsingh for trying to assist. Ms. Amarsingh was not, as Defense asserts, trying to take a seat away from someone, rather, she was trying to make sure everyone had a seat, and with the least disruption to their travel, including her own.

## LAW[2] / ARGUMENT

1. Plaintiff must only satisfy simple pleading requirements of Fed. R. Civ. P. 8(a) to survive a motion to dismiss; Plaintiff must only set forth short and plain statement of the claim(s) showing that she is entitled to relief, and need only give respondent fair notice of the nature of the claim and petitioner's basis for it; given Federal Rules' simplified standard for pleading, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. PSA, Inc. v. P.R. Tel. Co., 336 F. Supp. 2d 173, 2004 U.S. Dist. LEXIS 21407 (D.P.R. 2004). Plaintiff need not cite proper statute for relief in her pleading nor a statement of her legal theory. *See* Northrop v. Hoffman of Simsbury, Inc., 134 F.3d. 41, 39 Fed. R. Serv. 3d et al. USCS Fed Rules Civ Proc R 8.

2. Frontier Airlines requests dismissal because Frontier can come up with a plausible explanation other than race for leaving Ms. Amarsingh behind. That standard puts Rule 8(a) on its head. Ms. Amarsingh pleads facts to support her allegation that Frontier racially profiled her by disregarding all lawful selection criteria, confirming that she was not African American by calling her and another Indian passenger to the front desk, then, proceeded to hand-select only African American passengers from the waiting area, leaving all the non-African American passengers behind to fend for themselves. *The one mixed-race gentleman was called to the front desk and provided some information outside the earshot of the other passengers just before he departed the Airport.*

3. Frontier also states that Ms. Amarsingh's racial discrimination claim is all in her head (based on speculation). No it is not; it is in Frontier's computer preserved for this Court to examine, and, to determine the truth. An examination of the check-in roster, security-check timestamps, video footage, itinerary, testimony by the other bumped passengers, and race of the passengers boarded vs. those bumped, will support Ms. Amarsingh's claims that she was discriminated against based on her race.

4. Frontier provided its Carrier Contract and directed this Court's attention to Section 18 which states: *Involuntary denial of accommodation: If insufficient passengers volunteer, passengers who cannot be accommodated on the flight will be denied boarding and Frontier will provide transportation on a Frontier flight to the same destination.*

---

[2] Australian Law: my apologies to the Court and opposing Counsel on this embarrassing error if I misguided either.

Amarsingh v. Frontier, Case No. 1:23-cv-01875-GPG-KAS

5. Ms. Amarsingh respectfully directs the Court's attention to the following excerpts of the Defendant's contract which demonstrates that Frontier violated its own covenant of good faith and reasonableness.

*Section 8(B). Tickets. Tickets are honored <u>only</u> in the order in which they are issued.*

*Section 18(A)(B)(C): Denied Boarding Compensation (A) Voluntary – passengers on a flight with an overbooking will be encouraged to voluntarily relinquish their seats in exchange for alternate travel...(B) Involuntary: (see above) (C) Amount of Compensation – which provides a formula for determining compensation rates based on inconvenience of the passenger by considering arrival times, length of delay etc.*

*Section 18(E): Involuntary Denied Boarding: A passenger may accept or deny compensation offered in exchange for being bumped and negotiate further with the Airline.*

6. The Department of Transportation (hereafter DOT) regulates Air Travel to ensure fair and safe accommodation and transportation. In so doing DOT provides the procedures that Airlines MUST follow in instances of overbooking. *See* attached Bumping & Oversales | US Department of Transportation.

<u>*Involuntarily Giving Up Your Seat (Bumping)*</u>*: Sometimes, when an airline asks for volunteers to give up their seats and fly on a different flight, there are not enough volunteers. When this occurs, the airline will select passengers to give up their seats. This is called "involuntary denied boarding" or "bumping."*

<u>*How does an airline determine who has to give up their seat?*</u> *While it is legal for airlines to involuntarily bump passengers from an oversold flight when there are not enough volunteers, it is the airline's responsibility to determine its own <u>fair</u> boarding priorities. If there are not enough passengers who are willing to give up their seats voluntarily, an airline may deny you a seat on an aircraft based on criteria that it establishes, such as the passenger's check-in time, the fare paid by the passenger, or the passenger's frequent flyer status. However, the criteria cannot subject a passenger to any unjust or unreasonable prejudice or disadvantage. For example, an airline could not lawfully use a passenger's race or ethnicity as a criterion.*

<u>*Do airlines have to tell me my rights when I'm involuntarily bumped?*</u> *Yes. DOT requires airlines to give all passengers who are bumped involuntarily a written statement describing their rights and explaining how the carrier decides the selection criteria for who gets bumped.*

7. Frontier Airlines intentionally disobeyed and disregarded all laws of logic, common sense, their own contract, the Federal Guidelines, and, commonly held notions of fairness and reasonable standards. They intentionally withheld notice of rights from Ms. Amarsingh, and subsequently harassed her when she tried to learn them.

**CONCLUSION**

1. The Defendant's motion to dismiss is unresponsive to the clearly outlined facts in Ms. Amarsingh's complaint. The issue was never whether she had a regular contract with Frontier Airlines, the issue was whether Frontier failed in their duty to provide her with fair and reasonable accommodation because of their breach. The facts are the facts, and Defense can very easily determine the truth of the assertions here by following its own trail of records, and, by upholding the terms of their Contract of Carriage provided to the Court.

Amarsingh v. Frontier, Case No. 1:23-cv-01875-GPG-KAS

2. To speak plainly, Ms. Amarsingh has stated sufficient facts, based on reasonably available evidence in the Defendant's control, which will substantiate her claims.

3. As to the Defense's inquiry regarding Ms. Amarsingh's Pro Se representation, she has never practiced in Federal District Court, and for judicial economy would ask that the Court permit some leniency in procedural aspects of her case.  She has no objection as to treatment on the pleadings and legal standards.  As to damages and relief, she request attorneys' costs and fees.

4. As to the Defense categorizing Ms. Amarsingh as a 'Stand-by' passenger, they are wrong.  A Standby passenger is boarded subject to availability of seat space at departure time and only after all passengers having confirmed reservations for the flight have been boarded.  The distinction is Ms. Amarsingh had a confirmed reservation, therefore she was a 'bumped' passenger not on standby.  See Frontier Airlines Carrier Contract, Page 1, Section 2 Definitions at I.

5. Finally, this experience has caused Ms. Amarsingh great emotional distress both because of her own treatment by Frontier and witnessing the treatment of other passengers.  Considering Ms. Amarsingh's 16 plus years of military service, she has a deep sense of responsibility to assist others.  She saw something, tried to do something about it, and continues to do so.  This Court should as well.

## RELIEF/DAMAGES

WHEREFORE, Ms. Amarsingh hereby renews her request for Summary Judgement on both claims.  However, if the Court is not so inclined to grant summary judgement on Ms. Amarsingh's Racial Discrimination Claim, she respectfully asks that this Court grants Summary Judgement as to Claim 1 for Breach of Contract, and award half the requested damages in compensation, emotional distress, costs, and, fees.

## CERTIFICATE OF SERVICE

I, Kusmin L. Amarsingh, the Plaintiff in this action, do hereby certify that I have electronically filed this response with the United States District Court for the District of Colorado via email to the Clerk of Court, and that I have served a copy of the same to Frontier Airlines' attorney, Mr. Brian Maye via electronic mail on November 12, 2023.

Kusmin L. Amarsingh
Plaintiff
4 Shady Lane Dr.
Mary Esther, FL 32569
Email: lindaamarsingh@gmail.com
Tel:  862-201-1305

🇺🇸 An official website of the United States government Here's how you know ✓

Home \ Aviation Consumer Protection

## In This Section 

**Related Links**

- Press Release: DOT Relaunches Air Consumer Website

**Tags**

- Air Consumer

**Bumping & Oversales**

# Bumping

The vast majority of the time, passengers don't have any problems boarding their flights. But occasionally, airlines may "bump" passengers and have them give up their seats. Bumping, also known as "denied boarding," happens when there are more passengers scheduled to fly on an airplane than available seats.

The business practice of bumping is not illegal. Airlines oversell their scheduled flights to a certain extent in order to compensate for "no-shows." Most of the time, airlines correctly predict the "no shows" and everything goes smoothly. But sometimes, passengers are bumped as a result of oversales practices.

Not all airlines engage in the practice of selling more tickets than available seats on an aircraft. Some airlines simply sell enough tickets to fill every seat. Although this practice significantly reduces the chances that a passenger will be bumped, the airline may still bump passengers in rare circumstances - such as when the seat is needed for a Federal Air Marshall.

It's important for passengers to understand why they may be asked to give up their seats and what rights they may have. Before an airline forces a passenger to give up his/her seat due to overbooking, the airline must ask passengers on the flight if they are willing to give up their seat voluntarily in exchange for compensation.

# Voluntarily Giving Up Your Seat

When a flight has more passengers who are ready to fly than there are seats available, airlines must first ask passengers to give up their seats voluntarily, in exchange for compensation, before bumping anyone involuntarily. Airlines may offer passengers incentives, such as money or vouchers, to volunteer. There is no limit to the amount of money or vouchers that the airline may offer, and passengers are free to negotiate with the airline.

- If an airline offers a reduced rate ticket, free ticket, or voucher to passengers in exchange for volunteering to fly on a different flight, the airline must tell passengers about any and all restrictions that may apply to the use of the reduced rate ticket, free ticket, or voucher before passengers decide whether or not to give up their confirmed reserved space on the currently oversold flight.

If you decide to give your seat back to the airline in exchange for compensation and a later flight, you may want to get answers to these important questions:

- When is the next flight on which the airline can confirm your seat? The alternate flight may be just as acceptable to you. On the other hand, if the airline offers to put you on standby on another flight that's full, you could be stuck at your departure airport for a long time.

- Will the airline provide other amenities such as free meals, a hotel room, transfers between the hotel and the airport, and a phone card? If not, you might have to spend the money it offers you on food or lodging while you wait for the next flight.

- How long is the ticket or voucher good for?

- Is the ticket or voucher unusable during holiday periods when you might want to use it?

- Can it be used for international flights?

# Involuntarily Giving Up Your Seat (Bumping)

Sometimes, when an airline asks for volunteers to give up their seats and fly on a different flight, there are not enough volunteers. When this occurs, the airline will select passengers to give up their seats. This is called "**involuntary denied boarding**" or "**bumping.**"

**How does an airline determine who has to give up their seat?**

- While it is legal for airlines to involuntarily bump passengers from an oversold flight when there are not enough volunteers, it is the airline's responsibility to determine its own fair boarding priorities.

- If there are not enough passengers who are willing to give up their seats voluntarily, an airline may deny you a seat on an aircraft based on criteria that it establishes, such as the passenger's check-in time, the fare paid by the passenger, or the passenger's frequent flyer status. However, the criteria cannot subject a passenger to any unjust or unreasonable prejudice or disadvantage. For example, an airline could not lawfully use a passenger's race or ethnicity as a criterion.

**Do airlines have to tell me my rights when I'm involuntarily bumped?**

- Yes. DOT requires airlines to give all passengers who are bumped involuntarily a written statement describing their rights and explaining how the carrier decides who gets bumped.

**Can airlines involuntarily bump me after I have boarded the flight?**

- Generally, no. If you have met the following conditions, airlines are not allowed to deny you permission to board, or remove you from the flight if you have already boarded the flight:
  - You have checked-in for your flight before the check-in deadline set by the airlines; and
  - A gate agent has accepted your paper boarding pass or electronically scanned your boarding pass and let you know that you may proceed to board.

- However, airlines may deny boarding or remove you from a flight even after accepting your boarding pass and informing you that you may proceed to board if the denial or removal is due to a safety, security, or health risk, or due to a behavior that is considered obscene, disruptive, or otherwise unlawful.

**Are airlines required to pay me money when I'm involuntarily bumped?**

- It depends. An airline is required to compensate you after involuntarily bumping you from an oversold flight in certain situations. However, there are many situations where you are not entitled to compensation.

**Bumped passengers are NOT eligible for compensation in the following situations:**

- Aircraft Change - A smaller plane is substituted for the larger one the airline originally planned on using due to operational or safety reasons.

- Weight and Balance - Weight or balance restrictions that apply to planes with 60 or fewer seats for operational or safety reasons.

- Downgrading - A passenger is downgraded from a higher class of seating to a lower class. In this case, the passenger is entitled to a refund for the difference in price.

- Charter Flights - A flight contracted for a specific trip that is not part of an airline's regular schedule.

- Small Aircraft - Scheduled flights on planes holding fewer than 30 passengers.

Case No. 1:23-cv-01875-GPG-KAS   Document 24-35   Filed 03/03/25   Page 7 of 10

Appellate Case: 24-1351   Document: 10-3   Date Filed: 06/23/2024   Amarsingh v. Frontier
Case No. 1:23-cv-01875-GPG-KAS, pg 3 of 6

- Flights Departing a Foreign Location: International flights to the United States.  However, some airlines on these routes may provide compensation voluntarily. Also, the European Commission has a rule on bumping passengers from flights that apply to passengers departing from a European Union member state; ask the airline for details, or visit this page.

**Situations when bumped passengers ARE eligible for compensation:**

- If you are not bumped from a flight for one of the reasons above, you qualify for involuntary denied boarding compensation if an airline requires you to give up your seat on an oversold flight and:

  - You have a confirmed reservation,

  - You checked-in to your flight on time,

  - You arrived at the departure gate on time, and

  - The airline cannot get you to your destination within one hour of your flight's original arrival time.

**If I am entitled to compensation, how is the amount of compensation calculated?**

- Passengers who are denied boarding involuntarily due to oversales are entitled to compensation that is based on the price of their ticket, the length of time that they are delayed in getting to their destination because of being denied boarding, and whether their flight is a domestic flight or an international flight leaving from the United States.  This is called "denied boarding compensation" or "DBC" for short.

- Most bumped passengers who experience short delays on flights will receive compensation equal to double the one-way price of the flight they were bumped from, but airlines may limit this amount to up to $775.  Passengers experiencing longer delays on flights will receive payments of four times the one-way value of the flight they were bumped from, but airlines may limit this amount to up to $1,550.  Please see the tables below.

**Domestic - Denied Boarding Compensation (DBC)**

| Length of Delay | Compensation |
| --- | --- |
| 0 to 1 hour arrival delay | No compensation |
| 1 to 2 hour arrival delay | 200% of one-way fare (airlines may limit the compensation to $775 if 200% of the one-way fare is higher than $775) |
| Over 2 hour arrival delay | 400% of one-way fare (airlines may limit the compensation to $1,550 if 400% of the one-way fare is higher than $1,550) |

**International - Denied Boarding Compensation (DBC)**

| Length of Delay | Compensation |
| --- | --- |
| 0 to 1 hour arrival delay | No compensation |

| Length of Delay | Compensation |
|---|---|
| 1 to 4 hour arrival delay | 200% of one-way fare (airlines may limit the compensation to $775 if 200% of the one-way fare is higher than $775) |
| Over 4 hour arrival delay | 400% of one-way fare (airlines may limit the compensation to $1,550 if 400% of the one-way fare is higher than $1,550) |

**When will I receive compensation if I am eligible to receive it?**

- Following a bumping incident, airlines must offer passengers compensation at the airport on the same day.

- If the airline provides substitute transportation that leaves the airport before the airline can pay the passenger, the airline must pay the passenger within 24 hours of the bumping incident.

**Is there a limit on how much money airlines are allowed to give me when I am involuntarily bumped?**

- **No.** Although airlines are required to give you a certain amount of money by law, airlines are free to give you more money than is required if they want to.

# Other Reasons You May Be Removed From a Flight

An airline can refuse to transport a passenger for the reasons listed in its contract of carriage, a legal agreement between the passenger and airline, so long as the refusal is not discriminatory, such as:

- Being intoxicated or under the influence of illegal drugs.

- Attempting to interfere with the duties of a flight crew member.

- Disrupting flight operations or engaging in unruly behavior.

- Having an offensive odor that is not caused by a disability or illness.

FAA regulations state that "no person may assault, threaten, intimidate, or interfere with a crewmember in the performance of the crewmember's duties aboard an aircraft being operated."

To read the federal regulation implementing these rules, click here.



File a Consumer Complaint



Using DOT's Aviatio...

DOT Relaunches Air Consumer Website

Last updated: Thursday, April 15, 2021

U.S. DEPARTMENT OF TRANSPORTATION

1200 New Jersey Avenue, SE
Washington, DC 20590
855-368-4200

   

WANT TO KNOW MORE?

Receive email updates about the latest in Safety, Innovation, and Infrastructure.

SUBSCRIBE NOW

ABOUT DOT

Meet the Secretary

Mission

Newsroom

Medium Blog

Social Media

Leadership

Regulations

Transit Benefit Policy

Careers

Contact Us

OPERATING ADMINISTRATIONS

FAA

FHWA

FMCSA

FRA

FTA

GLS

MARAD

NHTSA

OIG

OST

PHMSA

RESEARCH AND TECHNOLOGY

Office of the Assistant Secretary for Research and Technology

Bureau of Transportation Statistics

Volpe Center

Ask-A-Librarian

PRIORITIES

Bipartisan Infrastructure Law

Climate and Sustainability

Equity

Safety

Transformation

POLICIES, RIGHTS, AND LEGAL

USA.gov

Privacy Policy

FOIA

Budget and Performance

No FEAR Act

Cummings Act Notices

Amarsingh v. Frontier
Case:  1:23-cv-01875-GPG-KAS, pg 6 of 6

Ethics

Web Policies and Notices

Vulnerability Disclosure Policy

Accessibility

Case No. 1:23-cv-01875-GPG-KAS Document 26 Filed 12/06/23 USDC Colorado Page 1 of 1
Case 1:23-cv-01875-GPG-KAS Document 26-3 Filed 12/06/23 USDC Colorado Page 1 of 1

Appellate Case: 24-1391    Document: 10-3    Date Filed: 11/06/2024    Page: 54

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*10:48 am, Dec 06, 2023*
**JEFFREY P. COLWELL, CLERK**

_____

_____

**RE   UEST FOR COURT TO CONSIDER SUPPLEMENTAL EVIDENCE**
_____

**Nature of the evidence:**

_____

_____

*usmin Amarsingh*

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*10:50 am, Dec 06, 2023*
**JEFFREY P. COLWELL, CLERK**

Search

BTS> Interlinen
Airline On-Time Statistics

## Detailed Statistics Departures

NOTE: Due to the large amount of data to be searched, time period should be limited to a maximum total of 31 days for any combination of Month, Date and Year. For example: if October, November and December Month checkboxes are selected 1,7,14,21 and 28 Day checkboxes are selected and 1997 Year checkbox is selected, then the total time period is 15 days. Times are reported in local time using a 24 hour clock

**Statistics**
☑ All Statistics
☑ Scheduled departure time ☑ Actual departure time ☑ Scheduled elapsed time
☑ Actual elapsed time    ☑ Departure delay    ☑ Wheels-off time
☑ Taxi-Out time    ☑ Cause of Delay

Origin Airport: Philadelphia, PA: Philadelphia International (PHL)

Airline: Frontier Airlines Inc. (F9)

**Month(s):**
☐ All Months
☐ Jan ☐ Feb ☐ Mar ☐ Apr ☐ May ☑ Jun
☐ Jul ☐ Aug ☐ Sep ☐ Oct ☐ Nov ☐ Dec

**Day(s):**
☐ All Days
☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 ☐ 6 ☐ 7 ☐ 8 ☐ 9 ☐ 10
☐ 11 ☐ 12 ☑ 13 ☐ 14 ☐ 15 ☐ 16 ☐ 17 ☐ 18 ☐ 19 ☐ 20
☐ 21 ☐ 22 ☐ 23 ☐ 24 ☐ 25 ☐ 26 ☐ 27 ☐ 28 ☐ 29 ☐ 30
☐ 31

**Year(s):**
☐ All Years
☐ 1987 ☐ 1988 ☐ 1989 ☐ 1990 ☐ 1991 ☐ 1992
☐ 1993 ☐ 1994 ☐ 1995 ☐ 1996 ☐ 1997 ☐ 1998
☐ 1999 ☐ 2000 ☐ 2001 ☐ 2002 ☐ 2003 ☐ 2004
☐ 2005 ☐ 2006 ☐ 2007 ☐ 2008 ☐ 2009 ☐ 2010
☐ 2011 ☐ 2012 ☐ 2013 ☐ 2014 ☐ 2015 ☐ 2016
☐ 2017 ☐ 2018 ☐ 2019 ☐ 2020 ☐ 2021 ☐ 2022
☑ 2023

[Reset]  [Submit]

Origin Airport: Philadelphia, PA: Philadelphia International (PHL)
Airline: Frontier Airlines Inc. (F9)
Month(s): June
Day(s): 13
Year(s): 2023

NOTE: A complete listing of airline and airport abbreviations is available. Times are reported in local time using a 24 hour clock.
Airlines began reporting tarmac times for cancelled and diverted flights in October 2008. Tarmac times for cancelled or diverted flights operated prior to Oct. 1, 2008 are not available. Cause of delay data is available on this database beginning with flights operated
Cause of Delay reporting, see Understanding the Reporting of Causes of Flight Delays and Cancellations.
All Cause of Delay (in minutes) are referring to the Arrival Delay.

## Displaying items 1 - 27 of 27

Excel | CSV

| Carrier Code | Date (MM/DD/YYYY) | Flight Number | Tail Number | Destination Airport | Scheduled departure time | Actual departure time | Scheduled elapsed time (Minutes) | Actual elapsed time (Minutes) | Departure delay (Minutes) | Wheels-off tim |
|---|---|---|---|---|---|---|---|---|---|---|
| F9 | 06/13/2023 | 0155 | N712FR | ATL | 06:05 | 05:59 | 134 | 137 | -6 | 06: |
| F9 | 06/13/2023 | 0511 | N230FR | DEN | 05:30 | 05:37 | 254 | 236 | 7 | 05: |
| F9 | 06/13/2023 | 0519 | N376FR | DEN | 20:45 | 20:35 | 298 | 270 | -10 | 20: |
| F9 | 06/13/2023 | 1185 | N330FR | MCO | 07:59 | 08:52 | 154 | 138 | 53 | 09: |
| F9 | 06/13/2023 | 1187 | N706FR | MCO | 13:20 | 13:11 | 157 | 181 | -9 | 13: |
| F9 | 06/13/2023 | 1168 | N388FR | MCO | 18:32 | 19:26 | 169 | 149 | 54 | 19: |
| F9 | 06/13/2023 | 1171 | N348FR | MCO | 17:00 | 17:59 | 161 | 149 | 59 | 18: |
| F9 | 06/13/2023 | 1173 | N328FR | MCO | 05:30 | 08:20 | 153 | 148 | 50 | 08: |
| F9 | 06/13/2023 | 1175 | N330FR | MGO | 21:34 | 21:57 | 159 | 162 | 23 | 22: |
| F9 | 06/13/2023 | 1651 | N324FR | RDU | 10:49 | 11:17 | 92 | 88 | 28 | 11: |
| F9 | 06/13/2023 | 1653 | N719FR | RDU | 13:33 | 13:25 | 87 | 112 | -8 | 13: |
| F9 | 06/13/2023 | 1707 | N386FR | CVG | 14:14 | 14:05 | 115 | 112 | -9 | 14: |
| F9 | 06/13/2023 | 2143 | N713FR | LAS | 19:03 | 18:54 | 335 | 327 | -9 | 19: |
| F9 | 06/13/2023 | 2296 | N610FR | FLL | 06:00 | 05:58 | 189 | 171 | -2 | 06: |
| F9 | 06/13/2023 | 2297 | N229FR | FLL | 12:35 | 12:44 | 167 | 169 | 9 | 12: |
| F9 | 06/13/2023 | 2303 | N384FR | DFW | 12:52 | 12:49 | 220 | 259 | -3 | 13: |
| F9 | 06/13/2023 | 2315 | N230FR | CLT | 17:26 | 17:17 | 109 | 100 | -9 | 17: |
| F9 | 06/13/2023 | 2327 | N367FR | MIA | 10:00 | 16:51 | 185 | 185 | -9 | 10: |
| F9 | 06/13/2023 | 2347 | N348FR | PBI | 09:32 | 10:42 | 162 | 150 | 70 | 11: |
| F9 | 06/13/2023 | 2356 | N371FR | RSW | 21:32 | 21:20 | 181 | 182 | -12 | 21: |
| F9 | 06/13/2023 | 2363 | N371FR | SAV | 15:05 | 15:03 | 131 | 118 | -2 | 15: |
| F9 | 06/13/2023 | 2375 | N322FR | TPA | 12:19 | 12:13 | 157 | 157 | -6 | 12: |
| F9 | 06/13/2023 | 2377 | N346FR | TPA | 18:37 | 18:25 | 169 | 160 | -12 | 18: |
| F9 | 06/13/2023 | 2385 | N353FR | ATL | 19:45 | 20:31 | 138 | 141 | 46 | 20: |
| F9 | 06/13/2023 | 4802 | N376FR | SJU | 08:40 | 13:07 | 236 | 277 | 87 | 10: |
| F9 | 06/13/2023 | 4864 | N324FR | SJU | 15:54 | 15:45 | 236 | 248 | -9 | 16: |
| F9 | 06/13/2023 | 4870 | N704FR | JAX | 10:31 | 11:58 | 140 | 124 | 87 | 12: |

SOURCE: Bureau of Transportation Statistics

Bureau of Transportation Statistics

| | | | | | | | | | | Wheels-off tim |
|---|---|---|---|---|---|---|---|---|---|---|
| F9 | 06/13/2023 | 0044 | N608FR | ORD | 07:45 | 07:38 | 185 | 180 | -7 | 07:5 |
| F9 | 06/13/2023 | 0878 | N338FR | TTN | 12:08 | 12:02 | 187 | 138 | -6 | 12:- |
| F9 | 06/13/2023 | 0878 | N377FR | DEN | 19:15 | 19:21 | 252 | 264 | 6 | 19:4 |
| F9 | 06/13/2023 | 0883 | N379FR | DEN | 11:15 | 11:27 | 247 | 288 | 12 | 11:4 |
| F9 | 06/13/2023 | 0801 | N315FR | DFW | 21:01 | 21:18 | 180 | 193 | 15 | 21:2 |
| F9 | 06/13/2023 | 0804 | N232FR | TTN | 19:34 | 23:48 | 160 | 134 | 254 | 20:0 |
| F9 | 06/13/2023 | 0882 | N375FR | CLT | 13:51 | 13:56 | 108 | 107 | 4 | 14: |
| F9 | 06/13/2023 | 1011 | N377FR | ATL | 06:30 | 06:21 | 95 | 98 | -9 | 06:- |
| F9 | 06/13/2023 | 1013 | N706FR | ATL | 18:10 | 18:01 | 101 | 164 | -9 | 18:- |
| F9 | 06/13/2023 | 1042 | N377FR | CLE | 11:29 | 11:42 | 155 | 152 | 13 | 12:0 |
| F9 | 06/13/2023 | 1046 | N723FR | CLE | 22:02 | 23:41 | 158 | 153 | 99 | 23:5 |
| F9 | 06/13/2023 | 1048 | N238FR | CLE | 14:56 | 16:29 | 159 | 142 | 93 | 16:x |
| F9 | 06/13/2023 | 1054 | N342FR | CMH | 18:34 | 20:25 | 145 | 137 | 111 | 20:4 |
| F9 | 06/13/2023 | 1062 | N330FR | CVG | 11:29 | 12:07 | 137 | 134 | 38 | 12: |
| F9 | 06/13/2023 | 1064 | N375FR | CVG | 21:54 | 00:20 | 139 | 128 | 146 | 00: |
| F9 | 06/13/2023 | 1096 | N236FR | ISP | 21:58 | 22:48 | 166 | 141 | 50 | 23:0 |
| F9 | 06/13/2023 | 1098 | N717FR | ISP | 07:40 | 07:40 | 162 | 142 | 0 | 07:5 |
| F9 | 06/13/2023 | 1103 | N308FR | LAS | 09:45 | 10:24 | 302 | 307 | 39 | 10:5 |
| F9 | 06/13/2023 | 1105 | N386FR | LAS | 23:14 | 23:07 | 295 | 302 | -7 | 23:" |
| F9 | 06/13/2023 | 1151 | N709FR | ONT | 17:43 | 17:49 | 321 | 343 | 6 | 18:" |
| F9 | 06/13/2023 | 1158 | N236FR | ORF | 08:53 | 10:50 | 125 | 124 | 117 | 11:" |
| F9 | 06/13/2023 | 1162 | N704FR | PHL | 08:57 | 07:12 | 154 | 147 | 15 | 09:0 |
| F9 | 06/13/2023 | 1164 | N229FR | PHL | 08:57 | 08:55 | 156 | 137 | -2 | 09:0 |
| F9 | 06/13/2023 | 1166 | N386FR | PHL | 10:49 | 10:40 | 155 | 141 | -9 | 10:0 |
| F9 | 06/13/2023 | 1168 | N378FR | PHL | 16:18 | 16:13 | 161 | 138 | -5 | 16: |
| F9 | 06/13/2023 | 1170 | N330FR | PHL | 18:06 | 18:22 | 158 | 162 | 16 | 19:0 |
| F9 | 06/13/2023 | 1172 | N348FR | PHL | 20:40 | 21:39 | 161 | 155 | 59 | 21:5 |
| F9 | 06/13/2023 | 1190 | N721FR | RDU | 08:57 | 09:50 | 112 | 89 | -7 | 10:0 |
| F9 | 06/13/2023 | 1192 | N721FR | RDU | 15:46 | 15:49 | 112 | 100 | 3 | 16:0 |
| F9 | 06/13/2023 | 1195 | N328FR | SAN | 19:20 | 19:24 | 310 | 339 | 4 | 20:0 |
| F9 | 06/13/2023 | 1206 | N611FR | BDL | 07:45 | 07:41 | 169 | 155 | 78 | 07:5 |
| F9 | 06/13/2023 | 1211 | N605FR | STL | 22:02 | 23:20 | 147 | 151 | -8 | 09:0 |
| F9 | 06/13/2023 | 1214 | N378FR | SYR | 08:53 | 08:47 | 172 | 164 | 0 | 06: |
| F9 | 06/13/2023 | 1238 | N375FR | BOS | 06:00 | 06:00 | 182 | 172 | -9 | 17:0 |
| F9 | 06/13/2023 | 1242 | N398FR | BWI | 16:56 | 16:47 | 143 | 133 | 39 | 12: |
| F9 | 06/13/2023 | 1247 | N353FR | DFW | 11:40 | 12:19 | 183 | 181 | 37 | 12:5 |
| F9 | 06/13/2023 | 1251 | N342FR | IAH | 11:57 | 12:34 | 181 | 216 | -5 | 19: |
| F9 | 06/13/2023 | 1267 | N716FR | PHX | 19:15 | 19:10 | 206 | 265 | -3 | 14: |
| F9 | 06/13/2023 | 1334 | N316FR | LGA | 14:22 | 14:19 | 172 | 145 | 74 | 21:5 |
| F9 | 06/13/2023 | 1737 | N338FR | SFO | 20:25 | 21:30 | 349 | 370 | 11 | 23:- |
| F9 | 06/13/2023 | 4842 | N717FR | SJU | 23:19 | 23:30 | 173 | 163 | -1 | 06:" |
| F9 | 06/13/2023 | 4844 | N618FR | SJU | 06:00 | 05:59 | 173 | 173 | 333 | 15:" |
| F9 | 06/13/2023 | 4846 | N605FR | SJU | 09:30 | 15:03 | 176 | 163 | -6 | 07:0 |
| F9 | 06/13/2023 | 4882 | N316FR | BQN | 06:50 | 06:44 | 168 | 168 | -5 | 08:5 |
| F9 | 06/13/2023 | 4890 | N396FR | PSE | 08:41 | 08:36 | 177 | 172 | | |

SOURCE: Bureau of Transportation Statistics

**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*10:50 am, Dec 06, 2023*
**JEFFREY P. COLWELL, CLERK**



Kusmin Amarsingh <kusminamarsingh@gmail.com>

---

### Fwd: It's time to check in for your flight to St. Louis
1 message

---

**Linda Amarsingh** <lindaamarsingh@gmail.com>                    Wed, Dec 6, 2023 at 9:19 AM
To: Kusmin Amarsingh <kusminamarsingh@gmail.com>

Sent from my iPhone

Begin forwarded message:

**From:** Frontier Airlines <flights@emails.flyfrontier.com>
**Date:** June 12, 2023 at 4:41:36 PM CDT
**To:** lindaamarsingh@gmail.com
**Subject: It's time to check in for your flight to St. Louis**
**Reply-To:** Frontier Airlines <flights.email@flyfrontier.com>

Your confirmation code: **HIUY6R**
Last name: **Amarsingh**
Manage your trip

# TIME TO CHECK-IN!

Thank you for choosing Frontier with your Priceline booking.
It's almost time to fly - You can check-in online now!

## CHECK-IN NOW!

### ARRIVE AT THE AIRPORT PREPARED!

NEW!!! Pre-purchase your bags and seats NOW and secure your
boarding pass on our website or mobile app. **Assistance from an
airport agent will now cost you $25.**

MANAGE MY BOOKING

 Get your Boarding Pass

**GO MOBILE:** Download our app to get your mobile boarding pass.

 

**PRINT AT HOME:** Complete online check-in to get your printable boarding pass.



## PLANNING ON BRINGING A CARRY ON?

Alert: You will be denied boarding unless you pay for your bag.

**Pay for your bags now for the best price!** A carry-on bag is anything larger than a personal item (14H" x 18W" x 8D").

**BUY BAGS NOW**

---

**Did you buy your bags? Get the best deal when you buy online!**

☑ 1 free personal item that must be no larger than *14H" x 18W" x 8D"*

☐ I bought my carry-on bag(s)

☐ I bought my checked bag(s)

**Checked bags can be up to 40lbs.** Need more weight? You can add additional weight for your bag online now.

**ADD MORE BAGS**

---

# DEPARTURE AIRPORT DETAILS

### Philadelphia International Airport (PHL)

**Address:** 8000 Essington Ave, Philadelphia, PA 19153
**Website:** phl.org

# ARRIVAL AIRPORT DETAILS

### St. Louis Lambert International Airport (STL)

**Address:** 10701 Lambert International Blvd, St. Louis, MO 63145

**Website: www.flystl.com**

# DAY OF TRAVEL TIMELINE

- ✓ **Arrive at airport: 3:00 PM**
  Get to the airport **2** hr. before your flight.

- ✓ **Drop off your checked bags and make sure you have your boarding pass: 4:15 PM**
  Bag drop off closes 45 min. before your flight. Be sure to buy your bags now online, bags cost more at the airport.

- ✓ **Boarding begins: 4:30 PM**
  Your seat is assigned and on your boarding pass. Want a better seat? Upgrade online now!

- ✓ **Doors close: 4:45 PM**
  Doors close 15 min. before your flight. Get ready for takeoff!

- ✓ **Flight Departs: 5:00 PM**
  Enjoy your flight. Thanks for flying Frontier!

*Please note: The time and flight details are accurate as of when this email was sent. For up to the minute information on your flight, check your current flight status.*

# YOUR TRIP



**Departing Flights 1171 & 1211**
Jun. 13, 2023

| PHL | | MCO | ✈ | MCO | | STL |
|-----|---|-----|---|-----|---|-----|
| 5:00 PM | ---------- | 7:41 PM | | 10:02 PM | ---------- | 11:29 PM |

🕐 **Total Time:** 7 hrs 29 min | 1 Stop (MCO)
*MCO: 2 hrs 21 min layover*

**Kusmin Amarsingh**

**Carry-On:** 0 | **Checked Bag(s):** 0

**Seat Assignment:**
PHL to MCO: Not Assigned
MCO to STL: Not Assigned

**LOOKING FOR TRAVEL INSURANCE?**
Protect your trip with Travel Guard™ travel insurance

**Be Prepared!**
**Pack a travel insurance plan.**

**AIG**®

GET A QUOTE

BOOK A FLIGHT                ONLINE DEALS                MANAGE TRAVEL



CONNECT WITH US                    DOWNLOAD THE APP

           

You are receiving this email because of account activity with Frontier Airlines.
Privacy Policy

This message was sent to lindaamarsingh@gmail.com
©2023 Frontier Airlines. All Rights Reserved.
4545 Airport Way | Denver, CO 80239

**Tips to assist with your travel planning:**

Want more legroom? We have it! STRETCH seating is now available on all our airplanes. Learn More.

Rental Cars: Choose from Avis or Budget, all from one easy search! Rent a Car. Book Now.

**Terms and Conditions**

**IMPORTANT: By purchasing you have agreed to our terms and conditions and contract of carriage.**

You can add Checked and Carry-On Bag options, choose pre-assigned seats, and check the status of your flight on Frontier Airlines' mobile app: Android or iOS.

All passengers are permitted to take one personal item not to exceed 14" tall, 18" wide, and 8" long, on-board the aircraft with no additional charge. Visit our carry-on baggage page for details.

Passengers are required to have their boarding pass in hand 45 minutes prior to departure for domestic flights and 60 minutes for international flights. Passengers must be at the designated gate 30 minutes prior to departure.

To contact Customer Relations, visit www.flyfrontier.com/customer-support/ or mail to: Attn: Customer Relations, Frontier Airlines, 4545 Airport Way, Denver, CO 80239

**AIRLINE PASSENGERS WITH DISABILITIES BILL OF RIGHTS**

If you are a passenger with a disability and require special services, please review the Airline Passengers with Disabilities Bill of Rights for more information.

**TERMS AND CONDITIONS FRONTIER AIRLINES MASTER CARD**

1. Offer subject to credit approval. This offer is available through this advertisement and may not be accessible elsewhere. For complete pricing and other details, please see the Terms and Conditions.

This one-time offer is valid for eligible cardmembers. You may not be eligible for this offer if you currently have or previously had an account with us in this program. In addition, you may not be eligible for this offer if, at any time during our relationship with you, we have cause, as determined by us in our sole discretion, to suspect that the account is being obtained or will be used for abusive or gaming activity (such as, but not limited to, obtaining or using the account to maximize rewards earned in a manner that is not consistent with typical consumer activity and/or multiple credit card account applications/openings). Please see the About This Offer section of the Terms and Conditions for important information.

2. Conditions and limitations apply. Please refer to the Frequently Asked Questions section of the website and the Reward Rules within the Terms and Conditions for additional information about the rewards program.

The FRONTIER Airlines World Mastercard[®] is issued by Barclays Bank Delaware (Barclays) pursuant to a license from Mastercard international Incorporated. Mastercard and World Mastercard are registered trademarks, and the circles design is a trademark of Mastercard International Incorporated.

©2020 Barclays Bank Delaware, PO Box 8801, Wilmington DE 19801, Member FDIC.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
10:50 am, Dec 06, 2023
JEFFREY P. COLWELL, CLERK

Gmail                                                    Kusmin Amarsingh <kusminamarsingh@gmail.com>

---

## Fwd: Your Flight Confirmation Code A8722S
1 message

**Linda Amarsingh** <lindaamarsingh@gmail.com>                    Wed, Dec 6, 2023 at 9:19 AM
To: Kusmin Amarsingh <kusminamarsingh@gmail.com>

Sent from my iPhone

Begin forwarded message:

> **From:** Frontier Airlines <flights@emails.flyfrontier.com>
> **Date:** June 4, 2023 at 11:50:22 AM CDT
> **To:** lindaamarsingh@gmail.com
> **Subject: Your Flight Confirmation Code A8722S**
> **Reply-To:** Frontier Airlines <flights.email@flyfrontier.com>

# PURCHASE CONFIRMATION

Thank you for your purchase with us!

Your flight confirmation code is:     A8722S

You can check-in and retrieve your boarding pass 24 hours before your flight.

Need to update or cancel/change your flight?



ACCESS YOUR BOOKING

## PURCHASE SUMMARY

### AMOUNT PAID: $287.95

FLIGHTS                                              Subtotal: $187.96

## DEPARTING FLIGHT 639 & 520



### Pensacola (PNS) to Philadelphia (PHL)

Depart: 6/6/2023 9:33 PM | Arrive: 6/7/2023 1:26 PM
Total Duration: 14 hr 53 min

This flight arrives 1 day after departure (+1)

#### 1 Stop - Denver (DEN)

**PNS to DEN**
Depart: 6/6/2023 9:33 PM | Arrive: 6/6/2023 11:59 PM
**Layover:** 7 hr 51 min Note: This layover is +6 hours.

**DEN to PHL**
Depart: 6/7/2023 7:50 AM | Arrive: 6/7/2023 1:26 PM

## RETURNING FLIGHT 511 & 638



### Philadelphia (PHL) to Pensacola (PNS)

Depart: 6/12/2023 5:55 AM | Arrive: 6/12/2023 1:23 PM
Total Duration: 8 hr 28 min

#### 1 Stop - Denver (DEN)

**PHL to DEN**
Depart: 6/12/2023 5:55 AM | Arrive: 6/12/2023 8:09 AM
**Layover:** 1 hr 14 min

**DEN to PNS**
Depart: 6/12/2023 9:23 AM | Arrive: 6/12/2023 1:23 PM

## MEMBERSHIPS                                                    $99.99

### DISCOUNT DEN®



**ANNUAL MEMBERSHIP FEE $59.99**
**INITIAL SIGN UP FEE $40.00**

## PASSENGERS

### ADULT(S)



**1 - Kusmin Amarsingh**
*FRONTIER Miles*sm #: 90095850361

## BUNDLE IT

### BUNDLE AND SAVE



Add the PERKS™ Bundle and save!
Buy Now And Save!
You get: 1 Carry-on, 1 Checked Bag & Seat Assignment

## SERVICES                                    Subtotal: $0.00



### Self-Service

$0.00 | No Pre-Purchased Airport Agent Assistance

FREE - You have chosen Self-Service and will not need
assistance from an airport agent. Please download our mobile
app or visit flyfrontier.com.

If you prefer Agent Assistance at the airport ticket counter for
things like checking in and printing your boarding pass, you
may purchase that now. See exclusions.

Reminder, bags and seats cost more at the airport.

## SEATS                                       Subtotal: $0.00



**You have not purchased a seat assignment(s)**
You will be randomly assigned seat(s) at check-in.
**Buy Seat Assignments Now!**

## BAGS                                        Subtotal: $0.00



**You have not purchased bags**
You can bring one personal item no larger than larger than 14"H X 18"W X 8"D.
**Buy Bags Now!**

### LOOKING FOR TRAVEL INSURANCE?
Protect your trip with Travel Guard™ travel
insurance

**Be Prepared!**
**Pack a travel insurance plan.**



GET A QUOTE

## PASSENGER OPTIONS & EXTRAS DETAIL

**Kusmin Amarsingh**

Discount Den Sign up Fee                                    $59.99
New Enrollment Fee                                          $40.00

## TAXES AND CARRIER IMPOSED FEES

US Transportation Tax                                       $2.01
Carrier Interface Charge *Non-Refundable                    $23.00
US Passenger Security Fee                                   $5.60
US Domestic Flight Segment Tax                              $4.80
DEN Passenger Facility Charge                               $4.50
Carrier Interface Charge *Non-Refundable                    $23.00
US Domestic Flight Segment Tax                              $4.80
DEN Passenger Facility Charge                               $4.50
US Transportation Tax                                       $1.31
Carrier Interface Charge *Non-Refundable                    $23.00
US Passenger Security Fee                                   $5.60
US Domestic Flight Segment Tax                              $4.80
DEN Passenger Facility Charge                               $4.50
Carrier Interface Charge *Non-Refundable                    $23.00
US Domestic Flight Segment Tax                              $4.80
DEN Passenger Facility Charge                               $4.50

## PURCHASE TOTAL

Airfare                                                     $44.24
Options                                                     $40.00
Memberships                                                 $59.99
Taxes and Carrier-Imposed Fees                             $143.72
**Grand Total**                                            **$287.95**

## PAYMENT: VISA

**Total**                                                 **$287.95**

Payment Date                                               06-04-2023
Payment Type                                               VISA
***Approved***                                            XXXXXXXXXXXX8119



$89 Annual Fee

# EARN UP TO 60,000 BONUS MILES

Enough to redeem for up to 5 domestic one-way tickets with the FRONTIER Airlines World Mastercard® after qualifying account activity. Terms apply.

APPLY NOW

BOOK A FLIGHT        ONLINE DEALS        MANAGE TRAVEL

CONNECT WITH US                    DOWNLOAD THE APP

           

You are receiving this email because of account activity with Frontier Airlines.
Privacy Policy

This message was sent to lindaamarsingh@gmail.com
©2023 Frontier Airlines. All Rights Reserved.
4545 Airport Way | Denver, CO 80239

**AIRLINE PASSENGERS WITH DISABILITIES BILL OF RIGHTS**

If you are a passenger with a disability and require special services, please review the Airline Passengers with Disabilities Bill of Rights for more information.

**Tips to assist with your travel planning:**

Save time at the airport: check in online within 24 hours of your departure.

Want more legroom? We have it! STRETCH seating is now available on all our airplanes. Learn More.

Rental Cars: Choose from Avis or Budget, all from one easy search! Rent a Car. Book Now.

**Terms and Conditions**

**IMPORTANT: By purchasing you have agreed to our terms and conditions and contract of carriage.**

You can add Checked and Carry-On Bag options, choose pre-assigned seats, and check the status of your flight on Frontier Airlines' mobile app: Android or iOS.

All passengers are permitted to take one personal item not to exceed 14" tall, 18" wide, and 8" deep on-board the aircraft with no additional charge. Visit our carry-on baggage page for details.

BAG OPTION PRICES:

| Purchase Location | Carry-On Bag | 1st Checked Bag | 2nd Checked Bag | >3+ Checked Bag |
|---|---|---|---|---|
| BEST VALUE! At booking on web/mobile | $54 | $54 | $74 | $94 |
| After booking and up to 24 hrs before departure on web/mobile | $64 | $64 | $84 | $104 |
| Customer Support Agent | $79 | $79 | $89 | $95 |
| Web/mobile check-in | $64 | $64 | $84 | $104 |
| Airport ticket counter or self-serve kiosk | $79 | $79 | $89 | $95 |
| Departure gate | $99 | $99 for bags exceeding our size requirements | N/A | N/A |

All prices are per passenger, per direction. A service agent charge of up to $25 per person per direction applies to all agent assisted transactions.

Charges for seating upgrades are charged per flight, including connecting flights in the itinerary.

All Elite members may bring a large carry-on bag for free. All passengers on an Elite 100k members' booking may bring a large carry-on bag and/or may check one bag for free. Active military passengers, subject to verification, may bring one carry-on bag and/or may check up to two bags, which may be oversize and/or overweight, for free. This benefit does not extend to family members or other travelling companions.

PERSONAL ITEM: Personal items can be no larger than 14" tall, 18" wide, and 8" deep.

CARRY-ON BAG SPECIFICATIONS: Carry-On Bags can be no larger than 24" tall, 10" wide, and 16" long (including handles, wheels, and straps) and no heavier than 35 pounds. Any customer who arrives at the gate with a carry-on bag that exceeds the allowable dimensions will be charged the Checked Bag price to gate check the bag.

OVERWEIGHT CHECKED BAGGAGE: $75-$100 per bag, per direction (Non-Refundable) For tickets purchased on or after May 11, 2023, bags weighing 41-50 pounds will be charged $75 per bag, per direction. Bags weighing 51-100 pounds will be charged $100 per bag, per direction. Bags in excess of 100 pounds will not be accepted.

For tickets purchased before May 11, 2023, bags weighing 41-50 pounds will be charged $50 per bag, per direction. Bags weighing 51-100 pounds will be charged $100 per bag, per direction. Bags in excess of 100 pounds will not be accepted

If you purchased your ticket at FlyFrontier.com or through our Reservations Department, you may request a full refund up to 24 hours after the time of purchase if the purchase was made 7 days (168 hours) or more prior to your flight's departure. This ticket may be canceled and refunded at the My Trips section on FlyFrontier.com.

Passengers are required to have their boarding pass in hand 45 minutes prior to departure for domestic flights and 60 minutes for international flights. Passengers must be at the designated gate 30 minutes prior to departure.

You may change an Economy ticket provided that (1) you do so prior to the scheduled flight departure time and (2) you pay any difference between the fare purchased and the fare for the new flight(s) (no refund will apply if the fare of the new ticket is less) plus a service fee. For full details, visit FlyFrontier.com.

If you purchased a Discount Den membership, you can find all details of your subscription on the Membership Terms and Conditions page.

To contact Customer Relations, visit www.flyfrontier.com/customer-support/ or mail to: Attn: Customer Relations, Frontier Airlines, 4545 Airport Way, Denver, CO 80239

An official website of the United States government Here's how you know ⌄

🇺🇸 United States Department of Transportation

Ask-A-Librarian    A-Z Index

Search

BTS > TranStats
Airline On-Time Statistics

🖶 Print 

## Detailed Statistics Departures

NOTE: Due to the large amount of data to be searched, time period should be limited to a maximum total of 31 days for any combination of Month, Date and Year. For example, if October, November and December Month checkboxes are selected; 1,7,14,21 and 28 Day checkboxes are selected and 1997 Year checkbox is selected, then the total time period is 15 days. Times are reported in local time using a 24 hour clock.

Statistics:

☐ All Statistics
☑ Scheduled departure time  ☐ Actual departure time  ☐ Scheduled elapsed time
☐ Actual elapsed time  ☐ Departure delay  ☐ Wheels-off time
☐ Taxi-Out time  ☐ Cause of Delay

**Origin Airport**  Orlando, FL: Orlando International (MCO) ⌄

**Airline**  Frontier Airlines Inc. (F9) ⌄

**Month(s):**
☐ All Months

| | | | | | |
|---|---|---|---|---|---|
| ☐ Jan | ☐ Feb | ☐ Mar | ☐ Apr | ☐ May | ☑ Jun |
| ☐ Jul | ☐ Aug | ☐ Sep | ☐ Oct | ☐ Nov | ☐ Dec |

**Day(s):**
☐ All Days

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ 1 | ☐ 2 | ☐ 3 | ☐ 4 | ☐ 5 | ☐ 6 | ☐ 7 | ☐ 8 | ☐ 9 | ☐ 10 |
| ☐ 11 | ☐ 12 | ☑ 13 | ☐ 14 | ☐ 15 | ☐ 16 | ☐ 17 | ☐ 18 | ☐ 19 | ☐ 20 |
| ☐ 21 | ☐ 22 | ☑ 23 | ☐ 24 | ☐ 25 | ☐ 26 | ☐ 27 | ☐ 28 | ☐ 29 | ☐ 30 |
| ☐ 31 | | | | | | | | | |

**Year(s):**
☐ All Years

| | | | | | |
|---|---|---|---|---|---|
| ☐ 1987 | ☐ 1988 | ☐ 1989 | ☐ 1990 | ☐ 1991 | ☐ 1992 |
| ☐ 1993 | ☐ 1994 | ☐ 1995 | ☐ 1996 | ☐ 1997 | ☐ 1998 |
| ☐ 1999 | ☐ 2000 | ☐ 2001 | ☐ 2002 | ☐ 2003 | ☐ 2004 |
| ☐ 2005 | ☐ 2006 | ☐ 2007 | ☐ 2008 | ☐ 2009 | ☐ 2010 |
| ☐ 2011 | ☐ 2012 | ☐ 2013 | ☐ 2014 | ☐ 2015 | ☐ 2016 |
| ☐ 2017 | ☐ 2018 | ☐ 2019 | ☐ 2020 | ☐ 2021 | ☐ 2022 |
| ☑ 2023 | ☐ 2024 | | | | |

[ Reset ]  [ Submit ]

**Origin Airport:** Orlando, FL: Orlando International (MCO)
**Airline:** Frontier Airlines Inc. (F9)
**Month(s):** June
**Day(s):** 13 and 23
**Year(s):** 2023

NOTE: A complete listing of airline and airport abbreviations is available. Times are reported in local time using a 24 hour clock. Airlines began reporting tarmac times for cancelled and diverted flights in October 2008. Tarmac times for cancelled or diverted flights operated prior to Oct. 1, 2008 are not available. Cause of delay data is available on this database beginning with flights operated in October 2008. For cause of delay data from June 2003, when cause of delay data was first reported, see BTS Causes of Delay or the On-Time Performance database. For an explanation of the Cause of Delay reporting, see Understanding the Reporting of Causes of Flight Delays and Cancellations.
All Cause of Delay (in minutes) are referring to the Arrival Delay.

Excel | CSV

| Carrier Code | Date (MM/DD/YYYY) | Flight Number | Tail Number | Destination Airport | Scheduled departure time |
|---|---|---|---|---|---|
| F9 | 06/13/2023 | 0044 | N609FR | ORD | 07:45 |
| F9 | 06/13/2023 | 0678 | N339FR | TTN | 12:08 |
| F9 | 06/13/2023 | 0679 | N377FR | DEN | 19:15 |
| F9 | 06/13/2023 | 0683 | N379FR | DEN | 11:15 |
| F9 | 06/13/2023 | 0801 | N313FR | DFW | 21:01 |
| F9 | 06/13/2023 | 0804 | N232FR | TTN | 19:34 |
| F9 | 06/13/2023 | 0882 | N375FR | CLT | 13:51 |
| F9 | 06/13/2023 | 1011 | N377FR | ATL | 06:30 |
| F9 | 06/13/2023 | 1013 | N706FR | ATL | 18:10 |
| F9 | 06/13/2023 | 1042 | N377FR | CLE | 11:29 |
| F9 | 06/13/2023 | 1046 | N723FR | CLE | 22:02 |
| F9 | 06/13/2023 | 1048 | N236FR | CLE | 14:56 |
| F9 | 06/13/2023 | 1054 | N342FR | CMH | 18:34 |
| F9 | 06/13/2023 | 1062 | N330FR | CVG | 11:29 |
| F9 | 06/13/2023 | 1064 | N375FR | CVG | 21:54 |
| F9 | 06/13/2023 | 1096 | N236FR | ISP | 21:58 |
| F9 | 06/13/2023 | 1098 | N717FR | ISP | 07:40 |
| F9 | 06/13/2023 | 1103 | N308FR | LAS | 09:45 |
| F9 | 06/13/2023 | 1105 | N388FR | LAS | 23:14 |
| F9 | 06/13/2023 | 1151 | N709FR | ONT | 17:43 |
| F9 | 06/13/2023 | 1158 | N236FR | ORF | 08:53 |
| F9 | 06/13/2023 | 1162 | N704FR | PHL | 06:57 |
| F9 | 06/13/2023 | 1164 | N229FR | PHL | 08:57 |
| F9 | 06/13/2023 | 1166 | N388FR | PHL | 10:49 |
| F9 | 06/13/2023 | 1168 | N378FR | PHL | 16:18 |
| F9 | 06/13/2023 | 1170 | N330FR | PHL | 18:06 |
| F9 | 06/13/2023 | 1172 | N348FR | PHL | 20:40 |
| F9 | 06/13/2023 | 1190 | N721FR | RDU | 09:57 |
| F9 | 06/13/2023 | 1192 | N721FR | RDU | 15:46 |
| F9 | 06/13/2023 | 1195 | N328FR | SAN | 19:20 |
| F9 | 06/13/2023 | 1206 | N611FR | BDL | 07:45 |
| F9 | 06/13/2023 | 1211 | N605FR | STL | 22:02 |
| F9 | 06/13/2023 | 1214 | N378FR | SYR | 08:55 |
| F9 | 06/13/2023 | 1238 | N375FR | BOS | 06:00 |
| F9 | 06/13/2023 | 1242 | N396FR | BWI | 16:56 |
| F9 | 06/13/2023 | 1247 | N353FR | DFW | 11:40 |
| F9 | 06/13/2023 | 1251 | N342FR | IAH | 11:57 |
| F9 | 06/13/2023 | 1287 | N716FR | PHX | 19:15 |
| F9 | 06/13/2023 | 1334 | N316FR | LGA | 14:22 |
| F9 | 06/13/2023 | 1737 | N338FR | SFO | 20:25 |
| F9 | 06/13/2023 | 4842 | N717FR | SJU | 23:19 |
| F9 | 06/13/2023 | 4844 | N616FR | SJU | 06:00 |
| F9 | 06/13/2023 | 4846 | N605FR | SJU | 09:30 |
| F9 | 06/13/2023 | 4882 | N316FR | BQN | 06:50 |
| F9 | 06/13/2023 | 4890 | N396FR | PSE | 08:41 |
| F9 | 06/23/2023 | 0044 | N613FR | ORD | 07:40 |

| F9 | 06/23/2023 | 0678 | N323FR | TPA | 12:28 |
|----|-----------|------|--------|-----|-------|
| F9 | 06/23/2023 | 0681 | N715FR | DEN | 19:05 |
| F9 | 06/23/2023 | 0683 | N390FR | DEN | 11:22 |
| F9 | 06/23/2023 | 0798 | N324FR | TTN | 19:58 |
| F9 | 06/23/2023 | 0801 | N371FR | DFW | 21:01 |
| F9 | 06/23/2023 | 1011 | N230FR | ATL | 06:00 |
| F9 | 06/23/2023 | 1013 | N611FR | ATL | 17:10 |
| F9 | 06/23/2023 | 1022 |        | MDW | 10:40 |
| F9 | 06/23/2023 | 1031 |        | BNA | 08:00 |
| F9 | 06/23/2023 | 1038 | N329FR | BUF | 07:21 |
| F9 | 06/23/2023 | 1042 | N230FR | CLE | 10:58 |
| F9 | 06/23/2023 | 1046 | N719FR | CLE | 20:58 |
| F9 | 06/23/2023 | 1050 | N709FR | CLT | 13:46 |
| F9 | 06/23/2023 | 1060 | N717FR | CVG | 07:40 |
| F9 | 06/23/2023 | 1064 | N326FR | CVG | 21:54 |
| F9 | 06/23/2023 | 1070 | N709FR | DTW | 06:00 |
| F9 | 06/23/2023 | 1074 | N708FR | GRR | 08:05 |
| F9 | 06/23/2023 | 1090 | N718FR | IND | 15:09 |
| F9 | 06/23/2023 | 1096 | N718FR | ISP | 21:58 |
| F9 | 06/23/2023 | 1098 |        | ISP | 11:19 |
| F9 | 06/23/2023 | 1103 | N329FR | LAS | 09:48 |
| F9 | 06/23/2023 | 1105 | N394FR | LAS | 23:04 |
| F9 | 06/23/2023 | 1139 | N365FR | MSY | 13:35 |
| F9 | 06/23/2023 | 1151 | N301FR | ONT | 17:38 |
| F9 | 06/23/2023 | 1162 | N392FR | PHL | 06:57 |
| F9 | 06/23/2023 | 1164 |        | PHL | 08:57 |
| F9 | 06/23/2023 | 1166 | N384FR | PHL | 10:49 |
| F9 | 06/23/2023 | 1168 | N326FR | PHL | 14:35 |
| F9 | 06/23/2023 | 1170 | N387FR | PHL | 17:43 |
| F9 | 06/23/2023 | 1190 | N708FR | RDU | 15:36 |
| F9 | 06/23/2023 | 1192 | N721FR | RDU | 19:07 |
| F9 | 06/23/2023 | 1195 | N365FR | SAN | 19:13 |
| F9 | 06/23/2023 | 1199 | N326FR | SAT | 06:15 |
| F9 | 06/23/2023 | 1206 | N611FR | BDL | 06:43 |
| F9 | 06/23/2023 | 1211 | N722FR | STL | 22:00 |
| F9 | 06/23/2023 | 1242 | N235FR | BWI | 16:56 |
| F9 | 06/23/2023 | 1249 | N336FR | DFW | 10:39 |
| F9 | 06/23/2023 | 1287 | N373FR | PHX | 15:55 |
| F9 | 06/23/2023 | 1334 | N719FR | LGA | 14:12 |
| F9 | 06/23/2023 | 1339 | N373FR | HOU | 09:18 |
| F9 | 06/23/2023 | 1737 | N317FR | SFO | 20:25 |
| F9 | 06/23/2023 | 4842 | N723FR | SJU | 23:51 |
| F9 | 06/23/2023 | 4844 | N604FR | SJU | 06:20 |
| F9 | 06/23/2023 | 4846 |        | SJU | 09:45 |
| F9 | 06/23/2023 | 4882 | N717FR | BQN | 16:17 |

SOURCE: Bureau of Transportation Statistics

An official website of the United States government Here's how you know ⌄
United States Department of Transportation

Ask-A-Librarian     A-Z Index

Search

BTS > TranStats
Airline On-Time Statistics

 Print

## Detailed Statistics Departures

NOTE: Due to the large amount of data to be searched, time period should be limited to a maximum total of 31 days for any combination of Month, Date and Year. For example, if October, November and December Month checkboxes are selected; 1,7,14,21 and 28 Day checkboxes are selected and 1997 Year checkbox is selected, then the total time period is 15 days. Times are reported in local time using a 24 hour clock.

Statistics:
- ☐ All Statistics
- ☑ Scheduled departure time  ☐ Actual departure time  ☐ Scheduled elapsed time
- ☐ Actual elapsed time  ☐ Departure delay  ☐ Wheels-off time
- ☐ Taxi-Out time  ☐ Cause of Delay

**Origin Airport**  Philadelphia, PA: Philadelphia International (PHL) ⌄

**Airline**  Frontier Airlines Inc. (F9) ⌄

**Month(s):**
- ☐ All Months

| ☐ Jan | ☐ Feb | ☐ Mar | ☐ Apr | ☐ May | ☑ Jun |
| ☐ Jul | ☐ Aug | ☐ Sep | ☐ Oct | ☐ Nov | ☐ Dec |

**Day(s):**
- ☐ All Days

| ☐ 1 | ☐ 2 | ☐ 3 | ☐ 4 | ☐ 5 | ☐ 6 | ☐ 7 | ☐ 8 | ☐ 9 | ☐ 10 |
| ☐ 11 | ☐ 12 | ☑ 13 | ☑ 14 | ☑ 15 | ☑ 16 | ☑ 17 | ☑ 18 | ☑ 19 | ☐ 20 |
| ☑ 21 | ☑ 22 | ☑ 23 | ☐ 24 | ☐ 25 | ☐ 26 | ☐ 27 | ☐ 28 | ☐ 29 | ☐ 30 |
| ☐ 31 | | | | | | | | | |

**Year(s):**
- ☐ All Years

| ☐ 1987 | ☐ 1988 | ☐ 1989 | ☐ 1990 | ☐ 1991 | ☐ 1992 |
| ☐ 1993 | ☐ 1994 | ☐ 1995 | ☐ 1996 | ☐ 1997 | ☐ 1998 |
| ☐ 1999 | ☐ 2000 | ☐ 2001 | ☐ 2002 | ☐ 2003 | ☐ 2004 |
| ☐ 2005 | ☐ 2006 | ☐ 2007 | ☐ 2008 | ☐ 2009 | ☐ 2010 |
| ☐ 2011 | ☐ 2012 | ☐ 2013 | ☐ 2014 | ☐ 2015 | ☐ 2016 |
| ☐ 2017 | ☐ 2018 | ☐ 2019 | ☐ 2020 | ☐ 2021 | ☐ 2022 |
| ☑ 2023 | ☐ 2024 | | | | |

[ Reset ]  [ Submit ]

**Origin Airport:** Philadelphia, PA: Philadelphia International (PHL)

**Airline:** Frontier Airlines Inc. (F9)

**Month(s):** June

**Day(s):** 13, 14, 15, 16, 17, 18, 19, 20, 21, 22 and 23

**Year(s):** 2023

NOTE: A complete listing of airline and airport abbreviations is available. Times are reported in local time using a 24 hour clock. Airlines began reporting tarmac times for cancelled and diverted flights in October 2008. Tarmac times for cancelled or diverted flights operated prior to Oct. 1, 2008 are not available. Cause of delay data is available on this database beginning with flights operated in October 2008. For cause of delay data from June 2003, when cause of delay data was first reported, see BTS Causes of Delay or the On-Time Performance database. For an explanation of the Cause of Delay reporting, see Understanding the Reporting of Causes of Flight Delays and Cancellations.

All Cause of Delay (in minutes) are referring to the Arrival Delay.

Excel | CSV

| Carrier Code | Date (MM/DD/YYYY) | Flight Number | Tail Number | Destination Airport | Scheduled departure time | |
|---|---|---|---|---|---|---|
| F9 | 06/13/2023 | 0155 | N712FR | ATL | 06:05 | |
| F9 | 06/13/2023 | 0511 | N230FR | DEN | 05:30 | |
| F9 | 06/13/2023 | 0519 | N378FR | DEN | 20:45 | |
| F9 | 06/13/2023 | 1165 | N330FR | MCO | 07:59 | |
| F9 | 06/13/2023 | 1167 | N706FR | MCO | 13:20 | |
| F9 | 06/13/2023 | 1169 | N388FR | MCO | 19:32 | |
| F9 | 06/13/2023 | 1171 | N348FR | MCO | 17:00 | Plaintiff's Flight |
| F9 | 06/13/2023 | 1173 | N328FR | MCO | 05:30 | |
| F9 | 06/13/2023 | 1175 | N330FR | MCO | 21:34 | |
| F9 | 06/13/2023 | 1651 | N324FR | RDU | 10:49 | |
| F9 | 06/13/2023 | 1653 | N719FR | RDU | 13:33 | |
| F9 | 06/13/2023 | 1707 | N388FR | CVG | 14:14 | |
| F9 | 06/13/2023 | 2143 | N713FR | LAS | 19:03 | |
| F9 | 06/13/2023 | 2295 | N610FR | FLL | 06:00 | |
| F9 | 06/13/2023 | 2297 | N229FR | FLL | 12:35 | |
| F9 | 06/13/2023 | 2303 | N394FR | DFW | 12:52 | |
| F9 | 06/13/2023 | 2315 | N230FR | CLT | 17:26 | |
| F9 | 06/13/2023 | 2327 | N367FR | MIA | 19:00 | |
| F9 | 06/13/2023 | 2347 | N348FR | PBI | 09:32 | |
| F9 | 06/13/2023 | 2355 | N371FR | RSW | 21:32 | |
| F9 | 06/13/2023 | 2363 | N371FR | SAV | 15:05 | |
| F9 | 06/13/2023 | 2375 | N322FR | TPA | 12:19 | |
| F9 | 06/13/2023 | 2377 | N346FR | TPA | 18:37 | |
| F9 | 06/13/2023 | 2385 | N353FR | ATL | 19:45 | |
| F9 | 06/13/2023 | 4862 | N376FR | SJU | 08:40 | |
| F9 | 06/13/2023 | 4864 | N324FR | SJU | 15:54 | |
| F9 | 06/13/2023 | 4870 | N704FR | JAX | 10:31 | |
| F9 | 06/14/2023 | 0155 | N719FR | ATL | 06:10 | |
| F9 | 06/14/2023 | 0511 | N348FR | DEN | 05:30 | |
| F9 | 06/14/2023 | 0519 | N717FR | DEN | 20:41 | |
| F9 | 06/14/2023 | 1165 | N228FR | MCO | 07:59 | |
| F9 | 06/14/2023 | 1167 | N609FR | MCO | 13:19 | |
| F9 | 06/14/2023 | 1169 | N348FR | MCO | 17:31 | |
| F9 | 06/14/2023 | 1171 | N316FR | MCO | 19:12 | |
| F9 | 06/14/2023 | 1173 | N713FR | MCO | 05:30 | |
| F9 | 06/14/2023 | 1369 | N394FR | MDW | 20:14 | |
| F9 | 06/14/2023 | 1651 | N375FR | RDU | 18:25 | |
| F9 | 06/14/2023 | 1653 | N368FR | RDU | 14:08 | |
| F9 | 06/14/2023 | 2143 | N318FR | LAS | 18:35 | |
| F9 | 06/14/2023 | 2267 | N395FR | CLE | 17:04 | |
| F9 | 06/14/2023 | 2286 | N368FR | BOS | 09:34 | |
| F9 | 06/14/2023 | 2295 | N711FR | FLL | 06:01 | |
| F9 | 06/14/2023 | 2297 | N303FR | FLL | 13:08 | |
| F9 | 06/14/2023 | 2301 | N329FR | DFW | 20:14 | |
| F9 | 06/14/2023 | 2307 | N375FR | BNA | 12:23 | |
| F9 | 06/14/2023 | 2315 | N367FR | CLT | 17:18 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| F9 | 06/14/2023 | 2339 | N395FR | MSY | | 09:54 |
| F9 | 06/14/2023 | 2355 | N395FR | RSW | | 21:43 |
| F9 | 06/14/2023 | 2375 | N308FR | TPA | | 09:46 |
| F9 | 06/14/2023 | 2377 | N720FR | TPA | | 17:36 |
| F9 | 06/14/2023 | 2385 | N353FR | ATL | | 19:40 |
| F9 | 06/14/2023 | 4862 | N324FR | SJU | | 06:29 |
| F9 | 06/14/2023 | 4864 | N311FR | SJU | | 15:54 |
| F9 | 06/14/2023 | 4870 | N392FR | JAX | | 10:39 |
| F9 | 06/15/2023 | 0155 | N706FR | ATL | | 06:15 |
| F9 | 06/15/2023 | 0511 | N375FR | DEN | | 06:00 |
| F9 | 06/15/2023 | 0519 | | DEN | | 20:23 |
| F9 | 06/15/2023 | 1165 | N352FR | MCO | | 07:59 |
| F9 | 06/15/2023 | 1167 | N609FR | MCO | | 13:20 |
| F9 | 06/15/2023 | 1169 | N334FR | MCO | | 19:12 |
| F9 | 06/15/2023 | 1171 | N352FR | MCO | | 21:34 |
| F9 | 06/15/2023 | 1173 | N324FR | MCO | | 05:55 |
| F9 | 06/15/2023 | 1651 | N367FR | RDU | | 14:57 |
| F9 | 06/15/2023 | 1653 | N396FR | RDU | | 06:18 |
| F9 | 06/15/2023 | 1707 | N370FR | CVG | | 15:19 |
| F9 | 06/15/2023 | 2145 | N311FR | LAS | | 22:21 |
| F9 | 06/15/2023 | 2295 | N614FR | FLL | | 06:26 |
| F9 | 06/15/2023 | 2297 | N356FR | FLL | | 12:34 |
| F9 | 06/15/2023 | 2303 | N353FR | DFW | | 12:36 |
| F9 | 06/15/2023 | 2315 | N375FR | CLT | | 17:41 |
| F9 | 06/15/2023 | 2327 | N396FR | MIA | | 17:43 |
| F9 | 06/15/2023 | 2347 | N311FR | PBI | | 09:34 |
| F9 | 06/15/2023 | 2355 | N391FR | RSW | | 21:54 |
| F9 | 06/15/2023 | 2363 | N322FR | SAV | | 16:33 |
| F9 | 06/15/2023 | 2371 | N720FR | SRQ | | 13:33 |
| F9 | 06/15/2023 | 2375 | N381FR | TPA | | 11:38 |
| F9 | 06/15/2023 | 2377 | N305FR | TPA | | 14:14 |
| F9 | 06/15/2023 | 2383 | N346FR | ATL | | 20:12 |
| F9 | 06/15/2023 | 4862 | N236FR | SJU | | 10:50 |
| F9 | 06/15/2023 | 4864 | N391FR | SJU | | 15:54 |
| F9 | 06/15/2023 | 4870 | N606FR | JAX | | 10:31 |
| F9 | 06/16/2023 | 0155 | N708FR | ATL | | 06:05 |
| F9 | 06/16/2023 | 0511 | N322FR | DEN | | 06:02 |
| F9 | 06/16/2023 | 0519 | N715FR | DEN | | 20:41 |
| F9 | 06/16/2023 | 1163 | N611FR | MCO | | 21:20 |
| F9 | 06/16/2023 | 1165 | N722FR | MCO | | 12:19 |
| F9 | 06/16/2023 | 1167 | N611FR | MCO | | 13:59 |
| F9 | 06/16/2023 | 1169 | N720FR | MCO | | 17:22 |
| F9 | 06/16/2023 | 1173 | N604FR | MCO | | 05:50 |
| F9 | 06/16/2023 | 1369 | N335FR | MDW | | 20:14 |
| F9 | 06/16/2023 | 1651 | N368FR | RDU | | 18:45 |
| F9 | 06/16/2023 | 1653 | N351FR | RDU | | 06:30 |
| F9 | 06/16/2023 | 2143 | N343FR | LAS | | 18:23 |

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
8:20 am, Sep 04, 2024
JEFFREY P. COLWELL, CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**KUSMIN L. AMARSINGH**

   Plaintiff,

v.       **Civil Action No. 23-cv-01875-GPG-KAS**

**FRONTIER AIRLINES, INC.,**

   Defendant.

---

### PLAINTIFF OBJECTIONS

### TO MAGISTRATE AMENDED ORDER AND RECOMMENDATION

---

**COMES NOW** Plaintiff, Kusmin L. Amarsingh, by invitation of the Court, makes the following objections to the Magistrate's Amended Order and Recommendation dated 8/20/2024, and in support thereof states as follows:

As the Court stated, Plaintiff must show: 1) She is a member of a protected class; 2) Defendant intended to discriminate against her based on race; and 3) The discrimination interfered with a protected activity. (*Ref. Order @ page 8, line 12*). The Magistrate's Order found that Plaintiff plausibly alleged that she is a protected class member – a woman of Indian Descent. (Ref. Order @ page 9, line 67) and implied that Plaintiff met Element 3 that her allegations go to certain protected activities including the fundamental right to travel and to contract free of discrimination.

The Court found that Plaintiff failed Element 2: That Defendant intentionally discriminated against her based on *her* race'. As a result, the following objection(s) are specific to Element 2.

## LEGAL STANDARD

In deciding a Motion to Dismiss under Rule 12(b)(6) the Court must weigh ALL factual allegations contained in Plaintiff's Complaint against the Defendant's motion to dismiss under a 'plausibility standard'. Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 757 F.3d 1125, 1131 (10th Cir. 2014) holding that 'a Plaintiff does not need detailed factual allegations, however, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. A claim has facial plausibility when the plaintiff pleads factual content, allowing the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Factual allegations must be enough to raise the right to relief above the speculative level.' Id; Ashcroft v. Iqbal, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939 (2009). A claim is plausible when Plaintiff pleads **factual content** that allows the court to draw the reasonable inference that Defendant is liable for the misconduct alleged. Id. Snow v. DirecTV, Inc., reiterated that all facts set forth in a plaintiff's complaint must be accepted as true, and a complaint should not be dismissed unless the plaintiff can prove no set of facts that would support the claims. *See* Snow v. DirecTV, Inc., 450 F.3d 1314.

The Plaintiff can allege either direct facts showing discrimination or indirect facts that give rise to a plausible inference of discrimination. Doherty (2d Cir. Sep. 27, 2022). The plausibility

standard is not akin to a probability requirement, nor does Plaintiff have to establish a prima facie case of discrimination at the pleading stage.  Myers v. Doherty, No. 21-3012-cv, 2022 U.S. App. LEXIS 26982 (2d Cir. Sep. 27, 2022).  Vega v. Hempstead Union Free Sch. Dist. further clarifies that a plaintiff does not need to plead a prima facie case under the McDonnell Douglas framework to defeat a motion to dismiss. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72 (2d Cir. 2015).  The deference given to a Plaintiff at the motion to dismiss stage is rooted in the requirement to allege sufficient facts to make a claim plausible, rather than proving the claim outright. Id.  This ensures that plaintiffs can present their case and gather evidence through discovery before being required to meet the higher burden of proof necessary at later stages of litigation. Id.

In Katib v. USF Holland LLC, 640 F. Supp. 3d 788, the court emphasized the importance of providing specific factual context to support allegations of discrimination, such as identifying comparators who were treated differently under similar circumstances  Katib v. USF Holland LLC, 640 F. Supp. 3d 788. This approach aligns with the general requirement that a plaintiff must show they were treated less favorably than individuals outside their protected class to establish a prima facie case of discrimination  Marria v. MV Transp. Inc., 2018 U.S. Dist. LEXIS 242351.

Therefore, even if the Defendant denies the allegations, the plaintiff must still meet the burden of establishing a prima facie case of discrimination, and the Defendant can counter by providing legitimate, nondiscriminatory reasons for their actions. The court will then determine if the plaintiff can show that these reasons are pretextual.  Gulley v. County of Oakland, 496 Fed. Appx. 603, Katib v. USF Holland LLC, 640 F. Supp. 3d 788, Marria v. MV Transp. Inc., 2018 U.S. Dist. LEXIS 242351.

The United States Supreme Court has held that 42 U.S.C.S. § 1981 phrase "as is enjoyed by white citizens" applies to all persons 'including white persons' because, the Court explained, it could not accept the view that the terms of § 1981 exclude its application to racial discrimination against white persons. § 1981 is clarified by an examination of the legislative history, which suggests that the statute applies to every race and color. Rajaram v. Meta Platforms, Inc., 105 F.4th 1179, 1181 (9th Cir. 2024). In its 10-page analysis of the history of the phrase 'white person,' the Court rejected the position that the term 'as white persons' as a floor of measurement for discrimination would necessarily mean that a white person cannot claim discrimination. *Id*.

## ANALYSIS

Plaintiff did state sufficient factual allegations for a court to plausibly find that Defendant intentionally discriminated against her, though unartfully so, due in part to her limited experience and resources at the time of filing. In the instant case, Plaintiff respectfully argues that the Magistrate appears to have left off crucial facts from her analysis and recommendations, which are itemized below:

1. <u>FACT 1: CHARACTERIZATION OF RACIAL DISCRIMINATION (Order @ Page 10, line 7):</u> The Magistrate's Order states that the passengers who were <u>not</u> selected were '*diverse*' which demonstrates there was no discrimination against Plaintiff because she appeared to be of Indian Descent and the other passengers were NOT of Indian Descent. I respectfully object to this mischaracterization of Plaintiff's complaint.

The racial discrimination distinction is not that everyone discriminated against was of "Indian Descent" as the Court and Defense states. Plaintiff contends that she was not provided a seat because she was "NON-AFRICAN AMERICAN".

The critical fact in Plaintiff's complaint is that *only African American passengers were selected to board to the detriment of the passengers who were NOT African American*. To illustrate further, imagine there was a group of people, and the agents drew a line and said only White people get in this line and all others sit down and wait. Then the agents said only white passengers could get on the flight, and the other non-White passengers were left without any guidance or assistance. Next, the agents misled the non-White passengers and assured them they were working on seating additional passengers when in fact the flight had departed 45 minutes before.

As a result, it did not matter if the other passengers were diverse or not of Indian descent, what mattered was Plaintiff was not a member of the <u>preferred race</u>.  (*See* Plaintiff Complaint, page 6, lines 23, 32; page 7, line 11; page 7, line 38; page 9, lines 20-26). These factual allegations are not mere labels or conclusory statements prohibited under Iqbal and its progeny. As a result, Plaintiff objects to the Order stating otherwise.

The Order states that both groups were 'diverse' the one that was boarded and the one that was not. Defense motion similarly argues that Plaintiff and the remaining passengers were diverse and that at least one "White male" was also left behind. In other words, Defense argues that Plaintiff experienced the same, acceptable discrimination as the White person so therefore she was not discriminated against. Such a reading is inconsistent with our Supreme Court's recent option <u>Rajaram v. Meta Platforms, Inc.</u> Adopting this 'diverse' group including a 'white person' as the standard to measure Plaintiff's claim not only means white people are barred from claiming

discrimination, but also that Plaintiff may never claim discrimination if other races are also discriminated against.

Next, Defendant argues that they boarded the Asian child and her adult companion, who were non-African American, therefore this proves they raced neutral selection criteria to seat groups. This argument fails because boarding the Asian minor and the Asian woman has no bearing on the Plaintiff's complaint.   In this instance, the Defendant did exercise a non-race-based determination because there was an unaccompanied minor, and that was therefore reasonable and warrants the Court's inference.   However, at issue is the lack of race-neutral selection of the other passengers that were bumped.

Furthermore, this fact proves that Frontier could therefore apply objective standards but chose not to when it came to the other remaining passengers.

2. FACT 2:  Omitted Facts:  Flights Available:  The Order does not mention or refer to Plaintiff's alleged facts, contained in her Complaint that there was another direct flight leaving the same gate less than 30 minutes direct to Orlando that could accommodate the African American passengers and that the next available flight for Plaintiff was a week later.   (See:  Plaintiff Complaint, page 3, page 9).  Furthermore, the Defense denied the allegation that the next available flight was a week later with nothing more only that Plaintiff was mistaken.   Defendant did not provide a schedule or allege any fact to rebut Plaintiff's factual allegation.   Defendant is not entitled to deference or the inference that Plaintiff's alleged flight schedule was untrue at this stage. Instead, following the Gulley v. County of Oakland, and Katib v. USF Holland procedure, when the defendant denies the Plaintiff's factual allegation, the Court must then ask, "Could the Plaintiff prove this fact after discovery or at a later trial.  If she can, Defendant's motion to dismiss on this

basis is improper. Granting it would reduce the importance of ensuring a well-pleaded complaint. As the Court points out, the Plaintiff is limited to what she has alleged in her Complaint, and nothing more. The Court may in limited instances consider additional evidence, but here the Court applied a strict interpretation and did not consider her response to the Defense motion to dismiss or the Plaintiff's request to consider supplemental evidence of the Defendant's flight schedule.

The result of not considering this allegation, which was contained in Plaintiff's complaint, resulted in the Court's inference that Defendant had a <u>reasonable</u> race-neutral basis for their seating criteria and is therefore not entitled to the Court's inference of one. Plaintiff respectfully disagrees – Plaintiff's blanket denial of a known fact in their control was markedly unreasonable.

*In the interest of judicial economy and fairness, Plaintiff respectfully requests that this Court consider Defendant's flight schedule as published as true in the US Bureau of Flight Statistics. This evidence is not 'new or external evidence', rather it explains Plaintiff's factual allegations that there were additional flights and rebuts Defendant's denial of the same.*

*After Defendant filed its Motion to Dismiss, Plaintiff learned that there was not one, but **2 additional flights** leaving that gate within less than 2 hours from Plaintiff's flight direct to Orlando. Later still, Plaintiff learned that there was a total of **35 flights** from Philadelphia to (Orlando) MCO, two of which were scheduled the same evening as the flight at issue – one within about 30 minutes after departure and the other less than 2 hours after Plaintiff's flight. From 14 June to 23 June 2023, there were 33 additional flights from Philadelphia to MCO. The ONLY other flight that could accommodate Plaintiff and the other St. Louis passenger of Indian Descent was on 23 June 2023. (See Highlighted Plaintiff Supplemental Evidence and Attachment 1, Frontier Flight Schedule 13 June to 23 June 2023;* Plaintiff Complaint, page 3, page 9.

This evidence goes to Plaintiff's claim 2 because it proves, by independent reliable evidence, that there were two other flights available to accommodate the chosen passengers, but only one flight a week later to accommodate Plaintiff and the other St. Louis passenger. By not considering this evidence, the Court erroneously found that Frontier had a reasonable race-neutral basis for the priority seating of the bumped passengers. Plaintiff respectfully requests that the Court consider this evidence in the interest of fairness and judicial economy.

This supplemental evidence is reliable self-authenticating evidence. *See* Bureau of Transportation Statistics, Detailed Statistics Departures (www.bts.gov), August 29, 2024. This evidence provided, pre-discovery, weighs in favor of the truth of Plaintiff's factual allegations rather than relying on what may be viewed as self-serving facts. As a result, Plaintiff respectfully requests that the Court consider this evidence in its de novo review.

3. FACT 3: OBJECTIVE FACTORS FOR PRIORITY SEATING: The Magistrate's Order omitted the facts that Plaintiff paid substantially more for her flights, arrived earlier than the non-African American passengers, and checked in hours before the African American passengers who were selected.

These factors are objective legal factors that Frontier could have considered, but they did NOT. Instead, the agents ignored all these factors and relied on the race of the passengers, again African American vs. Non-African American. These facts weigh against the Court's finding that the Defendant had some reasonable alternative reason for the selection process of who would or would not be seated. (*See*: Plaintiff Complaint, page 5, 6 and 10; *See* also Supplemental Evidence,

page 9). Plaintiff also note that the Magistrate mentioned, by did not analyze the fact that the Agents mocked the other Indian passenger's strong Indian accent.

To direct the Court's attention to a common character, imagine that the Agent sounded like the character 'Apu' from the Simpsons. His mocking was directed at Plaintiff and the other Indian passengers as they stood before him in a crowded airport and while determining the seating criteria for the bumped passengers. Race and national origin were a major factor in the Defendant's intentional selection criteria for seating. Plaintiff respectfully objects to the Defense and Magistrate's order classifying the Defendant's behavior as merely rude or dismissive.

The Court declined to consider the Defendant verifying her and the other Indian passenger when they called them both to the Agent's desk where the names are unique 'Chaudry (sic) and Amarsingh'. Considering all that had occurred previously, and the lead agent saying nothing but having both passengers stand directly in front of him, proceeding to annotate the flight roster, and then sending the two passengers back to their seats when taken together is entitled to deference. What purpose then was the annotation – if they did take notice of the two passengers' flight (without regard to race in any way) they would have seated them because they both had more complex travel that could not be reasonably and readily accommodated. Furthermore, Plaintiff alleged that the other Indian passenger told the agents that she was traveling on an international flight and her destination from India was St. Louis, Missouri.

When taken together Defendant is not entitled to a reasonable inference that this act was race neutral. It is understandable why the Court declined to adopt this fact because it is shocking to the conscience. However, that is not the standard. Plaintiff is limited in her allegations, which when taken as true, plausibly support her allegation that 'Defendant intended to discriminate against her'.

4. <u>FACT 4: PLAINTIFF ADDRESSED AGENTS BEFORE DURING AND AFTER THE</u> <u>BOARDING PERIOD (page 9, line 19)</u>:  The Magistrate's Order states that the Plaintiff only addressed her flight and connection through St. Louis with the Agents <u>AFTER</u> the African American passengers were boarded and gates closed.  Plaintiff's complaint alleges that she approached and spoke to the Agents about her flight and requested a seat at least three times BEFORE the selection of passengers was made.  In addition, Plaintiff stated that she wished to '**again'** impress upon the Agents her flight and the availability of the other flight to MCO. The word 'again' taken in the full context of all the other times Plaintiff alleged she approached or attempted to speak with the Agents, is sufficient to demonstrate that she did not only raise the issue AFTER the African American group boarded.   (*See* Plaintiff's complaint @ page 6, paragraph 8). Notably, this information was already available to the Agents.  Therefore, even if Plaintiff never spoke to the Agents, they had a duty to act reasonably.

Stating that Plaintiff only raised these issues AFTER the boarding process paints a very different picture.  Specifically, the Magistrates misstatement of this fact suggests that the Agents were not aware of the Plaintiff's issues because she never brought it to their attention in a timely manner.  In the common parlance of our profession, the Magistrate's Order makes it seem like the Plaintiff 'acquiesced by failing to object' which is not the case here.  (*See* Plaintiff Complaint, page 5 – 9).

Furthermore, Plaintiff alleged that the flight departed at least 45 minutes BEFORE Defendant updated the Monitor.  This amounts to deceptive and unfair trade practices under the Department of Transportation Regulation, 49 USCS § 41712, Unfair and deceptive practices.  The

Agents continued to assure the Plaintiff and the other remaining passengers that they were working on getting them seats.  (*See* Plaintiff Complaint, page 6, line 36).  This is a crucial fact because, as the Magistrate did here, leaving this fact off makes it appear as if the Plaintiff knew the boarding process was complete, that no more seats were remaining, and, that the flight had already departed. This is a critical fact that substantially changes the analysis and outcome of the Magistrate's findings.

5.   <u>FACT 5:  MISSTATED REASON FOR TRAVEL Page 11, line 8:</u>  The Magistrate's Order failed to state the complete reasons for Plaintiff's travel. Plaintiff was in Philadelphia for a funeral celebrating the untimely death of a close loved one. The Magistrate addressed emotional damages based only on Plaintiff missing her grandson's birth announcement and not the death, which together with the rest of the Magistrate Order and omitted facts does not adequately present all the facts in Plaintiff's complaint. (*See* Plaintiff Complaint, page 4). While this fact does not have any bearing on the Defendant's discriminatory intent, it does provide the Court with the context of why we are here. Defendant is under an obligation to consider objective factors in seat assignments – they did not. In addition to stating factual allegations in the Complaint, Plaintiff must also allege harm and request relief that could be granted.

6.   <u>FACT 6:  INFERENCE 'BUT FOR TEST':</u>  The Magistrate stated that Plaintiff failed to demonstrate that but for her race, she would have been selected for the flight.  Considering **all** the facts and circumstances Plaintiff has demonstrated that if she were African American, she would have been boarded which is the same as 'But for not being African American Plaintiff would have been boarded on the flight'.

7. <u>FACT 7: 'DEFENDANT DID NOT PROVIDE OR PUBLISH THEIR PRIORITY SELECTION PROCEDURES'</u>:  When an airline overbooks a flight, the determination of which passengers should be seated or not is governed by both federal regulations and the airline's own boarding priority rules.  The boarding priority rules typically include considerations such as the severity of hardship that would be caused by denying boarding to certain passengers, such as those who are physically handicapped or unaccompanied minors, and the fare class of the ticket purchased.  For example, United Airlines' boarding priorities, as outlined in Domestic General Rules Tariff No. DGR-1, Rule 245, prioritizes passengers who are physically handicapped or unaccompanied children, followed by those who have paid full fare for First Class, Business Class, or Coach <u>OPPMANN v. UNITED AIRLINES, INC.</u>, 1986 U.S. Dist. LEXIS 27438.

Additionally, **airlines are required to file their priority rules** with the Department of Transportation and adhere to them. In <u>Karp v. North Central Airlines</u>, 583 F.2d 364 (7th Cir. 1978), this court held that § 404(b) created an implied private right of action for passengers of a domestic airline who were bumped due to a failure of the airline to follow its own boarding priority rules. Similarly, in <u>Nader v. Allegheny Airlines</u>, the court recognized the necessity of non-discriminatory priority rules to prevent arbitrary or discriminatory bumping of passengers <u>Nader v. Allegheny Airlines</u>, 426 U.S. 290.

Here Defense argued and Order agreed that Frontier had some other non-race-based priority boarding procedure, however, that inference is misplaced.  The facts are to be taken as true and, in the light, most favorable to the Plaintiff.   Rather than attempting to cure the breach and Board the passengers according to the availability of flights or any of the objective basis previously discussed by Plaintiff, Frontier used race as the deciding factor.  Once again, deference at this early

stage goes to Plaintiff, not Defendant, particularly here where Defendant claims race-neutral selection criteria without submitting ANY evidence that they published the same or provided notice to Plaintiff or the other bumped non-African American passengers.

8. **FACT 8: MOOTNESS:** The Magistrate denied consideration of Plaintiff's request to consider supplemental evidence as *moot*. Respectfully, Plaintiff is uncertain what issue the Magistrate finds moot. (*Ref:* Order @ page 2, line 12). Evidence that directly proves a fact alleged in a complaint is not considered external evidence when deciding a motion to dismiss if it falls within certain exceptions.

Generally, courts consider only the allegations in the complaint, exhibits attached to the complaint, and matters of public record when deciding a motion to dismiss. Schmidt v. Skolas, 770 F.3d 241 (3d Cir. 2014). Documents that are integral to or explicitly relied upon in the complaint are not external if it is central to the plaintiff's claim and their authenticity must not be disputed Revitalizing Auto Cmtys. Envtl. Response Tr. v. Nat'l Grid USA, 92 F.4th 415 (2d Cir. 2024). If these conditions are met, the court can consider the document as part of the pleadings. *Id*. LoCicero v. Sanofi-Aventis United States Inc., 2009 U.S. Dist. LEXIS 59767.

Here Defendant must publish its flight schedule and provide notice to its customers and the Department of Transportation and related federal government agencies. Plaintiff provided such evidence from a U.S. government website, which is self authenticating and a matter of public record. According to 39 USCS § 5402, "scheduled service" is defined as flights operated in common carriage available to the public under a published schedule. Additionally, 49 USCS § 41104(b) specifies that air carriers providing regularly scheduled charter air transportation must provide the public in advance with a schedule containing the departure location, departure time, and arrival location of the flight (*See* § 41104. Additional limitations and requirements of

charter air carriers. Furthermore, the Federal Aviation Administration (FAA) regulates airline computerized reservation systems, requiring them to display information, including schedules, in specific ways. *See* Flytenow, Inc. v. FAA, 420 U.S. App. D.C. 343, 808 F.3d 882 (2015). This regulatory framework ensures that flight schedules are made available to the public consistently and transparently. (*Ref* Order @ page 8, line 19). As a result, Plaintiff respectfully asks that the Court consider the additional/supplementary evidence of Defendant's flight schedule.

10. **FACT 10:  PLAINIFF ALLEGED DAMAGES IN EXCESS OF $75,000 FOR DIVERSITY JURISDICTION ON HER CONTRACT CLAIM**.  Plaintiff did not clearly specify the basis for the damages and wishes to now correct that oversight.  Plaintiff included in the supplemental evidence the compensation rate for Airline delays at 400% for 4-hour delays. (*See*: Defense motion to dismiss 'Carrier Contract', and Plaintiff's Response to Motion to Dismiss, Page 4).

In the instant case, Plaintiff alleged that the passengers who were discriminated against and left behind were approximately 8 to 10 passengers.  Plaintiff intends to join all known parties after Discovery because their claims arise out of the same transaction and are therefore compulsory.  In addition, the only way the Plaintiff can prove damages is through the Discovery process.

However, even if the Court finds that aggregating damages is speculative, then Plaintiff contends that the breach of contract resulted from racial discrimination and denial of her fundamental right to travel.  As a result, Plaintiff respectfully requests that the Court grant supplemental jurisdiction or view the Contract Claim as based on federal question jurisdiction.

**CONCLUSION**

To fairly apply Iqbal, the Court must consider all the factual allegations in the Plaintiff's pleadings and make all reasonable inferences in favor of the Plaintiff.  The omitted facts were crucial to the Court's analysis. Correcting these factual inaccuracies is essential not only for the fairness of the proceedings but also for judicial efficiency.  Addressing these specific errors will advance these interests. The objections presented here are both specific and timely, as required by the Federal Rules and relevant case law.

Plaintiff respectfully requests the Court consider the foregoing objections to the Magistrate's order and recommendation and find that Plaintiff has met her burden to survive Defendant's motion to dismiss.

**CERTIFICATE OF SERVICE**

I hereby certify that I filed this motion with the Clerk of Court via email at COD_ProSe_Filing@cod.uscourts.gov and sent a copy to Mr. Brian Maye for Defendant at bmaye@hinshawlaw.com on 3 September 2024.

*Kusmin L. Amarsingh*
Kusmin L. Amarsingh
Pro Se

**ATTACHMENTS**

1.  MAGISTRATE ORDER LINE NUMBERED

2.  COMPLAINT LINE NUMBERED

3.  PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

4.  PLAINTIFF SUPPLEMENTAL EVIDENCE

5.  DEFENDANT FLIGHT SCHEDULE FROM 13 JUNE TO 23 JUNE 2023

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:23-cv-01875-GPG-KAS

KUSMIN L. AMARSINGH

     Plaintiff,

v.

FRONTIER AIRLINES, INC.,

     Defendant.

---

### DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 72 OBJECTIONS

---

     Defendant, Frontier Airlines, Inc. ("Frontier"), by its undersigned counsel, submits this Response to Plaintiff's Rule 72 Objections to Magistrate Judge Starnella's August 20, 2024, Amended Order and Recommendation regarding Frontier's Motion to Dismiss (ECF No. 33).

## I.   <u>INTRODUCTION</u>

     Plaintiff's Objections (ECF No. 36) to Magistrate Judge Starnella's Amended Order and Recommendation only highlight the defects of her claims and further justify a dismissal with prejudice of the Complaint. Plaintiff acknowledges that the flight was overbooked, she did not have a seat assignment, the passengers without seat assignments were a diverse group of individuals, the passengers ultimately assigned seats at the gate were a diverse group of individuals, and the ten (10) passengers who were ultimately denied boarding were a diverse group of individuals. It is irrefutable that the denial of boarding of the ten (10) passengers, including Plaintiff, was due to there being no seats on the subject flight to accommodate them. It had nothing to do with race.

**Error! Unknown document property name.**

Although it very plain that her denial of transportation, along with nine other individuals, was based on legitimate, race-neutral reasons, Plaintiff insists that she has sufficiently pleaded a viable Section 1981 claim by virtue of alleging that she was not permitted to board because "[she] was not a member of the *preferred race*."[1] (ECF No. 35 at p. 5)(emphasis added). Plaintiff's cynical speculation, however, is not enough to give rise to a valid discrimination claim under Section 1981.

## II.    ARGUMENT

### A.    Plaintiff's racial discrimination claim fails as a matter of law.

Plaintiff's claim for racial discrimination fails because she cannot show that Frontier intentionally discriminated against her based on her race, and that the alleged discrimination was the "but-for" cause of the alleged interference with a protected activity. *See Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020). The facts alleged in the Complaint establish that Plaintiff was denied transportation on the subject flight because of legitimate, non-discriminatory reasons: (1) she elected <u>not</u> to pay to receive a seat assignment at the time she booked her flight (or anytime thereafter), (2) the flight was overbooked, (3) the gate agents filled the remaining unassigned seats with a diverse group of passengers, including African Americans and non-African Americans, and (4) Plaintiff and other passengers were denied boarding on the subject flight because there were no seats available. This is fatal to Plaintiff's Section 1981 claim. See *Mohsen Sharifi Takieh v. Banner Health*, 515 F.

---

[1] Plaintiff argues in her Objections that the "critical fact in the Complaint is that only African American passengers were selected to board to the detriment of the passengers who were NOT African American." Plaintiff's assertion, however, contradicts the allegations in the Complaint that African Americans and non-African Americans were selected to board, and a diverse group of passengers, including a mixed-raced African American individual, were denied boarding.

2

Supp. 3d 1026, 1035 (D. Ariz. 2021) (applying the but-for causation test, courts have ruled that a §1981 claim is rendered implausible if the complaint identifies an "independent, non-discriminatory reason" for the alleged contractual impairment); *Astre v. McQuaid*, 804 F. App'x 665, 667 (9th Cir. 2020) (same) (quoting *FCS Advisors, LLC v. Missouri*, 929 F.3d 618, 622 (8th Cir. 2019)).

Plaintiff essentially asks the Court to (1) ignore the legitimate, non-discriminatory reasons she was denied transportation, and (2) disregard that similarly situated individuals, who were racially diverse, were treated the same as Plaintiff. At the same time, she insists that the Court blindly accept her conjecture that the African American gate agents discriminated against her simply because she is not African American. To allow Plaintiff's baseless assumption to serve as the foundation of her Section 1981 claim would violate the pleading requirements under Rule 8, *Twombly,* and *Iqbal*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)("mere conclusory statements are not entitled to an assumption of truth"). The factual allegations must go beyond the sheer possibility that a defendant acted unlawfully. See *Twombly*, 550 U.S. at 556.

Here, Plaintiff has not proffered any factual content to raise a right to relief above the speculative level. *Id.* at 555. She merely assumes that was denied boarding because she is not African American. This is, of course, belied by her allegations that establish that there were race-neutral reasons that ten (10) passengers were not be transported on the subject flight, *i.e.,* not enough seats, and that similarly situated passengers were treated the same as Plaintiff, including a mixed-race African American passenger who was also denied boarding. As Magistrate Judge Starnella pointed out, "no matter which combination of passengers had been boarded and no matter

which [] passengers had been left behind, each group would have been racially diverse." (See ECF No. 33 at p. 10).

Accordingly, Plaintiff's allegations do not rise to a plausible inference that racial animus was the but-for cause of her not being transported by the subject flight, and her claim should be dismissed with prejudice. See *Doe v. Colo. Cmty. Coll. Sys.*, 2020 U.S. Dist. LEXIS 161892, at *16 ("The chasm is simply too great between the facts pled and the inference Plaintiffs ask this Court to make.").

**B.     Plaintiff failed to plead the requisite amount in controversy to establish subject matter jurisdiction with respect to her breach of contract claim.**

Magistrate Judge Starnella concluded that the amount in controversy alleged by Plaintiff "falls well short of the $75,000 jurisdictional threshold," and, therefore, diversity jurisdiction does not exist.  Plaintiff appears to concede that she has not sufficiently alleged the necessary amount in controversy to establish diversity jurisdiction with respect to her breach of contract claim.

In the event the Court exercises supplemental jurisdiction as to Plaintiff's breach of contract claim, Frontier maintains that such claim fails as a matter of law. The Contract of Carriage expressly states: "Frontier will use reasonable efforts to transport passengers and baggage to the purchased destination, but published schedules, flight times, aircraft types, seat assignments, and similar details set forth in the ticket or Frontier's published schedules ***are not guaranteed and form no part of this Contract of Carriage*.**" (ECF No. 22-1) (emphasis added).  Section 18 of the Contract governs the terms of "Denied Boarding Compensation." Section 18(D) states that a passenger who is denied boarding "will be transported on Frontier's next available flight on which space is available and at no additional charge." *Id.* Plaintiff claims Frontier "did not have an available connecting or other flight that would accommodate my travel plans for at least a week." (ECF No. 14 at 3). She further claims there were "no other alternative/feasible flights for my

schedule for at least a week." *Id.* at 6. Plaintiff, therefore, cancelled her flight and booked a ticket the next day with American Airlines. *Id.* at 8.

Contrary to Plaintiffs' claims, nothing in the Contract guaranteed that Frontier would "accommodate her travel plans" to fit her particular "schedule" on June 13, 2023. Rather, Plaintiff was entitled to transport on the next available flight on which space was available, which was offered to her by Frontier. Plaintiff fails to explain how Frontier's offered accommodation violated Section 18(D) of the Contract. Thus, it is apparent that Frontier performed its obligations under the Contract, but Plaintiff chose to fly with a different airline for her own specific scheduling reasons.

Moreover, Section 18(C) of the Contract provides the terms for financially compensating a passenger who is involuntarily denied boarding, and Plaintiff fails to allege that Frontier violated this condition. She alleges that, at different times, Frontier agents offered her $800 (*id.* at 4) and $400 (*id.* at 7) in addition to refunding the cost of her ticket, but that she never "elected for a refund of [her] ticket." *Id.* at 9. That Plaintiff chose not to accept Frontier's offers undermines any argument that Frontier failed to perform a contractual obligation which resulted in her sustaining damages. For all of these reasons, Frontier asks that the Court dismiss Plaintiff's breach of contract claim with prejudice.

### III.    CONCLUSION

For all of the reasons argued above and in recent briefing, Frontier respectfully submits that the Court should deny Plaintiff's Objections in full, adopt Magistrate Judge Starnella's Amended Order and Recommendation, dismiss Plaintiff's Complaint with prejudice, and provide any other relief this Court deems just and proper.

Dated: September 18, 2024                    Respectfully submitted,

                                             /s/ Brian T. Maye
                                             Counsel for Frontier Airlines, Inc.

                                             Brian T. Maye
                                             FITZPATRICK, HUNT & PAGANO, LLP
                                             10 South LaSalle Street, Suite 3400
                                             Chicago, IL 60603
                                             Telephone: 312-728-4905
                                             brian.maye@fitzhunt.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2024, I caused the foregoing to be electronically filed with the United States District Court for the District of Colorado using the CM/ECF system.

/s/  Brian T. Maye

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 23-cv-01875-GPG-KAS

KUSMIN L. AMARSINGH,

     Plaintiff,

v.

FRONTIER AIRLINES, INC.,

     Defendant.

---

## ORDER

Before the Court is Plaintiff Kusmin L. Amarsingh's Plaintiff Objections to Magistrate Amended Order and Recommendation (D. 33) regarding the Amended Order and Recommendation of United States Magistrate Judge (Recommendation) (D. 44) by U.S. Magistrate Judge Kathryn A. Starnella. Judge Starnella recommended that Defendant Frontier Airlines Inc.'s Motion to Dismiss with Prejudice (Motion) (D. 22) be granted for failure to state a claim and by denying supplemental jurisdiction over the state law breach of contract claim. Judge Starnella also denied Plaintiff's Request for Court to Consider Supplemental Evidence (Supplement) (D. 28) as moot in light of the recommended dismissal. For the reasons set forth below, the Court ADOPTS the Recommendation, OVERRULES Plaintiff's Objection, and GRANTS in part and DENIES in part the Motion. [1]

---

[1] The Motion's requested dismissal with prejudice, but the Recommendation recommends dismissal without prejudice (D. 33 at 13). Neither party objected to dismissal being without prejudice. This "in part" disposition merely reflects that the Court does not grant all relief sought.

## I.  BACKGROUND

On June 13, 2023, Mrs. Amarsingh had a terrible experience at the airport in Philadelphia with Defendant Frontier Airlines, Inc. (Frontier) (D. 14 at ¶ 1).[2]  She did her part.  Mrs. Amarsingh checked into her flight online, arrived at the departure gate "well before the flight departure time," and waited to board (*id*. at ¶ 3). Three Frontier agents, who appeared (to Plaintiff) to be African American, were at the boarding gate (*id*., ¶¶ 3, 5).  Frontier's "lead agent, Mr. Tyron or Tyrone, announced that the flight was overbooked by approximately 10 passengers" (*id*. at ¶ 3).  Frontier's agent asked for volunteers to receive a refund and rebook their flight, and later offered an additional $800.00 for volunteers—but no one volunteered (*id*.).  Thereafter, the boarding process began by zone number (*id*. at ¶ 4).

Mrs. Amarsingh's zone was called, and she approached the gate agent (*id*. at ¶ 4).  But she had not been assigned a seat, and her boarding pass stated, "Seat: TBD" (*id*.).  The agent told Mrs. Amarsingh that they were only boarding passengers with an assigned seat (*id*. at ¶ 5).  Mrs. Amarsingh requested a seat assignment but was told that she needed to wait until after boarding (*id*.).

Mrs. Amarsingh is a United States Citizen, Army JAG Attorney[3], and "proud veteran" (D. 14 at ¶ 20).  She is also "clearly of Indian descent, and, [her] name on the passenger log, last name 'Amarsingh' is also telling [of her] descent" (*id*. at ¶ 19).  She waited with several other passengers awaiting seat assignments (id.at ¶ 5).  Based on their appearance, Mrs. Amarsingh alleges that the

---

[2] The Court draws the operative facts from the operative Complaint (Complaint) (D. 14), which is the fifth complaint filed in this case, unless otherwise indicated.

[3] She is proceeding *pro se* in this action.

others waiting assignments included a family of 8 to 10 African Americans, most of whom did not have assigned seats (*id.*). She alleges that remaining waiting passengers were six Hispanics; one White male; one African American male;[4] another woman of Indian descent; and a group including an Asian woman, a child, and a White woman (*id.* at ¶¶ 6, 9).

"After all passengers with seat assignments boarded, the Frontier agent asked the party of three, with the child passenger, if one of the adults would give up their seat" (D. 14 at ¶ 7). "The child and the adult Asian female passenger were given seats and allowed to board" (*id.*). "Next, the lead Frontier Agent, Tyron(e) came out from behind the Frontier Counter and approached the party of 8–10 African American passengers and ushered them on board" (*id.*). Ms. Amarsingh alleges that the African American agents' decisions about who to seat on the plane were based on race and discriminatory against non-African Americans (*id.* at ¶ 19).

After these passengers had also boarded, Mrs. Amarsingh approached the agents at the counter to inquire about a seat assignment and explain the issues related to her travel plans (D. 14 at ¶ 8). She had traveled to Philadelphia to "attend a funeral of a close family friend[] and loved one" (*id.* at ¶ 1). She was traveling to St. Louis to "reunite with [her] minor daughter who was missing [her] tremendously, [her] husband, and[ her] recently born Grandson, Jonah[,] who [she] had yet to meet" (*id.* at ¶ 2). Mrs. Amarsingh was connecting through Orlando, and "there were no other alternative / feasible flights for [her] schedule for at least a week" (*id.* at ¶ 8). There were, however, several other flights to Florida that could have accommodated other passengers without connections (D. 28-1). A female agent "kept interrupting" Mrs. Amarsingh by saying "'have as

---

[4] Ms. Amarsingh alleges that this individual may have been "part of [sic] African American" or "possible [sic] mixed race" (D. 14 at ¶¶ 6, 9).

seat'" "about 25 times" before switching to repeating "'I can hear you'" in a "rude and very unprofessional manner" (D. 14 at ¶ 8).

The putative passengers continued to wait without updates until the monitor updated to show that the flight had departed, 30 minutes after it had actually departed (D. 14 at ¶ 10).  Now realizing that they had been bumped from the flight, the disappointed passengers approached the counter, but the agents "became irate and told everyone to sit down in a very loud voice" (*id*.).  The other passenger of Indian descent, who had an international connection, approached the counter to speak with the lead agent, who "began yelling at her in what sounded like a mocking Indian accent and while pointing to each passenger in front of him asked her do you think you are more important than her, him, her . . . etc." (*id*.).

Various and sundry indignities followed in Mrs. Amarsingh's interactions with Frontier, but she does not suggest that they had racial overtones (D. 14 at ¶¶ 10–17).  She never got a refund or other compensation from Frontier (*id*. at ¶ 17).  The following day, Plaintiff booked a flight home to Florida with a different airline rather than attempting to get to St. Louis (*id*. at ¶ 16).  She "lost approximately $1000.00 in flights, but more importantly lost the opportunity to attend [her] grandson's birth announcement and family reunion in his honor" (*id*.).  Mrs. Amarsingh seeks up to "$100 million dollars for fees, expenses, and[] emotional distress caused by Frontier" (*id*. at 10, ¶ 2).

Plaintiff's Complaint raises two causes of action: breach of contract (Claim One) and racial discrimination (Claim Two) (D. 14 at 3; D. 24 at 16 (identifying claims)).  Plaintiff asserts the Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over her racial discrimination claim, and she asserts diversity jurisdiction, pursuant to 28 U.S.C. § 1332, over her breach of

4

contract claim (D. 14 at 2).  Defendant asks the Court to dismiss both claims under Rule 12(b)(6)

because Plaintiff "fails to plead sufficient facts to support either cause of action" (D. 22 at 1).

### III.  LEGAL STANDARDS

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of

Civil Procedure 72(b)(3) requires that the district judge "determine de novo any part of the

magistrate judge's [recommendation] that has been properly objected to."  An objection to a

recommendation is properly made if it is both timely and specific.  *United States v. 2121 East 30th

St.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996).  An objection is sufficiently specific if it "enables the

district judge to focus attention on those issues—factual and legal—that are at the heart of the

parties' dispute."  *Id.* at 1059.  In conducting its review, "[t]he district judge may accept, reject, or

modify the [recommendation]; receive further evidence; or return the matter to the magistrate

judge with instructions."  Fed. R. Civ. P. 72(b)(3).

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true and interpreted in the light most favorable

to the non-moving party, to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Additionally,

the complaint must sufficiently allege facts supporting all the elements necessary to establish an

entitlement to relief under the legal theory proposed; however, a complaint may be dismissed

because it asserts a legal theory not cognizable as a matter of law.  *Forest Guardians v. Forsgren*,

478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo.

2004).  A claim is not plausible on its face "if [the allegations] are so general that they encompass

a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

## IV.  ANALYSIS

Mrs. Amarsingh's Objection raises several issues with the Recommendation that fall into three categories: (1) factual issues with the Recommendation's discussion of the allegations and evidence, (2) issues with its analysis of the racial discrimination claim, and (3) a dispute over the amount in controversy.

### A.  The Court Has Considered the Additional Allegations and Evidence that Mrs. Amarsingh Highlights in Her Objection.

In her Objection, Mrs. Amarsingh notes a number of allegations and supplemental evidence that she contends are not properly reflected in the Recommendation. The Court will consider this evidence.

First, Mrs. Amarsingh notes that the Recommendation did "not mention or refer to" the other "direct flight leaving the same gate less than 30 minutes direct to Orlando that could accommodate the African American passengers and that the next available flight for Plaintiff was a week later" (D. 35 at 6). She also notes her Supplement contained evidence of additional flights

6

to Orlando the same date, some leaving from the same gate (*id*. at 7).  Generally, it would be inappropriate for the Court to consider matters outside the pleadings in relation to a motion under Rule 12(b)(6).  *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  However, the flight schedule is referenced in the Complaint as supporting her claim and Frontier neither disputes its authenticity nor objects to its consideration.  *Id*. (allowing consideration of matters outside the pleadings without converting a motion to dismiss into a motion for summary judgment if the document is (1) referred to in the complaint, (2) central to the plaintiff's claim, and (3) the parties do not dispute its authenticity).  The Court will consider the travel schedule (D. 28-1) in its review of the Objection and has included it in the discussion below.  *See* Fed. R. Civ. P. 72(b)(3).

Second, Mrs. Amarsingh notes that her allegations include her speaking with Frontier's agents about her situation before they selected additional passengers for boarding (D. 35 at 10).  The Court has included this context in the background and will specifically consider it.

Third, Mrs. Amarsingh notes that the Recommendation "failed to state the complete reasons for Plaintiff's travel" because it omitted that she was in Philadelphia for a funeral of a loved one (D. 35 at 11).  She acknowledges that "this fact does not have any bearing on the Defendant's discriminatory intent," she asserts that it is important context and potentially related to her "emotional damages" (*id*.).  The Court has included Mrs. Amarsingh's reasons for travel in the background and will specifically consider them.

### B.  The Additional Allegations and Evidence Do Not Change the Ultimate Conclusion on the Racial Discrimination Claim.

To establish a prima facie case of discrimination under 42 U.S.C. § 1981, a plaintiff must show that: (1) she is a member of a protected class; (2) the defendant intended to discriminate against her on the basis of race; and (3) the discrimination interfered with a protected activity as

defined in § 1981.  *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001).

These prima facie elements "are flexible and are not to be applied rigidly"; however, Plaintiff still

"must show that [D]efendant intentionally discriminated against her." *Id*. at 1102, 1111.  In § 1981

cases, "a plaintiff bears the burden of showing that race was a but-for cause of its injury."  *Comcast*

*Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020).

Judge Starnella found that Mrs. Amarsingh had sufficiently pled the first element by

alleging that she was a member of a protected, namely, a woman of Indian descent (D. 33 at 9).

The Court assumes without deciding that travel on a common carrier such as Frontier pursuant to

a contract of carriage is a protected activity under the third element.  *See Hampton*, 247 F.3d at

1104 (holding a retail transaction could constitute a contract for the purpose of § 1981).  Thus, the

Court is left with only the issue of whether Mrs. Amarsingh has sufficiently alleged intentional

racial discrimination.

Mrs. Amarsingh argues that the Recommendation incorrectly considered whether the

passengers selected were "diverse" rather than whether she was discriminated against as a non-

African American (D. 35 at 4–5).  She also argues that her allegations show that Frontier did not

rely on objective factors in determining who to seat and instead relied on race (*id*. at 8–9).

According to her, such objective factors "typically include considerations such as the severity of

hardship that would be caused by denying boarding to certain passengers, such as those who are

physically handicapped or unaccompanied minors, and the fare class of the ticket purchased" (*id*.

aty 12).  In Mrs. Amarsingh's view, the allegations "demonstrated that if she were African

American, she would have been boarded," thereby satisfying the but-for test of discrimination (*id*.

at 11).  Mrs. Amarsingh strenuously argues that, when her allegations are viewed in the light most

8

favorable to her, it is reasonable to infer that Frontier's agents were motivated by racial animus such that it was a deciding factor and it is unreasonable to infer that there was a race-neutral basis for Frontier's actions (D. 35 at 2–3, 6–9, 12–15). In her view, "Frontier used race as the deciding factor" (*id*. at 12).

There are, no doubt, allegations supporting an inference of racial discrimination, including the Frontier agents treating the non-African Americans[5] so badly, such as by speaking to the other woman of Indian descent "like the character 'Apu' from the Simpsons" (D. 35 at 9). But there are two glaring issues with Mrs. Amarsingh's argument that she does not address: (1) some of the African American passengers traveling in the group already had assigned seats and (2) the other African American man was bumped.

Mrs. Amarsingh acknowledges that the severity of hardship that would be caused by denying boarding to certain passengers is a race-neutral basis for determining who to allow to board the plane. If a group of people is traveling together, it would certainly be a hardship to split them up and force them to travel separately. Mrs. Amarsingh's alleges that some people in the group of African American passengers already had assigned seats and, therefore, were free to board the plane. In order not to split the group and cause them the hardship of traveling separately, Frontier had to give the others assigned seats or take away the assigned seats of passengers who already had them. Nowhere does Mrs. Amarsingh suggest that Frontier could or should take away already assigned seats on an overbooked flight. Regardless, that too would be a hardship. Thus,

---

[5] The bumped African American man spoke with the gate agents and left after letting Mrs. Amarsingh use her phone, before the worst of the yelling started (D. 14 at ¶ 9).

9

Mrs. Amarsingh's allegations show that there was a race-neutral basis dependent on hardship that could support Frontier's actions.

Frontier's agents also boarded two passengers that were not African American—the Asian woman and child.[6]  In doing so, they left an African American man behind.  If the agents were motivated by racial discrimination in favor of African Americans, this action would have been contrary to their motivation.  Indeed, this is fatal to Mrs. Amarsingh's argument that, if she were African American, she would have been allowed to board.  He was African American and was not allowed to board.  Instead, they allowed two non-African American passengers traveling together to remain together, albeit by one from their alleged group voluntarily agreeing to remain behind.  If race were truly the deciding factor, Frontier's agents would have seated the African American.  Instead, they bumped him.

Thus, Mrs. Amarsingh's argument that it is unreasonable to infer that Frontier had a non-discriminatory reason for its actions and argument that Frontier did not use any permissible criteria for seating passengers on the overbooked flight is belied by her own allegations.  *See Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1036 (D. Ariz. 2021), *aff'd*, No. 21-15326, 2022 WL 474170 (9th Cir. Feb. 16, 2022) (dismissing complaint for failure to state racial discrimination claim where the "reasonable inference to be drawn from these allegations is that Defendants were motivated, in part, by their previous encounters with Dr. Sharifi, not his race").  The allegations in the

---

[6] Mrs. Amarsingh notes that, "[i]n this instance, the Defendant did exercise a non-race-based determination because there was an unaccompanied minor," and argues that it was therefore not relevant (D. 35).  This argument is based on an apparent misunderstanding.  An "unaccompanied minor" is a young child traveling without a legal guardian or adult.  *See, e.g., When Kids Fly Alone*, U.S. Dept. of Transportation, https://www.transportation.gov/sites/dot.gov/files/docs/Kids_Fly_Alone.pdf.  The specific age categories vary by airline.  *Id*.

Complaint show that the flight was overbooked, and it is plain from the alleged circumstances that there were legitimate permissible criteria for the selection of passengers allowed to board. Frontier's agents kept groups together to the extent possible and, in doing so, left an African American off the plane contrary to Mrs. Amarsingh's assertion that race was the deciding factor.

Implicit in Mrs. Amarsingh's argument is an assumption based on the facts available to her that her reasons for being on the plane were more compelling than those of the passengers allowed to board. For example, her insistence that the group of African American passengers could have taken a later flight is, in effect if not explicitly, an argument that it would be less of a hardship for them to be left off the plane that it was for her. Perhaps this is true, but none of the authority that Mrs. Amarsingh cites establishes that an airline must take the *most* hard-up passengers or use any particular criteria. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 294 (1976) (discussing regulations requiring "each airline to establish priority rules for boarding passengers" to determine who is bumped from overbooked flights). Under binding precedent that this Court must follow, any criteria that is not but-for discrimination based on race is sufficient to avoid § 1981 liability. *Comcast Corp.,* 589 U.S. at 333.

With this context, the fact that she spoke with the agents about her situation before the additional boarders were selected has relevance only to whether the agents were aware of the potential hardship to her. Consistent with the allegations, the Court has assumed the agents knew. Yet, even if they knew of her substantial hardship, it does not follow that they did not use any legitimate criteria for choosing among the passengers without seat assignments. Most importantly, because Frontier's agents bumped an African American passenger, they *cannot* have used the racial criteria that Mrs. Amarsingh asserts that they used. What Mrs. Amarsingh alleges happened

11

is absolutely awful nonetheless, but her allegations are not sufficient to support a § 1981 racial discrimination claim under governing precedents. Accordingly, the Court will dismiss Mrs. Amarsingh's second claim for racial discrimination.

### C.  The Court Will Also Dismiss the Breach of Contract Claim.

Judge Starnella found that Mrs. Amarsingh had failed to allege sufficient damages to support diversity jurisdiction over her contract claim because emotional damages are not available for such claims in the absence of allegations of willful and wanton breach (D. 33 at 11 (citing *Brossia v. Rick Constr., L.T.D. Liab. Co.*, 81 P.3d 1126, 1131 (Colo. App. 2003)). This limitation applies to the additional emotional impact related to Mrs. Amarsingh traveling for a funeral such that it does not affect the amount in controversy.

Mrs. Amarsingh alleges that she intends to join all known parties to meet the $75,000.00 minimum amount in controversy for diversity jurisdiction and "respectfully requests that the Court grant supplemental jurisdiction or view the Contract Claim as based on federal question jurisdiction" (D. 35 at 14).

Mrs. Amarsingh's intention to join the other bumped passengers does not provide a non-speculative basis to find potential diversity jurisdiction. There is no reason to believe that these passengers would agree to join as plaintiffs.[7] Further, Frontier is a Colorado airline and, if any of the bumped passengers are citizens of Colorado, it would destroy the complete diversity necessary for jurisdiction. *See* 28 U.S.C. § 1332. The Court cannot "view" the contract claim as a federal claim without a federal question. *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003)

---

[7] In particular, there is no reason to believe the bumped African American man would join claims that he was discriminated against based on race.

(discussing exceptions to the well-pleaded complaint rule).  The circumstances under which the Court should exercise supplemental jurisdiction in the absence of a federal question are extremely limited, and such circumstances are not present here.  *See Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998).  Under 28 U.S.C. § 1367(c)(3), when all the "federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  *Id*.  Accordingly, the Court will also dismiss Mrs. Amarsingh's first claim for breach of contract.

## V.  CONCLUSION

Accordingly, this Court ADOPTS Judge Starnella's Recommendation (D. 33) and OVERRULES Plaintiff's Objection consistent with the above analysis.  It is ORDERED that Defendant Frontier Airlines Inc.'s Motion to Dismiss with Prejudice (D. 22) is GRANTED in part and DENIED in part.  It is FURTHER ORDERED that all claims are DISMISSED without prejudice.  It is FURTHER ORDERED that the Clerk of the Court shall close this case.

DATED September 24, 2024.

BY THE COURT:

Gordon P. Gallagher
United States District Judge

13

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher**

Civil Action No. 23-cv-01875-GPG-KAS

KUSMIN L. AMARSINGH,

     Plaintiff,

v.

FRONTIER AIRLINES, INC.,

     Defendant.

---

## DEFAULT JUDGMENT

     In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

     Pursuant to the [D. 38] Order entered by Judge Gordon P. Gallagher on September 24, 2024, it is

     ORDERED that the Amended Recommendation of the United States Magistrate Judge [D. 33] is AFFIRMED and ADOPTED as an Order of the Court. It is

     FURTHER ORDERED that Plaintiff's Objection is OVERRULED. It is

     FURTHER ORDERED that Defendant Frontier Airlines Inc.'s Motion to Dismiss with Prejudice [D. 22] is GRANTED in Part and Denied in Part. It is

     FURTHER ORDERED that all claims are DISMISSED without Prejudice.

This case will be closed.

Dated at Grand Junction, Colorado this 24th day of September 2024.

FOR THE COURT:
JEFFREY P. COLWELL, CLERK

By:   s/D. Clement
      D. Clement
      Deputy Clerk

October 3, 2024

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
8:52 am, Oct 03, 2024
JEFFREY P. COLWELL, CLERK

JUDGE GORDON P. GALLAGHER
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

The Honorable Judge Gallagher:

**SUBJECT: 23-cv-01875-GPG-KAS, REQUEST FOR CLARIFICATION**

I respectfully request that the Court provide the basis for its decision to grant the default judgment against me and overrule my objections to the magistrate judge's order. Without the court's reasons, I cannot tell whether the Court considered my objections de novo or make an informed decision of on whether to refile one or both claims – discrimination and breach of contract.

Under Federal Rule of Civil Procedure 72(b)(3), when a party submits timely objections to a magistrate judge's report and recommendation on a dispositive matter, the district court is required to conduct a de novo review of the contested sections. *Lee v. City of Topeka, 2011 U.S. Dist. LEXIS 101434, Karraker v. Rent-A-Center, Inc., 239 F. Supp. 2d 828*. This means the district court must independently review the objected portions without deferring to the magistrate judge's findings. *United States v. Holu, 2005 U.S. Dist. LEXIS 18598, United States v. Blaine, 2006 U.S. Dist. LEXIS 59296*. The court has the discretion to accept, reject, or modify the magistrate judge's recommendations, but this discretion must be exercised based on a thorough review of the objections raised. *Hines v. Abbott Realty, 1998 U.S. Dist. LEXIS 4442, Automobile Mechanics' Local No. 701 v. Auto Truck, 1996 U.S. Dist. LEXIS 14226*.

Here, the Court overruled my objections, which were timely and specific, but did not state any reasons for its decision which is necessary to determine whether the Court applied a de novo review.

Therefore, I respectfully request that the Court provide the reason for its decision to overrule my objections, and grant a default judgment in this case, particularly on my discrimination claim.

Thank you for your attention to this matter.

Respectfully submitted,

*Linda Amarsingh*

Linda Amarsingh
Plaintiff, Pro Se
lindaamarsingh@gmail.com

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Brian Timothy Maye (brian.maye@fitzhunt.com,
kathleen.argus@fitzhunt.com), District Judge Gordon P Gallagher
(gallagher_chambers@cod.uscourts.gov, gordon_p_gallagher@cod.uscourts.gov), Magistrate
Judge Kathryn A. Starnella (starnella_chambers@cod.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:9894874@cod.uscourts.gov
Subject:Activity in Case 1:23-cv-01875-GPG-KAS Amarsingh v. Frontier Airlines Order on
Motion for Reconsideration
```
Content–Type: text/html

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 10/6/2024 at 10:34 AM MDT and filed on 10/6/2024

| | |
|---|---|
| **Case Name:** | Amarsingh v. Frontier Airlines |
| **Case Number:** | 1:23–cv–01875–GPG–KAS |
| **Filer:** | |

**WARNING: CASE CLOSED on 09/24/2024**

**Document Number:** 41(No document attached)

**Docket Text:**
 **ORDER denying [40] Motion for Reconsideration re [40] MOTION for Reconsideration re [39] Judgment filed by Kusmin L. Amarsingh. The motion for reconsideration or for further explanation is DENIED. The Court set forth its reasoning in the prior Order (D. 38). So Ordered. by District Judge Gordon P Gallagher on 10/6/24. Text Only Entry(Gallagher, Gordon)**


**1:23–cv–01875–GPG–KAS Notice has been electronically mailed to:**

Brian Timothy Maye    brian.maye@fitzhunt.com, kathleen.argus@fitzhunt.com

**1:23–cv–01875–GPG–KAS Notice has been mailed by the filer to:**

Kusmin L. Amarsingh
5 Magnolia Drive
Mary Esther, FL 32569

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
8:21 am, Oct 07, 2024
**JEFFREY P. COLWELL, CLERK**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01875-GPG-KAS

K. Linda Amarsingh,

        Plaintiff(s),

v.                                                         **NOTICE OF APPEAL**

Frontier Airlines Inc.,

        Defendant(s).

---

**NOTICE OF APPEAL FROM FINAL JUDGMENT**

---

**COMES NOW**, Plaintiff K. Linda Amarsingh, appearing pro se, appeals to the United States

district Court of Appeals for the Tenth Circuit from the final judgment entered on <u>24 September

2024</u>.

*K. Linda Amarsingh*
K. LINDA AMARSINGH
Plaintiff, Pro Se
lindaamarsingh@gmail.com
(862) 201-1305

*Rev. 12/2021*

115

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**OFFICE OF THE CLERK**

Alfred A. Arraj
United States Courthouse
901 19th Street
Denver, Colorado 80294
www.cod.uscourts.gov

Jeffrey P. Colwell
*Clerk*

Phone: (303) 844-3433

Date: 10/8/2024

☒ Pro Se    ☐ Retained    ☐ CJA    ☐ FPD    USA or other
☐ Federal Agency
(Appeal Fee Exempt)

Case No: 23-cv-01875-GPG-KAS    ☐ Amended Notice of Appeal
☐ Other pending appeals
Date Filed: 10/7/2024    ☐ Transferred Successive
§2254 or §2255
Appellant: Kusmin L. Amarsingh    ☐ Supplemental Record

Pro Se Appellant:
☐ IFP forms mailed/given    ☐ Motion IFP pending    ☐ Appeal fee paid
☐ IFP denied    ☒ Appeal fee not paid

Retained Counsel:
☐ Appeal fee paid    ☐ Appeal fee not paid    ☐ Motion IFP filed

The Preliminary Record on Appeal is hereby transmitted to the Tenth Circuit Court of Appeals.  Please refer to the forms, procedures, and requirements for ordering transcripts, preparing docketing statements and briefs, and designations of the record that are found on the Tenth Circuit's website, www.ca10.uscourts.gov.

If not already completed, either an appeal fee payment for filing this case or filing of a motion to proceed *in forma pauperis* will be made to this District Court.

The transcript order form must be filed in the District Court as well as the Court of Appeals within 14 days after the notice of appeal was filed with the District Court.

If you have questions, please contact this office.

Sincerely,

JEFFREY P. COLWELL, CLERK

by:  s/ S. Phillips
Deputy Clerk

cc:    Clerk of the Court, Tenth Circuit Court of Appeals

Rev. 8/17/2017

ALLMTN,APPEAL,JD1,MAGR,NP ProSe,TERMED

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: <u>1:23–cv–01875–GPG–KAS</u>

| | |
|---|---|
| Amarsingh v. Frontier Airlines | Date Filed: 07/24/2023 |
| Assigned to: District Judge Gordon P Gallagher | Date Terminated: 09/24/2024 |
| Referred to: Magistrate Judge Kathryn A. Starnella | Jury Demand: Plaintiff |
| Demand: $115,000,000 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **Kusmin L. Amarsingh** | represented by | **Kusmin L. Amarsingh** |
| | | 5 Magnolia Drive |
| | | Mary Esther, FL 32569 |
| | | 862–201–1305 |
| | | PRO SE |

V.

**Defendant**

| | | |
|---|---|---|
| **Frontier Airlines, Inc.** | represented by | **Brian Timothy Maye** |
| | | Fitzpatrick Hunt & Pagano LLP |
| | | 10 South LaSalle Street |
| | | Suite 3400 |
| | | Chicago, IL 60603 |
| | | 312–728–4905 |
| | | Email: brian.maye@fitzhunt.com |
| | | *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 07/24/2023 | 1 | COMPLAINT against Frontier Airlines, filed by Kusmin L. Amarsingh. (Attachments: # 1 Exhibit) (blaws) (Entered: 07/25/2023) |
| 07/24/2023 | 2 | AMENDED COMPLAINT against Frontier Airlines, filed by Kusmin L. Amarsingh. (Attachments: # 1 Exhibit) (blaws) (Entered: 07/25/2023) |
| 07/24/2023 | 3 | Case assigned to Magistrate Judge Kristen L. Mix. Text Only Entry. (blaws) (Entered: 07/25/2023) |
| 07/26/2023 | 4 | ORDER DIRECTING PLAINTIFF TO CURE DEFICIENCIES. If Plaintiff fails to cure the designated deficiencies **within thirty (30) days from the date of this order**, the action will be dismissed without further notice. The dismissal shall be without prejudice. By Magistrate Judge Kristen L. Mix on 7/26/2023. (jtorr, ) (Entered: 07/26/2023) |
| 07/28/2023 | 5 | NOTICE of Change of Address/Contact Information by Plaintiff Kusmin L. Amarsingh. (jtorr, ) (Entered: 07/28/2023) |

| 07/28/2023 | 6 | CIVIL COVER SHEET by Plaintiff Kusmin L. Amarsingh. (jtorr, ) (Entered: 07/28/2023) |
|---|---|---|
| 07/31/2023 | 7 | REASSIGNING MAGISTRATE JUDGE. Due to the retirement of Magistrate Judge Kristen L. Mix, and with the permission of Chief Judge Brimmer pursuant to D.C. Colo. L. Civ. R. 40.1(a), this action is reassigned to Magistrate Judge Susan B. Prose. All future pleadings should be designated as 23−cv−01875−SBP. (Text only entry) (agarc, ) (Entered: 07/31/2023) |
| 08/07/2023 | 9 | Filing fee: $ 402.00, receipt number 107801. (blaws) (Entered: 08/08/2023) |
| 08/08/2023 | 8 | SECOND AMENDED COMPLAINT against Frontier Airlines, filed by Kusmin L. Amarsingh. (Attachments: # 1 Statement of Claims, # 2 Request for Relief)(cmadr, ) (Entered: 08/08/2023) |
| 08/09/2023 | 10 | MINUTE ORDER. Plaintiff's 8 second amended Complaint, filed August 8, 2023, is not signed. Pursuant to Rule 11(a) of the Federal Rules of Civil Procedure, "[e]very pleading, written motion, and other paper must be signed" and "[t]he court must strike an unsigned paper unless the omission is promptly corrected after being called to the... party's attention." Fed. R. Civ. P. 11(a). Plaintiff is directed to cure this deficiency on or before **September 1, 2023**, by submitting on the proper form an amended pleading that is signed. By Magistrate Judge Susan B. Prose on 8/9/2023. (jtorr, ) (Entered: 08/09/2023) |
| 08/10/2023 | 11 | AMENDED COMPLAINT against Frontier Airlines, Inc., filed by Kusmin L. Amarsingh.(jtorr, ) (Entered: 08/10/2023) |
| 08/14/2023 | 12 | MINUTE ORDER re: 11 Amended Complaint. The amended pleading does not include a Statement of Claims or Request for Relief. Although Plaintiff indicates a Statement of Claims and Request for Relief are attached, there are no attachments. Plaintiff is directed to cure this deficiency on or before **September 1, 2023**, by submitting on the proper form an amended pleading that is signed and that includes a statement of the claims she is asserting as well as a request for relief. By Magistrate Judge Susan B. Prose on 8/14/2023. (jtorr, ) (Entered: 08/14/2023) |
| 08/14/2023 | 13 | AMENDED COMPLAINT against Frontier Airlines, Inc., filed by Kusmin L. Amarsingh. (Attachments: # 1 Statement of Claims, # 2 Request for Relief)(jtorr, ) (Entered: 08/16/2023) |
| 08/14/2023 | 14 | AMENDED COMPLAINT against Frontier Airlines, Inc., filed by Kusmin L. Amarsingh.(jtorr, ) (Entered: 08/16/2023) |
| 08/17/2023 | 15 | ORDER DRAWING CASE by Magistrate Judge Susan B. Prose on 8/17/2023. This case is randomly reassigned to District Judge Gordon P. Gallagher and drawn to Magistrate Judge Kathryn A. Starnella for all further proceedings. All future pleadings should be designated as **23−cv−01875−GPG**. (jtorr, ) (Entered: 08/17/2023) |
| 08/17/2023 | 16 | Magistrate Judge consent form issued pursuant to 28 U.S.C. 636(c). (jtorr, ) (Entered: 08/17/2023) |
| 08/17/2023 | 17 | ORDER REFERRING CASE to Magistrate Judge Kathryn A. Starnella. Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b), this case is referred to the assigned United States Magistrate Judge to (1) convene a scheduling conference under Fed. R. Civ. P. 16(b) and enter a scheduling order meeting the requirements of D.C.COLO.LCivR 16.2, (2) conduct such status conferences and issue such orders necessary for compliance with the scheduling order, including |

| | | amendments or modifications of the scheduling order upon a showing of good cause, (3) hear and determine pretrial matters, including discovery and other specifically–referred motions, and (4) conduct hearings, including evidentiary hearings, and submit proposed findings of fact and recommendations for rulings on dispositive motions. Court sponsored alternative dispute resolution is governed by D.C.COLO.LCivR 16.6. On the recommendation or informal request of the magistrate judge or on the request of the parties by motion, this court may direct the parties to engage in an early neutral evaluation, a settlement conference, or another alternative dispute resolution proceeding. By District Judge Gordon P Gallagher on 8/17/2023. Text Only Entry (schap, ) (Entered: 08/17/2023) |
|---|---|---|
| 08/25/2023 | 18 | AFFIDAVIT OF SERVICE by Kusmin L. Amarsingh. Frontier Airlines, Inc. served on 8/21/2023, answer due 9/11/2023. (schap, ) (Entered: 08/28/2023) |
| 08/30/2023 | 19 | SUMMONS issued by Clerk. (schap, ) (Entered: 08/30/2023) |
| 09/07/2023 | 20 | NOTICE of Entry of Appearance by Brian Timothy Maye on behalf of Frontier Airlines, Inc.Attorney Brian Timothy Maye added to party Frontier Airlines, Inc.(pty:dft) (Maye, Brian) (Entered: 09/07/2023) |
| 09/07/2023 | 21 | WAIVER OF SERVICE Returned Executed by Frontier Airlines, Inc.. Frontier Airlines, Inc. waiver sent on 9/4/2023, answer due 11/3/2023. (Maye, Brian) (Entered: 09/07/2023) |
| 11/03/2023 | 22 | MOTION to Dismiss by Defendant Frontier Airlines, Inc.. (Attachments: # 1 Exhibit)(Maye, Brian) (Entered: 11/03/2023) |
| 11/03/2023 | 23 | CORPORATE DISCLOSURE STATEMENT. (Maye, Brian) (Entered: 11/03/2023) |
| 11/13/2023 | 24 | RESPONSE to 22 MOTION to Dismiss filed by Plaintiff Kusmin L. Amarsingh. (Attachments: # 1 Exhibit)(schap, ) (Entered: 11/15/2023) |
| 11/29/2023 | 25 | REPLY to Response to 22 MOTION to Dismiss filed by Defendant Frontier Airlines, Inc.. (Maye, Brian) (Entered: 11/29/2023) |
| 12/01/2023 | 26 | MOTION for Appointment of Counsel, by Plaintiff Kusmin L. Amarsingh. (angar, ) (Entered: 12/01/2023) |
| 12/01/2023 | 27 | MEMORANDUM regarding 22 MOTION to Dismiss filed by Frontier Airlines, Inc. AND 26 MOTION to Appoint Counsel filed by Kusmin L. Amarsingh. Motions referred to Magistrate Judge Kathryn A. Starnella, by District Judge Gordon P Gallagher on 12/1/2023. Text Only Entry (angar, ) (Entered: 12/01/2023) |
| 12/06/2023 | 28 | Request for Court to Consider Supplemental Evidence by Plaintiff Kusmin L. Amarsingh. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(schap, ) (Entered: 12/07/2023) |
| 12/08/2023 | 29 | MEMORANDUM regarding 28 MOTION for Order to filed by Kusmin L. Amarsingh. Motion referred to Magistrate Judge Kathryn A. Starnella, by District Judge Gordon P Gallagher on 12/8/2023. Text Only Entry (schap, ) (Entered: 12/08/2023) |
| 12/19/2023 | 30 | ORDER Denying 26 Motion to Appoint Counsel by Magistrate Judge Kathryn A. Starnella on 19 December 2023.(cmadr, ) (Entered: 12/19/2023) |
| 08/20/2024 | 31 | ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE by Magistrate Judge Kathryn A. Starnella on 20 August 2024. IT IS HEREBY |

| | | |
|---|---|---|
| | | ORDERED that the Motion to Dismiss 22 be GRANTED and the Complaint 14 be DISMISSED WITHOUT PREJUDICE. IT IS FURTHER ORDERED that Plaintiff's Request for the Court to Consider Supplemental Evidence 28 is DENIED AS MOOT. (cmadr, ) (Entered: 08/20/2024) |
| 08/20/2024 | 32 | ORDER by Magistrate Judge Kathryn A. Starnella on 20 August 2024. The Motion to Supplement 28 is DENIED AS MOOT. Text Only Entry. (Entered pursuant to ECF 31 )(cmadr, ) (Entered: 08/20/2024) |
| 08/20/2024 | 33 | AMENDED ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE by Magistrate Judge Kathryn A. Starnella on 20 August 2024. IT IS HEREBY RECOMMENDED that the Motion to Dismiss 22 be GRANTED and the Complaint 14 be DISMISSED WITHOUT PREJUDICE. IT IS ORDERED that Plaintiff's Request for the Court to Consider Supplemental Evidence 28 is DENIED AS MOOT. (cmadr, ) (Entered: 08/20/2024) |
| 08/21/2024 | 34 | ORDER finding as moot 31 Report and Recommendations in light of the 33 Amended Order and Recommendation. By District Judge Gordon P Gallagher on 8/21/2024. Text Only Entry(schap, ) (Entered: 08/21/2024) |
| 09/03/2024 | 35 | OBJECTION to 33 Report and Recommendations filed by Plaintiff Kusmin L. Amarsingh. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(schap, ) (Entered: 09/04/2024) |
| 09/04/2024 | 36 | OBJECTION to 33 Report and Recommendations filed by Plaintiff Kusmin L. Amarsingh. (schap, ) (Entered: 09/04/2024) |
| 09/18/2024 | 37 | RESPONSE to Objection to 33 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE re 14 Amended Complaint filed by Kusmin L. Amarsingh, 22 MOTION to Dismiss filed by Frontier Airlines, Inc. filed by Defendant Frontier Airlines, Inc.. (Maye, Brian) (Entered: 09/18/2024) |
| 09/24/2024 | 38 | ORDER adopting Report and Recommendations re 33 Report and Recommendations and granting in part and denying in part 22 Motion to Dismiss by District Judge Gordon P Gallagher on 09/24/2024.(dclem) (Entered: 09/24/2024) |
| 09/24/2024 | 39 | FINAL JUDGMENT in favor of Frontier Airlines, Inc. and against Kusmin L. Amarsingh. Entered by the Clerk on 09/24/2024. (dclem) (Entered: 09/24/2024) |
| 10/03/2024 | 40 | MOTION for Reconsideration re 39 Judgment by Plaintiff Kusmin L. Amarsingh. (sphil, ) (Entered: 10/03/2024) |
| 10/06/2024 | 41 | ORDER denying 40 Motion for Reconsideration re 40 MOTION for Reconsideration re 39 Judgment filed by Kusmin L. Amarsingh. The motion for reconsideration or for further explanation is DENIED. The Court set forth its reasoning in the prior Order (D. 38). So Ordered. by District Judge Gordon P Gallagher on 10/6/24. Text Only Entry(Gallagher, Gordon) (Entered: 10/06/2024) |
| 10/07/2024 | 42 | NOTICE OF APPEAL as to 39 Judgment, 38 Order on Motion to Dismiss, Order on Report and Recommendations by Plaintiff Kusmin L. Amarsingh. (sphil, ) (Entered: 10/07/2024) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 23-cv-01875-GPG-KAS

KUSMIN L. AMARSINGH,

     Plaintiff,

v.

FRONTIER AIRLINES, INC.,

     Defendant.

---

## ORDER

---

     Before the Court is Plaintiff Kusmin L. Amarsingh's Plaintiff Objections to Magistrate Amended Order and Recommendation (D. 33) regarding the Amended Order and Recommendation of United States Magistrate Judge (Recommendation) (D. 44) by U.S. Magistrate Judge Kathryn A. Starnella. Judge Starnella recommended that Defendant Frontier Airlines Inc.'s Motion to Dismiss with Prejudice (Motion) (D. 22) be granted for failure to state a claim and by denying supplemental jurisdiction over the state law breach of contract claim. Judge Starnella also denied Plaintiff's Request for Court to Consider Supplemental Evidence (Supplement) (D. 28) as moot in light of the recommended dismissal. For the reasons set forth below, the Court ADOPTS the Recommendation, OVERRULES Plaintiff's Objection, and GRANTS in part and DENIES in part the Motion. [1]

---

[1] The Motion's requested dismissal with prejudice, but the Recommendation recommends dismissal without prejudice (D. 33 at 13). Neither party objected to dismissal being without prejudice. This "in part" disposition merely reflects that the Court does not grant all relief sought.

# I. BACKGROUND

On June 13, 2023, Mrs. Amarsingh had a terrible experience at the airport in Philadelphia with Defendant Frontier Airlines, Inc. (Frontier) (D. 14 at ¶ 1).[2]  She did her part.  Mrs. Amarsingh checked into her flight online, arrived at the departure gate "well before the flight departure time," and waited to board (*id*. at ¶ 3).  Three Frontier agents, who appeared (to Plaintiff) to be African American, were at the boarding gate (*id*., ¶¶ 3, 5).  Frontier's "lead agent, Mr. Tyron or Tyrone, announced that the flight was overbooked by approximately 10 passengers" (*id*. at ¶ 3).  Frontier's agent asked for volunteers to receive a refund and rebook their flight, and later offered an additional $800.00 for volunteers—but no one volunteered (*id*.).  Thereafter, the boarding process began by zone number (*id*. at ¶ 4).

Mrs. Amarsingh's zone was called, and she approached the gate agent (*id*. at ¶ 4).  But she had not been assigned a seat, and her boarding pass stated, "Seat: TBD" (*id*.).  The agent told Mrs. Amarsingh that they were only boarding passengers with an assigned seat (*id*. at ¶ 5).  Mrs. Amarsingh requested a seat assignment but was told that she needed to wait until after boarding (*id*.).

Mrs. Amarsingh is a United States Citizen, Army JAG Attorney[3], and "proud veteran" (D. 14 at ¶ 20).  She is also "clearly of Indian descent, and, [her] name on the passenger log, last name 'Amarsingh' is also telling [of her] descent" (*id*. at ¶ 19).  She waited with several other passengers awaiting seat assignments (id.at ¶ 5).  Based on their appearance, Mrs. Amarsingh alleges that the

---

[2] The Court draws the operative facts from the operative Complaint (Complaint) (D. 14), which is the fifth complaint filed in this case, unless otherwise indicated.

[3] She is proceeding *pro se* in this action.

others waiting assignments included a family of 8 to 10 African Americans, most of whom did not have assigned seats (*id*.). She alleges that remaining waiting passengers were six Hispanics; one White male; one African American male;[4] another woman of Indian descent; and a group including an Asian woman, a child, and a White woman (*id*. at ¶¶ 6, 9).

"After all passengers with seat assignments boarded, the Frontier agent asked the party of three, with the child passenger, if one of the adults would give up their seat" (D. 14 at ¶ 7). "The child and the adult Asian female passenger were given seats and allowed to board" (*id*.). "Next, the lead Frontier Agent, Tyron(e) came out from behind the Frontier Counter and approached the party of 8–10 African American passengers and ushered them on board" (*id*.). Ms. Amarsingh alleges that the African American agents' decisions about who to seat on the plane were based on race and discriminatory against non-African Americans (*id*. at ¶ 19).

After these passengers had also boarded, Mrs. Amarsingh approached the agents at the counter to inquire about a seat assignment and explain the issues related to her travel plans (D. 14 at ¶ 8). She had traveled to Philadelphia to "attend a funeral of a close family friend[] and loved one" (*id*. at ¶ 1). She was traveling to St. Louis to "reunite with [her] minor daughter who was missing [her] tremendously, [her] husband, and[ her] recently born Grandson, Jonah[,] who [she] had yet to meet" (*id*. at ¶ 2). Mrs. Amarsingh was connecting through Orlando, and "there were no other alternative / feasible flights for [her] schedule for at least a week" (*id*. at ¶ 8). There were, however, several other flights to Florida that could have accommodated other passengers without connections (D. 28-1). A female agent "kept interrupting" Mrs. Amarsingh by saying "'have as

---

[4] Ms. Amarsingh alleges that this individual may have been "part of [sic] African American" or "possible [sic] mixed race" (D. 14 at ¶¶ 6, 9).

3

seat'" "about 25 times" before switching to repeating "'I can hear you'" in a "rude and very unprofessional manner" (D. 14 at ¶ 8).

The putative passengers continued to wait without updates until the monitor updated to show that the flight had departed, 30 minutes after it had actually departed (D. 14 at ¶ 10). Now realizing that they had been bumped from the flight, the disappointed passengers approached the counter, but the agents "became irate and told everyone to sit down in a very loud voice" (*id*.). The other passenger of Indian descent, who had an international connection, approached the counter to speak with the lead agent, who "began yelling at her in what sounded like a mocking Indian accent and while pointing to each passenger in front of him asked her do you think you are more important than her, him, her . . . etc." (*id*.).

Various and sundry indignities followed in Mrs. Amarsingh's interactions with Frontier, but she does not suggest that they had racial overtones (D. 14 at ¶¶ 10–17). She never got a refund or other compensation from Frontier (*id*. at ¶ 17). The following day, Plaintiff booked a flight home to Florida with a different airline rather than attempting to get to St. Louis (*id*. at ¶ 16). She "lost approximately $1000.00 in flights, but more importantly lost the opportunity to attend [her] grandson's birth announcement and family reunion in his honor" (*id*.). Mrs. Amarsingh seeks up to "$100 million dollars for fees, expenses, and[] emotional distress caused by Frontier" (*id*. at 10, ¶ 2).

Plaintiff's Complaint raises two causes of action: breach of contract (Claim One) and racial discrimination (Claim Two) (D. 14 at 3; D. 24 at 16 (identifying claims)). Plaintiff asserts the Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over her racial discrimination claim, and she asserts diversity jurisdiction, pursuant to 28 U.S.C. § 1332, over her breach of

contract claim (D. 14 at 2).  Defendant asks the Court to dismiss both claims under Rule 12(b)(6)

because Plaintiff "fails to plead sufficient facts to support either cause of action" (D. 22 at 1).

### III.  LEGAL STANDARDS

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of

Civil Procedure 72(b)(3) requires that the district judge "determine de novo any part of the

magistrate judge's [recommendation] that has been properly objected to."  An objection to a

recommendation is properly made if it is both timely and specific.  *United States v. 2121 East 30th

St.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996).  An objection is sufficiently specific if it "enables the

district judge to focus attention on those issues—factual and legal—that are at the heart of the

parties' dispute."  *Id.* at 1059.  In conducting its review, "[t]he district judge may accept, reject, or

modify the [recommendation]; receive further evidence; or return the matter to the magistrate

judge with instructions."  Fed. R. Civ. P. 72(b)(3).

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true and interpreted in the light most favorable

to the non-moving party, to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Additionally,

the complaint must sufficiently allege facts supporting all the elements necessary to establish an

entitlement to relief under the legal theory proposed; however, a complaint may be dismissed

because it asserts a legal theory not cognizable as a matter of law.  *Forest Guardians v. Forsgren*,

478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo.

2004).  A claim is not plausible on its face "if [the allegations] are so general that they encompass

a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

## IV. ANALYSIS

Mrs. Amarsingh's Objection raises several issues with the Recommendation that fall into three categories: (1) factual issues with the Recommendation's discussion of the allegations and evidence, (2) issues with its analysis of the racial discrimination claim, and (3) a dispute over the amount in controversy.

### A. The Court Has Considered the Additional Allegations and Evidence that Mrs. Amarsingh Highlights in Her Objection.

In her Objection, Mrs. Amarsingh notes a number of allegations and supplemental evidence that she contends are not properly reflected in the Recommendation. The Court will consider this evidence.

First, Mrs. Amarsingh notes that the Recommendation did "not mention or refer to" the other "direct flight leaving the same gate less than 30 minutes direct to Orlando that could accommodate the African American passengers and that the next available flight for Plaintiff was a week later" (D. 35 at 6). She also notes her Supplement contained evidence of additional flights

6

to Orlando the same date, some leaving from the same gate (*id*. at 7). Generally, it would be inappropriate for the Court to consider matters outside the pleadings in relation to a motion under Rule 12(b)(6). *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). However, the flight schedule is referenced in the Complaint as supporting her claim and Frontier neither disputes its authenticity nor objects to its consideration. *Id*. (allowing consideration of matters outside the pleadings without converting a motion to dismiss into a motion for summary judgment if the document is (1) referred to in the complaint, (2) central to the plaintiff's claim, and (3) the parties do not dispute its authenticity). The Court will consider the travel schedule (D. 28-1) in its review of the Objection and has included it in the discussion below. *See* Fed. R. Civ. P. 72(b)(3).

Second, Mrs. Amarsingh notes that her allegations include her speaking with Frontier's agents about her situation before they selected additional passengers for boarding (D. 35 at 10). The Court has included this context in the background and will specifically consider it.

Third, Mrs. Amarsingh notes that the Recommendation "failed to state the complete reasons for Plaintiff's travel" because it omitted that she was in Philadelphia for a funeral of a loved one (D. 35 at 11). She acknowledges that "this fact does not have any bearing on the Defendant's discriminatory intent," she asserts that it is important context and potentially related to her "emotional damages" (*id*.). The Court has included Mrs. Amarsingh's reasons for travel in the background and will specifically consider them.

### B. The Additional Allegations and Evidence Do Not Change the Ultimate Conclusion on the Racial Discrimination Claim.

To establish a prima facie case of discrimination under 42 U.S.C. § 1981, a plaintiff must show that: (1) she is a member of a protected class; (2) the defendant intended to discriminate against her on the basis of race; and (3) the discrimination interfered with a protected activity as

7

defined in § 1981. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001). These prima facie elements "are flexible and are not to be applied rigidly"; however, Plaintiff still "must show that [D]efendant intentionally discriminated against her." *Id*. at 1102, 1111. In § 1981 cases, "a plaintiff bears the burden of showing that race was a but-for cause of its injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020).

Judge Starnella found that Mrs. Amarsingh had sufficiently pled the first element by alleging that she was a member of a protected, namely, a woman of Indian descent (D. 33 at 9). The Court assumes without deciding that travel on a common carrier such as Frontier pursuant to a contract of carriage is a protected activity under the third element. *See Hampton*, 247 F.3d at 1104 (holding a retail transaction could constitute a contract for the purpose of § 1981). Thus, the Court is left with only the issue of whether Mrs. Amarsingh has sufficiently alleged intentional racial discrimination.

Mrs. Amarsingh argues that the Recommendation incorrectly considered whether the passengers selected were "diverse" rather than whether she was discriminated against as a non-African American (D. 35 at 4–5). She also argues that her allegations show that Frontier did not rely on objective factors in determining who to seat and instead relied on race (*id*. at 8–9). According to her, such objective factors "typically include considerations such as the severity of hardship that would be caused by denying boarding to certain passengers, such as those who are physically handicapped or unaccompanied minors, and the fare class of the ticket purchased" (*id*. aty 12). In Mrs. Amarsingh's view, the allegations "demonstrated that if she were African American, she would have been boarded," thereby satisfying the but-for test of discrimination (*id*. at 11). Mrs. Amarsingh strenuously argues that, when her allegations are viewed in the light most

favorable to her, it is reasonable to infer that Frontier's agents were motivated by racial animus such that it was a deciding factor and it is unreasonable to infer that there was a race-neutral basis for Frontier's actions (D. 35 at 2–3, 6–9, 12–15).  In her view, "Frontier used race as the deciding factor" (*id*. at 12).

There are, no doubt, allegations supporting an inference of racial discrimination, including the Frontier agents treating the non-African Americans[5] so badly, such as by speaking to the other woman of Indian descent "like the character 'Apu' from the Simpsons" (D. 35 at 9).  But there are two glaring issues with Mrs. Amarsingh's argument that she does not address: (1) some of the African American passengers traveling in the group already had assigned seats and (2) the other African American man was bumped.

Mrs. Amarsingh acknowledges that the severity of hardship that would be caused by denying boarding to certain passengers is a race-neutral basis for determining who to allow to board the plane.  If a group of people is traveling together, it would certainly be a hardship to split them up and force them to travel separately.  Mrs. Amarsingh's alleges that some people in the group of African American passengers already had assigned seats and, therefore, were free to board the plane.  In order not to split the group and cause them the hardship of traveling separately, Frontier had to give the others assigned seats or take away the assigned seats of passengers who already had them.  Nowhere does Mrs. Amarsingh suggest that Frontier could or should take away already assigned seats on an overbooked flight.  Regardless, that too would be a hardship.  Thus,

---

[5] The bumped African American man spoke with the gate agents and left after letting Mrs. Amarsingh use her phone, before the worst of the yelling started (D. 14 at ¶ 9).

Mrs. Amarsingh's allegations show that there was a race-neutral basis dependent on hardship that could support Frontier's actions.

Frontier's agents also boarded two passengers that were not African American—the Asian woman and child.[6]  In doing so, they left an African American man behind.  If the agents were motivated by racial discrimination in favor of African Americans, this action would have been contrary to their motivation.  Indeed, this is fatal to Mrs. Amarsingh's argument that, if she were African American, she would have been allowed to board.  He was African American and was not allowed to board.  Instead, they allowed two non-African American passengers traveling together to remain together, albeit by one from their alleged group voluntarily agreeing to remain behind.  If race were truly the deciding factor, Frontier's agents would have seated the African American.  Instead, they bumped him.

Thus, Mrs. Amarsingh's argument that it is unreasonable to infer that Frontier had a non-discriminatory reason for its actions and argument that Frontier did not use any permissible criteria for seating passengers on the overbooked flight is belied by her own allegations.  *See Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1036 (D. Ariz. 2021), *aff'd*, No. 21-15326, 2022 WL 474170 (9th Cir. Feb. 16, 2022) (dismissing complaint for failure to state racial discrimination claim where the "reasonable inference to be drawn from these allegations is that Defendants were motivated, in part, by their previous encounters with Dr. Sharifi, not his race").  The allegations in the

---

[6] Mrs. Amarsingh notes that, "[i]n this instance, the Defendant did exercise a non-race-based determination because there was an unaccompanied minor," and argues that it was therefore not relevant (D. 35).  This argument is based on an apparent misunderstanding.  An "unaccompanied minor" is a young child traveling without a legal guardian or adult.  *See, e.g., When Kids Fly Alone*, U.S. Dept. of Transportation, https://www.transportation.gov/sites/dot.gov/files/docs/Kids_Fly_Alone.pdf.  The specific age categories vary by airline.  *Id.*

Complaint show that the flight was overbooked, and it is plain from the alleged circumstances that there were legitimate permissible criteria for the selection of passengers allowed to board. Frontier's agents kept groups together to the extent possible and, in doing so, left an African American off the plane contrary to Mrs. Amarsingh's assertion that race was the deciding factor.

Implicit in Mrs. Amarsingh's argument is an assumption based on the facts available to her that her reasons for being on the plane were more compelling than those of the passengers allowed to board. For example, her insistence that the group of African American passengers could have taken a later flight is, in effect if not explicitly, an argument that it would be less of a hardship for them to be left off the plane that it was for her. Perhaps this is true, but none of the authority that Mrs. Amarsingh cites establishes that an airline must take the *most* hard-up passengers or use any particular criteria. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 294 (1976) (discussing regulations requiring "each airline to establish priority rules for boarding passengers" to determine who is bumped from overbooked flights). Under binding precedent that this Court must follow, any criteria that is not but-for discrimination based on race is sufficient to avoid § 1981 liability. *Comcast Corp.,* 589 U.S. at 333.

With this context, the fact that she spoke with the agents about her situation before the additional boarders were selected has relevance only to whether the agents were aware of the potential hardship to her. Consistent with the allegations, the Court has assumed the agents knew. Yet, even if they knew of her substantial hardship, it does not follow that they did not use any legitimate criteria for choosing among the passengers without seat assignments. Most importantly, because Frontier's agents bumped an African American passenger, they *cannot* have used the racial criteria that Mrs. Amarsingh asserts that they used. What Mrs. Amarsingh alleges happened

11

is absolutely awful nonetheless, but her allegations are not sufficient to support a § 1981 racial discrimination claim under governing precedents. Accordingly, the Court will dismiss Mrs. Amarsingh's second claim for racial discrimination.

### C. The Court Will Also Dismiss the Breach of Contract Claim.

Judge Starnella found that Mrs. Amarsingh had failed to allege sufficient damages to support diversity jurisdiction over her contract claim because emotional damages are not available for such claims in the absence of allegations of willful and wanton breach (D. 33 at 11 (citing *Brossia v. Rick Constr., L.T.D. Liab. Co.*, 81 P.3d 1126, 1131 (Colo. App. 2003)). This limitation applies to the additional emotional impact related to Mrs. Amarsingh traveling for a funeral such that it does not affect the amount in controversy.

Mrs. Amarsingh alleges that she intends to join all known parties to meet the $75,000.00 minimum amount in controversy for diversity jurisdiction and "respectfully requests that the Court grant supplemental jurisdiction or view the Contract Claim as based on federal question jurisdiction" (D. 35 at 14).

Mrs. Amarsingh's intention to join the other bumped passengers does not provide a non-speculative basis to find potential diversity jurisdiction. There is no reason to believe that these passengers would agree to join as plaintiffs.[7] Further, Frontier is a Colorado airline and, if any of the bumped passengers are citizens of Colorado, it would destroy the complete diversity necessary for jurisdiction. *See* 28 U.S.C. § 1332. The Court cannot "view" the contract claim as a federal claim without a federal question. *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003)

---

[7] In particular, there is no reason to believe the bumped African American man would join claims that he was discriminated against based on race.

(discussing exceptions to the well-pleaded complaint rule). The circumstances under which the Court should exercise supplemental jurisdiction in the absence of a federal question are extremely limited, and such circumstances are not present here. *See Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998). Under 28 U.S.C. § 1367(c)(3), when all the "federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Id*. Accordingly, the Court will also dismiss Mrs. Amarsingh's first claim for breach of contract.

## V. CONCLUSION

Accordingly, this Court ADOPTS Judge Starnella's Recommendation (D. 33) and OVERRULES Plaintiff's Objection consistent with the above analysis. It is ORDERED that Defendant Frontier Airlines Inc.'s Motion to Dismiss with Prejudice (D. 22) is GRANTED in part and DENIED in part. It is FURTHER ORDERED that all claims are DISMISSED without prejudice. It is FURTHER ORDERED that the Clerk of the Court shall close this case.


DATED September 24, 2024.

BY THE COURT:

Gordon P. Gallagher
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Gordon P. Gallagher**

Civil Action No. 23-cv-01875-GPG-KAS

KUSMIN L. AMARSINGH,

     Plaintiff,

v.

FRONTIER AIRLINES, INC.,

     Defendant.

---

## DEFAULT JUDGMENT

---

     In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

     Pursuant to the [D. 38] Order entered by Judge Gordon P. Gallagher on September 24, 2024, it is

     ORDERED that the Amended Recommendation of the United States Magistrate Judge [D. 33] is AFFIRMED and ADOPTED as an Order of the Court. It is

     FURTHER ORDERED that Plaintiff's Objection is OVERRULED. It is

     FURTHER ORDERED that Defendant Frontier Airlines Inc.'s Motion to Dismiss with Prejudice [D. 22] is GRANTED in Part and Denied in Part. It is

     FURTHER ORDERED that all claims are DISMISSED without Prejudice.

This case will be closed.

Dated at Grand Junction, Colorado this 24th day of September 2024.

FOR THE COURT:
JEFFREY P. COLWELL, CLERK

By:  s/D. Clement
     D. Clement
     Deputy Clerk

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
8:21 am, Oct 07, 2024
JEFFREY P. COLWELL, CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-01875-GPG-KAS

K. Linda Amarsingh,

      Plaintiff(s),

v.                   **NOTICE OF APPEAL**

Frontier Airlines Inc.,

      Defendant(s).

---

**NOTICE OF APPEAL FROM FINAL JUDGMENT**

---

**COMES NOW**, Plaintiff K. Linda Amarsingh, appearing pro se, appeals to the United States district Court of Appeals for the Tenth Circuit from the final judgment entered on 24 September 2024.

*K. Linda Amarsingh*
K. LINDA AMARSINGH
Plaintiff, Pro Se
lindaamarsingh@gmail.com
(862) 201-1305

*Rev. 12/2021*