## CASE NO. 24-1391

IN THE

UNITED STATES COURT OF APPEALS

FOR THE 10TH CIRCUIT

_____

LINDA AMARSINGH,

Appellant/Appellant,

v.

FRONTIER AIRLINES, INC.

Appellee/Appellee.

_____

ON APPEAL FROM

9TH DISTRICT COURT

_____

**OPENING BRIEF**

**OF THE**

**APPELLANT**

_____

SUBMITTED BY:

Linda Amarsingh

Appellant, Pro Se[1]
862-201-1305
lindaamarsingh@gmail.com

---

[1] Appellant is representing herself pro se but is an attorney with no experience in federal district court, as a result please pardon any slight deviations in the presentation of this brief.

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ......................................................... 3

**JURISDICTIONAL STATEMENT** ................................................. 6

**STATEMENT OF THE CASE** ..................................................... 7

**STATEMENT OF THE FACTS** .................................................... 8

**STATEMENT OF THE ISSUE** ................................................... 11

**STATEMENT REGARDING ORAL ARGUMENT** ......................... 27

**CONCLUSION** ...................................................................... 27

**REQUEST FOR RELIEF** ......................................................... 28

     **CERTIFICATE OF SERVICE** ................................................ 31

**CERTIFICATE OF COMPLIANCE** ............................................ 31

# TABLE OF AUTHORITIES

<u>**Case Law**</u>

1.   <u>Hernandez v. George</u>, 793 F.3d 1093 (10th Cir. 2015).

2.   <u>LaComp v. N.M. State Univ.</u>, 111 F.3d 647 (10th Cir. 1997).

3.   <u>Harris v. City of Santa Fe</u>, 127 F.3d 1172 (10th Cir. 1997).

4.   <u>United States ex rel. A.C. v. B.E. Construction, Inc.</u>, 551 F.3d 1290 (10th Cir. 2008).

5.   <u>Hodge v. KNS Servs., Inc., 380 F.3d 1137</u> (10th Cir. 2004).

6.   <u>Rajaram v. Meta Platforms, Inc.</u>, 105 F.4th 1179 (9th Cir. 2024)

7.   <u>Caldwell v. Colorado Dept. of Corr.</u>, No. 12-cv-02990, 2014 WL 3696071 (D. Colo. July 24, 2014).

8.   <u>Crowe v. McKinney</u>, 400 U.S. 1000 (1971).

9.   <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

10.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

11.  <u>Jenkins v. Blue Cross & Blue Shield of Kansas, Inc.</u>, 538 F.2d 164 (7th Cir. 1976).

12. <u>Dixon v. Smith, No. 5:08-CV-2883</u>, 2010 WL 3820067 (N.D. Ohio Aug. 20, 2010).

**Statutes**

1. 28 U.S.C. § 1331 (Federal Question Jurisdiction).

2. 28 U.S.C. § 1367 (Supplemental Jurisdiction).

3. 42 U.S.C. § 2000d (Civil Rights Act of 1964).

4. Title VII of the Civil Rights Act of 1964: 42 U.S.C. § 2000

5. 42 U.S.C. § 2000e-2(a)

**Media**

1. Facebook Group: *I Hate Frontier Airlines*, Facebook, <u>https://www.facebook.com/groups/ihatefrontierairlines/</u> (last visited Jan. 11, 2025).

2. Forbes Article: Suzanne Rowan Kelleher, Frontier Ranked Worst for Airline Complaints in 2023, *Forbes* (July 9, 2024), <u>https://www.forbes.com/sites/suzannerowankelleher/2024/07/09/frontier-worst-for-airline-complaints-2023/</u>.

3. Senate Report: U.S. Senate, *The Sky's the Limit: The Rise of Junk Fees in American Travel* (Nov. 25, 2024),

https://www.hsgac.senate.gov/wp-

content/uploads/2024.11.25-Majority-Staff-Report-The-Skys-

the-Limit-The-Rise-of-Junk-Fees-in-American-Travel-1.pdf.

4. News Report: Bing News, *Frontier Report: Customers Are
   Shoplifters*, available at
   https://www.bing.com/news/search?q=Frontier+report%2c+c
   ustomers+are+shoplifters%2c+news+report&FORM=HDRSC7
   (last visited Jan. 11, 2025).

## JURISDICTIONAL STATEMENT

This appeal is taken from the trial court's order dismissing the Appellant's case for failure to meet the prima facie burden of proof. The Appellate Court has jurisdiction pursuant to 28 U.S.C. § 1291, as the order represents a final decision of the lower court.

Respectfully submitted:

*Linda Amarsingh*
Appellant, Pro Se
862-201-1305
lindaamarsingh@gmail.com

## STATEMENT OF THE CASE AND FACTS

This appeal arose from the 9TH DISTRICT COURT (Court) dismissing a racial discrimination claim in favor of FRONTIER AIRLINES INC. (RESPONDENT) after MS. LINDA AMARSINGH (APPELLANT), an Indian woman, provided the Court with substantial evidence of intentional acts of racial discrimination[2] including evidence that Respondent mocked her Indian accent in a loud exaggerated manner in a crowded airport, which the Court found was insufficient to refute the Respondent's pretextual purpose for selecting only African American passengers ahead of her, even though she satisfied the published, written, seat-priority policy[3], the flight was the only flight to her destination for 8 days, and there was another flight 30 minutes later that would accommodate the group.'

The Trial Court declined to infer racial discrimination, going so far as to select and misstated facts to support the Respondent's

---

[2] Document (D)35, Objection to Magistrate Report and Recommendation, and Document 37, Response to Objection)

[3] Seat priority: Unaccompanied minors, passengers with confirmed seats, passengers most inconvenienced because of availability of flights, passengers who's ticket cost more, and lastly passengers who checked in first.

pretext, in contravention of the Civil Rights Laws, integrity of the court, and Appellant's due process rights under the 14th Amendment to the United States Constitution.[4]

## STATEMENT OF THE FACTS

This case is about an Airline that used race as a factor in denying the Appellant a seat and the Trial Court allowing it to stand. Appellant traveled to Philadelphia to attend a funeral and then on to St. Louis to celebrate her grandson's birthday party the following day.

The funeral ended early, and she did not have a cell phone, so she decided to get to her gate with plenty of time to spare and get a seat because she did not pay the additional fee for an assigned seat, after she had just paid over $500 for an emergency flight from Florida to Philadelphia to St. Louis.

As soon as Appellant arrived at the gate she spoke to an agent and requested a seat. The agent could not assign a seat at that time, but

---

[4] By dismissing the Appellant's racial discrimination claim which was the basis for federal question jurisdiction the Court will also deny the Appellant to her choice of forum.

assured Appellant that she had to get on the flight because this was the only flight to St. Louis for 8 days.

Her flight was overbooked by 10 passengers; But that should not have been a problem because there was another flight, direct to Orlando 30 minutes later from the same gate. Or so Appellant thought.

While at the gate, the lead agent called the Appellant, Ms. Amarsingh and Ms. Chaudry, the only other Indian passenger on the flight. When they got to the counter, the Agent made an annotation on his roster and walked away. He then approached each African American passenger and retrieved their boarding passes and ushered them onto the jet-bridge for boarding.

During the Boarding process, Ms. Chaudry and Ms. Amarsingh went to the line to remind the agent that they were on the flight to St. Louis and explain the urgency of their travel. The agent turned to the passengers and started mocking Ms. Chaudry's deep Indian accent asking if she thought she was more important than 'him' or 'her' etc. Ms. Chaudry started to cry, and Ms. Amarsingh was also very upset.

Appellant satisfied three of Frontier's written priority seating criteria –there was only 1 flight to St. Louis per week, she paid a lot more for her ticket and had checked in earlier than the selected passengers. The other Indian passenger, Ms. Chaudry, was on an international flight either to or from India. Nonetheless she was connecting in St. Louis.

On the other hand, the selected passengers met none of the priority seating criteria and there were additional flights to Orlando 30 minutes later, and an hour later.

The Appellee claims they made the selection based on their unwritten 'group policy' and there was no intent to discriminate against Appellant's race, and there was no disparate impact because there were many races left behind with her, as well as one white man.

The Trial Court agreed with the Airline and dismissed the Appellant's discrimination claim.

## STATEMENT OF THE ISSUE[5]

Did the Trial Court err by dismissing the racial discrimination claim without fully evaluating all the evidence and reasonable inferences in favor of the Appellant, particularly in light of evidence of overt intentional racial discrimination and substantial proof refuting the Airline's pretextual reasons for the discriminatory effect, in violation of the standards set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)?

## ARGUMENTS[6]

Hostile environment

The Trial Court's failure to acknowledge the Frontier Agent's mockery of Ms. Chaudry's Indian accent constitutes a grave oversight that signifies a hostile environment. Title VI of the Civil Rights Act of 1964

---

[5] Appellant made two claims: a breach of contract claim, citing racial discrimination as the reason for the breach; and a racial discrimination claim under equal protection. For ease of reference the arguments apply to both claims with separate conclusions to the claims.

[6] Appellant respectfully requests the Court's indulgence presenting what may appear a research paper on due process rather than specific arguments. The reason for this will become apparent by comparing the facts and objections to the final judgment.

mandates that **"[n]o person in the United States shall be discriminated against because of race, color, or national origin**."

In addition, the agents were very rude, grossly unprofessional and abusive towards the two Indian passengers, who they targeted by mocking their Indian accent, calling them to counter for no apparent, reason other than to verify their race, knowing there were no flights for 8 days, that there were two later flights for the selected passengers, 35 such flights before the next available flight for Appellant.

Furthermore, Frontier Airlines has a known history of a hostile environment and treating their passengers very poorly. It is well settled that where there is a systemic pattern of a hostile environment, it is usually signs of a larger pattern of other discrimination. In Harris v. Forklift Systems, Inc., the Supreme Court held that a work environment could be considered hostile if it was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the victim's employment'. Harris v. Forklift Systems, Inc." (510 U.S. 17,

1993). Similarly, McDonnell Douglas, made the same observation and urged courts to ensure that they 'evaluate pretextual reasons provided by employers for adverse employment actions, suggesting that courts should be cautious about accepting such reasons when there exists a pattern of discrimination'.

In this case the pattern of discrimination is highlighted in this case, and in the hundreds of social media posts, customer complaints available from multiple forums, and platforms including the 'I Hate Frontier Airlines' Facebook Page, with a whopping 6.5k members[7], Forbes Magazine Recognition as 'Ranking 1st as the Worst' in Customer Care'[8], making national news recently during a Congressional Hearing on Airline Junk Fees, and available in the 'Senate Report 'The sky is the limit on Junk Fees''[9], to name a few.

---

[7] https://www.facebook.com/groups/ihatefrontierairlines/

[8] https://www.forbes.com/sites/suzannerowankelleher/2024/07/09/frontier-worst-for-airline-complaints-2023/

[9] https://www.hsgac.senate.gov/wp-content/uploads/2024.11.25-Majority-Staff-Report-The-Skys-the-Limit-The-Rise-of-Junk-Fees-in-American-Travel-1.pdf

During the hearing, Frontier CEO, Mr. Barry Biffle is quoted[10] as describing 'Customers as shoplifters when they try to avoid paying for carry-on bags.' The report discloses the unscrupulous business practices, the rising costs, and especially distressing is incentivizing their gate agents to harass customers into paying exorbitant fees for carry-on bags, seats, legroom, on top of additional fees for a seat. Agents get paid an average of $10.00 per customer, and Frontier makes $70-100 per bag.

When compared with the actual cost to handle a bag on the average trip, the report details the cost at roughly $28.00 per bag. The policy of this company is to harass, demean, bully, and intimidate honest paying customers. There is no end to the disrespect, and by Mr. Biffle's shoplifting comment, no conscience either, when it comes to raking in the money. The Trial Court's dismissal only serves to perpetuate this pattern of hostility. The situation got to the point that

---

[10]

https://www.bing.com/news/search?q=Frontier+report%2c+customers+are+shoplifters%2c+news+report&FORM=HDRSC7

the Attorney General, Phil Weiser personally urged the Department of Transportation to investigate Frontier Airlines.[11]

With respect, the Trial Court missed the mark. The intent of the Civil Rights protections seeks to protect individuals from prejudice and indignity. In Hernandez v. George, the Tenth Circuit affirmed the viability of claims predicated on a hostile environment, where discrimination was evidenced by both testimonial accounts *and statistical pattern recognition*. To overlook the Agent's conduct is to ignore the clear implications of racial bias, thereby undermining the purpose of civil rights protections. Hernandez v. George, 793 F.3d 1093 (10th Cir. 2015).

## Argument 2: Inevitability of Evidence Consideration

In dismissing the Appellant's claims, the Trial Court blatantly disregarded essential evidence that should have been considered vital to its determination. As set forth in Crowe v. McKinney, a failure to consider all relevant and available evidence can lead to erroneous

---

[11] https://coag.gov/app/uploads/2020/09/Colorado-AG-letter-to-USDOT-re-Frontier-9.1.2020-final.pdf

conclusions that malign the very foundations of justice. <u>Crowe v. McKinney</u>, 400 U.S. 1000 (1971).

It is unusual to possess direct evidence that is relevant, available, and reliable at an early stage of a race discrimination lawsuit. This direct evidence should logically make the judges' job more straightforward by providing clear, unequivocal insights into the discrimination claims because it reduces the complexity of the case by eliminating the need for extensive inferences or assumptions.

This was illustrated in <u>McGriff v. Am. Airlines, Inc</u>., where allegations raised a genuine issue of material fact, having 'Direct evidence streamlines the judicial process by presenting clear facts that support the plaintiff's claims.' <u>McGriff v. Am. Airlines, Inc.</u>, 431 F. Supp. 2d 1145 (N.D. Okla. 2006).

The fact that the Trial Court used its discretion to exclude this evidence represents a significant oversight. It is *'nuts'* because it ignores the very essence of judicial efficiency and fairness. Such oversight undermines the principles of justice by disregarding evidence that could definitively impact the outcome of the case.

The flight schedules, boarding passes, and related documentation offered by the Appellant are not mere extraneous details; rather, they elucidate the nature of the discriminatory practices in question. In Dixon v. Smith, the inability to engage with evidence evidencing racial bias was deemed intolerable, *reinforcing the notion that a fair adjudication cannot arise in the absence of comprehensive factual evaluation.* Dixon v. Smith, N.D. Ohio Aug. 20, 2010.

The Court's categorization of this evidence as "extrinsic" is a troubling misapplication of evidentiary standards that must be rectified to preserve the integrity of the judicial process. Id. As a result, a de novo review is crucial to this case.

**Argument 3: Racial Inference and the Burden of Proof**

The Trial Court erred in its refusal to draw inferences of racial discrimination from the established facts, contrary to the principles articulated in McDonnell Douglas Corp. v. Green.

This case stands as a hallmark in discrimination jurisprudence, declaring that "*reasonable inferences must be drawn when the*

*evidence supports such a conclusion"*. The refusal to acknowledge the evidence provided by the Appellant regarding the agents' motivation not only contravenes McDonnell Douglas but also inhibits the fundamental protections afforded by our civil rights laws. For example, <u>In LaComp v. N.M. State Univ.</u>, the Tenth Circuit specifically focusing on the burden of proof necessary to establish such claims. The court articulated that, *in the context of employment discrimination cases, once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate legitimate, non-discriminatory reasons for the adverse employment action.*

In this case, the Appellant maintains that the agent called her to the counter specifically to confirm her race before commencing the boarding process. When viewed in isolation, this action raises a fundamental question: what legitimate purpose did this serve? The lack of a clear, non-discriminatory motivation for the agent's actions ought to provide ample grounds for the Court to permit the reasonable inference that racial profiling was at play.

The Trial Court's dismissal of this inference disregards the legal framework outlined in <u>LaComp</u>, where the court affirmed the necessity of allowing inferences to be drawn from the evidence when it is reasonable to do so. Without a substantive rationale from the Appellee for the agent's behavior, the Court's failure to consider this inference creates a troubling precedent. It undermines the very essence of the judicial inquiry into possible racial discrimination, effectively shielding pretextual actions from scrutiny.

To deny the Appellant the right to infer racial motive from the agent's behavior presents a dereliction of judicial duty and a misapplication of legal standards. Appellant's claims deserve full examination under the lens of reasonable inference – to demonstrate that the most reasonable inference from the Agent's conduct is that he did call the passengers to the front to verify their race. The Trial Court merely stated that she 'declined to make the inference' which is not the legal standard the Court should have applied. Rather, the standard asks '*whether a reasonable fact-finder, considering these facts, in the light most favorable to the Appellant, could plausibly find the Agent's conduct was to determine the passenger's race*'.

The point is, Respondent did not call any of the other passengers to the desk to ask about their priority seating, destination…or race. He made no remarks, but right after this quick note, walked towards each African American passenger and retrieved their boarding passes, and walked to the jet-bridge. If the reason was 'group travel' why did the Agent only assume 'African Americans' were part of the 'group'. The Court also did not inquire if Appellant would have been seated if she would be seated if she were African American. Discrimination based on race is very rarely every overt. Ironically, here the Agents' conduct was overt, and the Court still allowed them the benefit of a pre-textual race-neutral reason for selecting only African American passengers, and not the Appellant.

To summarize, the Appellant has established a prima facie case of racial discrimination, and the Respondent articulated a race-neutral reason for denying boarding; however, this explanation is undercut by compelling evidence of intentional discrimination. The mocking of the Appellant's accent by airline agents constitutes overt discriminatory behavior, while the reasonable inference that race was checked prior to the boarding decision is supported by the peculiar

circumstances of the case, including the disproportionate boarding of African American passengers. These factors collectively challenge the legitimacy of the Respondent's stated reasons, compelling a closer examination of the intent behind the actions of the airline agents and demonstrating that the Appellant's claims merit further judicial scrutiny.

The dismissal by the Trial Court perpetuates the injustices for which civil rights protections were instituted – *and warrants Appellant's distrust that she could receive a fair hearing at this venue.* <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>LaComp v. N.M. State Univ.</u>, 111 F.3d 647 (10th Cir. 1997).

## **Argument 4: Flawed Timeline and Mischaracterization of Facts**

The determination made by the Trial Court regarding the timeline of events surrounding the Appellant's communication with the agents reflects a troubling mischaracterization that unjustly diminishes her credibility. As articulated in <u>Dixon v. Smith</u>, '*an accurate timeline is crucial in evaluating discrimination claims*', a principle that can hardly be overstated. The assertion that Appellant Amarsingh's claims of

urgency arose only *after* the flight's departure misrepresents the factual timeline and places undue blame on the Appellant.

Thus far, Appellant has highlighted a number of crucial facts and evidence that the Trial Court overlooked. But here, to arrive at this obscurity in the timeline required awareness by the Court of the effect of this obscurity. This selective disregard diminishes justice itself, favoring an impression of the Appellant as a mere antagonist to the airline's purportedly innocuous operations. <u>Dixon</u>, No. 5:08-CV-2883 (2010).

## Argument 5: Selectivity and Unsubstantiated Deference to Respondent

The Trial Court's failure to rigorously evaluate the Respondent's claims has led to an impression of nonchalant 'acceptance' of the airline's justification for its treatment of the Appellant. In <u>Hodge v. KNS Servs.</u>, the court highlighted that 'disparate treatment' was

evidence of racial motives and demanded *earnest examination to preserve civil rights protections*.

The unsubstantiated claim of a 'group priority' policy lacks the kind of scrutiny expected in a case involving strong evidence of intentional racial discrimination that can be proven at trial by calling Ms. Chaudry an eyewitness – on the merits.

Judicial integrity demands severe scrutiny of the evidence presented; a mere trust in the Respondent's unwritten criteria serves only to undermine the equal protection foundation on which our civil laws stand. Hodge v. KNS Servs., Inc., 380 F.3d 1137 (10th Cir. 2004).

**Argument 6: Presence of Racial Dynamics**

The Trial Court's assertion that the presence of a white male passenger negates any possibility of discrimination represents a fundamentally flawed understanding of racial dynamics and discrimination. Rajaram v. Meta Platforms, Inc. underlines that "the existence of individuals from a non-minority group does not inherently dispel claims of racial bias." It is incumbent upon a court to recognize that systemic discrimination, as affirmed in Jenkins v.

Blue Cross & Blue Shield of Kansas, is rooted in patterns that cannot be simply countered by isolated instances of non-minority presence. The characterization as "*token*" representation misrepresents our legal responsibility to combat and rectify racial inequities actively. This narrow approach invites a regressive interpretation of equality under the law, one that has no place in a fair society. Rajaram v. Meta Platforms, Inc., 105 F.4th 1179 (9th Cir. 2024); Jenkins v. Blue Cross & Blue Shield of Kansas, Inc., 538 F.2d 164 (7th Cir. 1976).

**Argument 7: Burdens of Proof and Accountability**

The airline's assertion that discrimination must be directed solely at one racial group to be actionable illustrates a profound misunderstanding of legal principles underpinning claims of discrimination. The precedent established in McDonnell Douglas Corp. v. Green clearly states that patterns of bias, irrespective of their targets, demand rigorous scrutiny. Systemic discrimination, as highlighted in cases like Harris v. City of Santa Fe and Caldwell v. Colorado Dept. of Corr., necessitates that courts evaluate a broader context when assessing claims of racial discrimination. The notion

that disparate treatment towards multiple groups absolves the airline of accountability not only contradicts established jurisprudence but poses a hazardous regression to a bygone era of blatant disregard for civil rights. Accepting such reasoning fails inherently to protect vulnerable individuals from the scourge of discrimination and threatens the progress we have made in achieving racial equity. Harris v. City of Santa Fe, 127 F.3d 1172 (10th Cir. 1997); Caldwell v. Colorado Dept. of Corr., No. 12-cv-02990, 2014 WL 3696071 (D. Colo. July 24, 2014).

**Argument 8: Necessity for De Novo Review**

Given the Magistrate's failure to articulate coherent findings on the objections presented, this Court is compelled to undertake a de novo review of the prior proceedings. In McGriff v. Am. Airlines, Inc., the necessity of thorough engagement with all contested issues was deemed essential for a fair and just resolution. Something is out of alignment with what is expected with this much reliable evidence of discrimination, and the Trial Court turns a seemingly blind eye to it. Most facts were not addressed at all, much less viewed in a favorable

light for the Appellant. Under these facts and the treatment by the Trial Court, this Court must not hesitate to engage with the record fully. There are as many judicial errors as there are facts to support the Appellant's claims. A de novo review is not merely advisable but necessary to ensure the Appellant's rights are affirmed and protected, reaffirming our commitment to the principles of fairness and equality embedded within our legal system. McGriff v. Am. Airlines, Inc., 431 F. Supp. 2d 1145 (N.D. Tex. 2006).

In sum, the Appellant's allegations merit serious consideration amid the various arguments presented. The Trial Court's failure to appreciate and weigh critical evidence, to adopt consistent judicial standards, and its reliance on unsubstantiated claims from the Respondent constitute not only errors in judgment but also an affront to the principles of fairness and justice deeply embedded in our legal fabric. This Court must recognize these failures and ensure that the Appellant's rights are safeguarded through a thorough reevaluation of the record.

26 of 29

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant respectfully requests oral argument to elucidate further the key issues and errors in the trial court's rationale. Given the complexities surrounding the allegations of discrimination and the implications of the findings, oral argument will provide an opportunity to clarify the case's significance and the necessity of a fair judicial review.

## CONCLUSION

For the reasons outlined, the Appellant respectfully requests that the Court reverse the dismissal of her race discrimination claim against Frontier Airlines and grant summary judgment in her favor. The evidence presented demonstrates intentional racial discrimination and a failure to adhere to established legal standards. A thorough re-evaluation is essential to uphold the principles of fairness and justice inherent in our legal system. Thank you for your consideration.

## REQUEST FOR RELIEF

The Appellant respectfully request for the Court to reverse the dismissal of her race discrimination claim against Frontier Airlines, Inc. and to grant summary judgment in her favor based on the following reasons:

1. **Misapplication of Legal Standards**: The Trial Court failed to apply the necessary legal standards in evaluating the Appellant's claims of intentional racial discrimination. The mocking of Ms. Chaudry's Indian accent by a Frontier agent serves as compelling evidence of bias, indicating a significant likelihood of racial profiling when only specific passengers were called to the counter for verification.

2. **Failure to Consider Established Policies**: The Trial Court neglected to consider Frontier Airlines' own priority seating criteria, which was critical in assessing the arbitrariness and potential racial bias in the decision to deny the Appellant boarding. The agent's actions exemplified reliance on visual assessments

rather than established criteria, suggesting discriminatory treatment based on race.

3. **Procedural Irregularities**: The Trial Court's dismissal overlooked essential evidence that is vital for establishing a prima facie case of racial discrimination, thereby undermining the Appellant's burden of proof. A comprehensive examination of all appropriate evidence is necessary to ensure a fair assessment of the claims.

4. **Patterns of Discrimination**: The documented patterns of overbooking and arbitrary boarding practices employed by Frontier Airlines contribute to an environment conducive to racial discrimination, disproportionately affecting marginalized groups like the Appellant.

5. **Systemic Pattern of Discrimination and Hostility**: The airline's prolonged display of hostility and disregard for fair customer service practices creates an industry environment that the Civil Rights Act aims to combat. The egregious behavior displayed in this case, notably the mocking of a passenger's accent, reinforces the Appellant's claims of discrimination.

6. **Pervasive Hostility**: The extensive documentation of Frontier Airlines' poor customer care, supported by various complaints and media coverage, forms a strong basis for the existence of a pervasive hostile environment, as outlined by established case law. This clientele treatment violates civil rights protections and compels the need for judicial intervention.

7. **Request for Summary Judgment**: Given the compelling evidence presented, the Appellant respectfully requests that the Court grant summary judgment in her favor. The overwhelming documentation of discriminatory practices, coupled with the negligence in addressing critical evidence by the Trial Court, make it evident that no genuine issue of material fact exists for trial.

Appellant therefore asks that this Court act consistent with the serious issues raised by these events. Ignoring the allegations of a hostile environment and discriminatory practices not only undermines the dignity of affected individuals but also threatens the integrity of our legal system.

A sound judicial determination in this matter will affirm the commitment to fairness and equality, ensuring that all individuals are treated with respect and protected from prejudice, thereby reinforcing public confidence in our institutions and preventing systemic discrimination from perpetuating in society.

Respectfully submitted:

*K. Linda Amarsingh*
APPELLANT, PRO SE

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2025, I filed a copy of this Brief with the 10th District Court of Appeals on January 8, 2025.

Respectfully submitted:

*K. Linda Amarsingh*
APPELLANT, PRO SE

## CERTIFICATE OF COMPLIANCE

On this day, 10 January 2025, I certify that the total number of pages I am submitting as Appellant's Opening Brief is not more than 30

pages and I certify that I have counted the number of words, and the total is 4,418, which is less than 13,000. I understand that if my Appellant's Opening Brief exceeds 13,000 words, my brief may be stricken and the appeal dismissed.

Respectfully submitted:

*K. Linda Amarsingh*
APPELLANT, PRO SE