Appeal No. 24-1391

# United States Court of Appeals For the Tenth Circuit

LINDA AMARSINGH,                    )
                                    )
    *Plaintiff-Appellant,*           )
                                    )
    *v.*                             )
                                    )
FRONTIER AIRLINES, INC,             )
                                    )
    *Defendant-Appellee.*            )

_____

On Appeal from the United States District Court
for the District of Colorado
Case No. 23-cv-01875-GPG-KAS

_____

**APPELLEE'S BRIEF**

Brian T. Maye
**FITZPATRICK, HUNT & PAGANO LLP**
10 S. LaSalle Street, Suite 3400
Chicago, IL 60603
(312) 728-4901

Thomas Werge
**WERGE & CORBIN LAW GROUP**
1736 Race Street
Denver Colorado, 80206
(303) 586-4900

Oral Argument is not requested.

i

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS…………………………………………...……..ii

TABLE OF AUTHORITIES…………………………………………... iv

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE ISSUES..........................................................................1

STATEMENT OF THE CASE ...........................................................................1

    A. The Parties ...........................................................................................1

    B. Relevant Facts.....................................................................................1

    C. Plaintiff's Complaint .........................................................................3

    D. Motion to Dismiss..............................................................................4

    E. Magistrate Judge's Report and Recommendation ...........................5

    F. The District Court's Order ................................................................5

SUMMARY OF THE ARGUMENT ...................................................................5

ARGUMENT .....................................................................................................6

    A. Standard of Review..............................................................................6

    B. Plaintiff's Appellate Brief Does Not Include References to The Record as Required by Fed. R. App. P. 28(a). ..................................7

    C. The District Court Properly Ruled That Plaintiff Failed to Allege Facts Sufficient for Recovery Under 42 U.S.C. § 1981 ...........................9

    D. Plaintiff's Arguments Insufficiently Challenge the District Court's Order. ...................................................................................................13

        a. "Hostile Environment"..............................................................13

        b. "Inevitability of Evidence Consideration" ...............................14

        c. "Racial Inference and the Burden of Proof" ............................14

d.  "Flawed Timeline and Mischaracterization of Facts"..............................15

e.  "Selectivity and Unsubstantiated Deference to Respondent"..................16

f.  "Presence of Racial Dynamics." ..............................................................17

g.  "Burdens of Proof and Accountability" ...................................................17

h.  "Necessity of *De Novo* Review" ..............................................................18

E.  CONCLUSION..............................................................................................18

CERTIFICATE OF COMPLIANCE……………………………………………...20

ATTACHMENT A -  RULING BY DISTRICT COURT JUDGE

ATTACHMENT B -  JUDGMENT ENTERED BY DISTRICT COURT

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Ashcroft v. Iqbal,*
   556 U.S. 662, 678 (2009) ...............................................................................7

*Comcast Corp. v. National Ass'n of African American Owned Media*,
   589 U.S. 327, 333 (2020) ................................................................. 6, 10, 12

*Dixon v. Smith,*
   20100 U.S. Dist. Lexis 85966 (N.D Ohio 2010).........................................16

*Forest Guardians v. Forsgren,*
   478 F.3d 1149, 1160 (10th Cir. 2007) ..........................................................7

*General Building Contractors Ass'n v. Pennsylvania,*
   458 U.S. 375, 391 (1982) ...............................................................................6

*Haines v. Kerner,*
   408 U.S. 519, 520-21 (1972) .........................................................................8

*Hampton v. Dillard Department Stores, Inc.,*
   247 F.3d 1091, 1102 (10th Cir. 2001) ........................................................10

*Mann v. Boatright,*
   477 F.3d 1140, 1148 n. 8 (10th Cir. 1991) ...................................................9

*McDonnell Douglas Corporation v. Green,*
   411 U.S. 792 (1972).....................................................................................15

*McGriff v. American Airlines, Inc.,*
   431 F.Supp. 2d 1145 (N.D. Okla. 2006) .....................................................14

*Rutila v. Buttigieg,*
   2024 U.S. App. LEXIS 32048, *2 (10th Cir. 2024)..................................7, 18

*Takieh v. Banner Health,*
   515 F.Supp. 1026, 1036 (D.C. Ariz. 2021), *aff'd* 2022 U.S. App. LEXIS
4224 (9th Cir. 2022).....................................................................................12

## Regulations

42 U.S.C. § 1981 ................................................. 1, 4, 5, 6, 9, 10, 12,13, 14, 15, 16

**Pursuant to R. 28.2(C)(3), there are no prior or related appeals. *See* 10th Cir. R. 28.2(C)(3).**

## STATEMENT OF JURISDICTION

This Court has jurisdiction over the present appeal pursuant to 28 U.S.C. 1291, as the order being appealed from is a final decision of the United States District Court for the District of Colorado.

## STATEMENT OF THE ISSUES

Did Plaintiff plead sufficient facts to sustain a claim for intentional racial discrimination under 42 U.S.C. § 1981?

## STATEMENT OF THE CASE

### A.    The Parties

Appellee Frontier Airlines, Inc. ("Frontier") is a Part 121 Air Carrier certified under the Federal Aviation Regulations and a provider of air transportation services. Appellant Linda Amarsingh ("Appellant" or "Plaintiff") alleges that Frontier improperly denied her a seat on an overbooked Frontier flight, claiming specifically that Frontier failed "to provide fair and reasonable transportation to her" and "discriminated against [her] based on [her] race by racial profiling." R 10-1 at p. 61.[1]

### B.    Relevant Facts

In her Complaint filed with the District Court, Plaintiff alleged that on June 13, 2023, she arrived at the "Philadelphia Airport" to catch a Frontier flight to St. Louis, Missouri, with a connecting flight in Orlando, Florida.  R 10-1, at p. 62. After

---

[1] Citations to the Record on Appeal are hereby identified as "R at p.  ."

she arrived at her gate, she was informed that the flight was "overbooked by approximately 10 passengers." R 10-1, at p. 62. A Frontier agent offered potential volunteers "$800 in addition to the flight refund and rebooking," but no passengers, including Plaintiff, accepted the offer. R 10-1, at p. 62.

Plaintiff never paid for a seat assignment, and, therefore, she waited with similarly situated passengers, including members of family of approximately 8-10 African American passengers, to learn whether there were seats available after the initial boarding. While most of the African American family members did not have seat assignments, some did have seat assignments, and they were waiting with their family members without seat assignments. R 10-1 at p. 63. Plaintiff also alleged that "among the people waiting for seat assignments were approximately six passengers who were or appeared to be Hispanic, one male passenger, who was or appeared to be White, and a gentleman who was or appeared to be part of [sic] African American. Additionally, there was an apparent Asian woman traveling with a child, accompanied by a White female." R 10-1, at p. 63.

After the passengers with seat assignments boarded the plane, the Asian woman and child were allowed to board. R 10-1, at p. 63. Next, Plaintiff claims that the family of approximately 8-10 African Americans ("most" of whom did not have assigned seats) was allowed to board. R 10-1, at p. 63. The flight then departed without the remaining people who had no seat assignments. R 10-1, at pp. 64-65.

Plaintiff claims that no African American people were denied boarding, "except the possible mixed-race gentleman." R 10-1, at p. 64. Plaintiff further claims that those who did not board also consisted of "approximately 5 Hispanic / Spanish Speaking [sic] passengers, two of Indian descent, [Plaintiff] being one, and one White male." R 10-1 at p. 64. According to Plaintiff, there were "no other alternative/feasible flights for [her] schedule for at least a week." R 10-1, at p. 64.

A Frontier agent then handed out cards with links to Frontier's refund processing website. R 10-1, at p. 65. Plaintiff claims that she elected not to receive a refund of her ticket, and then booked a flight on American Airlines to her hometown of Destin, Florida the next day. R 10-1, at p. 65. Plaintiff was ultimately told by Frontier that the cost of her flight had been refunded. R 10-1, at p. 65.

## C.    Plaintiff's Complaint

Plaintiff's *pro se* Complaint ostensibly contains two claims. "Claim 1" alleges that Frontier breached its contract with her by failing to provide fair and reasonable transport on an aircraft after she had "substantially performed on said contract." She claims that Frontier "breached their [sic] covenant of good faith and fair dealing, and failed to fulfill reasonable expectation arising out Frontier's failure to refund [her] full ticket prices for unused tickets," and by "failing to accommodate" her more difficult travel plans ahead of "passengers with a direct flight." R 10-1, at p. 61.

"Claim 2" alleges that Frontier discriminated against her based on her race in violation of the Racial Discrimination Act of 1975 (an inapplicable Australian statute). She also alleges that "42 U.S.C. § 1981 of the Airline Deregulation Act[2] (sic)," prohibits any carrier from subjecting any persons in air transportation to discrimination on the basis of race, color, national origin sex or ancestry."  R 10-1, at p. 62.

## D.    Motion to Dismiss

In response to Plaintiff's Complaint, Frontier filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The motion sought dismissal of both the breach of contract claim and the racial discrimination claim. R 10-1, at pp. 70-118.  Relative to this appeal (addressing only Plaintiff's discrimination claim)[3], Frontier argued that (1) Plaintiff could not state a claim for discrimination under 42 U.S.C. § 1981 because Frontier's alleged actions were legitimate and non-discriminatory and did not interfere with any contractual rights, and (2) Plaintiff's citation to the Racial

---

2  42 USC § 1981 derives from Section 1 of the 1866 Civil Rights Act.
3  In its Order addressing Frontier's motion to dismiss, the District Court declined to exercise supplemental jurisdiction, in the absence of a federal question, and dismissed the breach of contract claims without prejudice.  R 10-3, at p 109-110.  Although she suggests that "for ease of reference" her arguments apply to "both claims with separate conclusions to the claims," (R 15, p. 11, n.5) Plaintiff's pro se appeal does not address the propriety of the District Court's basis for dismissing her breach of contract claim, namely the District Court's decision to decline supplemental jurisdiction over the claim. Indeed, Plaintiff's "Statement of The Issue" only addresses her contention that the District Court erred in dismissing the racial discrimination claim.  R 15, at p. 11.  As such, Frontier only addresses the District Court's dismissal of Plaintiff's discrimination claim.

Discrimination Act of 1975 – an Australian statute – had no bearing in the present case.  R 10-1, at pp. 75-118.

**E.      Magistrate Judge's Report and Recommendation**

The Magistrate addressed Plaintiff's second claim that alleged racial discrimination in violation of 42 U.S.C. § 1981, concluding that Plaintiff had failed to plausibly allege intentional or purposeful racial discrimination. As such, the Magistrate recommended that the claim be dismissed for failure to state a claim.  R 10-2, at p. 42.  The Magistrate further recommended that the District Court decline to exercise jurisdiction over Plaintiff's state law breach of contract claim and dismiss it without prejudice.  R 10-1, at p. 44.

**F.      The District Court's Order**

In its Order disposing of the matter (R 10-3, at pp. 98-110), the District Court adopted the Magistrate Judge's Recommendation (R 10-2, at pp. 33-46), granting Frontier's motion to dismiss in part and denying it in part.  The District Court ordered that "all claims are DISMISSED without prejudice" and further ordered the Clerk of the Court to Close the case. R 10-3, at p. 110.

## SUMMARY OF THE ARGUMENTS

A successful claim under 42 U.S.C. § 1981 requires a showing of "purposeful" and intentional discrimination on the basis of race. *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982). In this case, Plaintiff's

claim for racial discrimination fails because she has not pleaded facts showing that Frontier intentionally discriminated against her on the basis of her race, and that the alleged discrimination was the "but-for" cause of the alleged interference with a protected activity. *Comcast Corp. v. National Ass'n of African American Owned Media* 589 U.S. 327, 333 (2020). Although Plaintiff (a woman of Indian descent) alleges that she had been denied boarding on a Frontier flight because she was not African American, her Complaint alleges that an African American man was also denied boarding, and that there were race-neutral reasons for Frontier not to provide her a seat. The District Court properly evaluated Plaintiff's allegations, and in light of the applicable law, did not err in dismissing Plaintiff's discrimination claim brought under 42 U.S.C. § 1981 for failing to state a claim upon which relief could be granted.

## **ARGUMENT**

### A.    **Standard of Review**

Under Rule 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In order to survive a motion, a complaint must contain sufficient facts, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *See e.g. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court will disregard conclusory statements and look only to whether the

remaining factual allegations plausibly suggest that the defendant is liable. *See e.g. Rutila v. Buttigieg*, 2024 U.S. App. LEXIS 32048, *2 (10th Cir. 2024). The complaint must sufficiently state facts supporting all of the elements necessary to establish an entitlement to relief under the legal theory proposed, and a complaint may also be dismissed because it asserts a legal theory not cognizable as a matter of law. *See e.g. Forest Guardians v. Forsgren,* 478 F.3d 1149, 1160 (10th Cir. 2007). The District Court's dismissal under Rule 12(b)(6) is reviewed by the Court of Appeals *de novo. See Rutila*, 2024 U.S. App. LEXIS 32048 at *2.

## B.    Plaintiff's Appellate Brief Does Not Include References to The Record as Required by Fed. R. App. P. 28(a)

Rule 28(a)(6) requires that an appellant's brief contain a "concise statement of the case setting out the facts relevant to the issues submitted for review, with appropriate references to the record."  *See* Fed. R. App. P. 28(a)(6). Rule 28(e), in turn, provides that "references to the parts of the record contained in the appendix filed with the appellant's brief must be to the pages in the appendix."  Plaintiff's "Statement of the Case and Facts" (R 15, at pp. 7-8) and her "Statement of Facts" (R 15, at pp. 7-11) are devoid of any references to the record regarding facts upon which she relies, other than a footnote generally referencing her Objection to the Magistrate's Report and Recommendation (R 10-3, at pp. 75-89).

Further, Rule 28(a)(8) requires that the appellant's argument include the appellant's "contentions and the reasons for them, with citations to the authorities

and the parts of the record on which the appellant relied." Fed. R. App. P. 28(a)(8). Again, Plaintiff's argument includes no citations to the record in support of the factual statements made therein, and there are numerous incorrect citations to case law that she claims supports her position.[4]

In her Order and Recommendation, the Magistrate Judge recognized that the court must generally construe the filings of a *pro se* litigant liberally.  R 10-2, at p. 33, *citing Haines v. Kerner,* 408 U.S. 519, 520-21 (1972). Notwithstanding, the Magistrate also noted that Plaintiff "specifically alleges that she a 'United States Army JAG Attorney.'" R 10-2, at p. 33; *citing* Plaintiff's Complaint, R 10-1, p. 67. Because she is an attorney, she is not entitled to lenient interpretation. R 10-2, at p. 33, *citing Mann v. Boatright*, 477 F.3d 1140, 1148 n. 8 (10th Cir. 1991). As such, Plaintiff's failure to comply with the very clear and unambiguous rules regarding citations to facts and supporting law cannot be ignored. On these grounds alone, this Court should affirm the judgment of the District Court.

---

4  Frontier's counsel was unable to locate several cases cited by Plaintiff by searching for the citation or case name, including *LaComp v. N.M. State University* (cited at R 15, at pp. 18-19 and 21), *Harris v. City of Santa Fe* (cited at R 15, at pp. 24-25), Hodge v. KNS Services  (cited at R 15, at pp. 22-23), *Caldwell v. Colorado Department of Corrections* (cited at R 15, at pp. 24-25), and *Crowe v. McKinney* (cited at R15, at pp. 15-16). Counsel could not find another case cited by Plaintiff in her Table of Authorities -- *United States ex rel. A.C. v B.E. Construction* (cited at R1, at p. 3) -- which she did not even cite in her argument.

**C.     The District Court Properly Ruled That Plaintiff Failed to Allege Facts Sufficient for Recovery Under 42 U.S.C. § 1981**

In her Appellate Brief, Plaintiff presents a mélange of unsupported facts and law, ostensibly targeted at challenging the District Court's dismissal of her racial discrimination claim. Her argument here should be rejected, just as it was by both the Magistrate Judge and the District Judge.  Indeed, Plaintiff's discrimination claim was dismissed because her allegations in the Complaint demonstrate Frontier's legitimate, non-discriminatory basis for declining to board Plaintiff and several other passengers: the flight was overbooked, and Plaintiff and the other passengers did not have assigned seats. Plaintiff presents insufficient basis for reversing the well-reasoned opinion of the District Court.

The District Court recognized that to establish a *prima facie* case of discrimination under 42 U.S.C. § 1981, a plaintiff must show that (1) she is a member of a protected class; (2) the defendant intended to discriminate against her on the basis of race; and (3) the discrimination interfered with a protected activity as defined in Section 1981. R 10-3, pp. 127-128, *citing Hampton v. Dillard Department Stores, Inc.* 247 F.3d 1091, 1102 (10th Cir. 2001). Although the elements are flexible and not to be applied rigidly, Plaintiff still must show that the defendant intentionally discriminated against her. R 10-3, at p. 128; *Hampton*, 247 F.3d at 1102.

The District Court noted that Plaintiff had sufficiently pleaded the first element (*i.e.*, that she was a member of a protected class). R 10-3, at p. 128. The

only element addressed by the District Court, therefore, was whether Plaintiff had sufficiently alleged intentional racial discrimination. R 10-3, at p. 128. The District Court concluded that Plaintiff had <u>not</u> sufficiently alleged intentional racial discrimination.

Without referencing any factual allegations in the Complaint, Plaintiff asserted that it was "reasonable to infer that Frontier's agents were motivated by racial animus,"[5] and it was "unreasonable to infer that there was a race-neutral basis for Frontier's actions." R 10-3, at p. 129. The District Court thoroughly rejected these arguments. Although it recognized that there were allegations in Plaintiff's Complaint that could support an inference that the Frontier agents treated the non-African Americans poorly, the District Court explained that there were "two glaring issues" that Plaintiff did not address: namely that "(1) some of the African American passengers travelling in the group already had assigned seats, and (2) the other African American man was bumped."  R 10-3, at p. 129.

The District Court noted the hardship of splitting up a group of passengers traveling together (the African American group that consisted of some passengers having seat assignments and some without) to force them to travel separately, as well as the fact that at least two of the passengers boarded by Fronter were not African

---

5  We note that Plaintiff incorrectly asserts that she has to allege and prove that Frontier was "motivated by racial animus."  Pursuant to Comcast, Plaintiff must allege and prove that race was the "but-for" cause of the denial of a contract. Comcast, 589 U.S. at 333.

American – an Asian woman and a child. In so doing, Frontier left an African American man behind. The District Court stated that "if the agents were motivated by racial discrimination in favor of African Americans, this action would have been contrary to their motivations." R 10-3, at p. 130. The District Court further noted that the decision to bump an African American was fatal to Plaintiff's argument that "if she were African American, she would have been allowed to board." R 10-3, at p. 130.

The District Court also rejected Plaintiff's argument that it was unreasonable to infer that Frontier had a non-discriminatory reason for its actions. Indeed, Plaintiff's Complaint alleges that the flight was overbooked, and it is "plain from the alleged circumstances that there were legitimate permissible criteria for the selection of passengers allowed to board." R 10-3 at p. 130. Frontier's agents kept groups of passengers together, and left an African American off the plane, contrary to Plaintiff's assertion that race was the deciding factor. R 10-3 at p. 130-131, *citing Takieh v. Banner Health,* 515 F.Supp. 1026, 1036 (D.C. Ariz. 2021), *aff'd* 2022 U.S. App. LEXIS 4224 (9th Cir. 2022)(the court dismissed complaint for failure to state a claim for racial discrimination where the reasonable inference to be drawn from the allegations is that the defendants were motivated by their previous encounters with plaintiff, not his race).

11

The District Court further stated that "implicit in [Plaintiff's] argument is an assumption based on the facts available to her that her reasons for being on the plane were more compelling than those of the passengers allowed to board." R 10-3, at p. 131. According to the District Court, her suggestion that a group of African American passengers could have taken a later flight was "in effect if not explicitly" an argument that it would have been less of a hardship for them to be left off the plane than Plaintiff. *Id.* The District Court concluded that there is no authority that a carrier must "take up the *most* hard-up passengers or use any particular criteria." *Id.* Under the binding precedent that the District Court was required to follow, any criteria or reason that is not "but for discrimination based on race" is sufficient to avoid Section 1981 liability. *Id.*, *citing Comcast Corp. v. National Association of African American-Owned Media*, 589 U.S. 327, 333 (2020). In this case, the reason Plaintiff (and others, including an African American passenger) was not permitted to board was that the flight was overbooked, and she did not have an assigned seat.

In sum, the District Court rejected Plaintiff's discrimination claims because "it is plain ***from the alleged circumstances*** that there were legitimate permissible criteria for the selection of passengers to board." R 10-3, at p. 108 (emphasis added). Frontier kept groups together, and in so doing, left an African American off the plane, contrary to Plaintiff's assertion that race was the deciding factor. R 10-3, at p.

108. Because Plaintiff's own allegations made recovery under Section 1981 impossible, it was proper for the District Court to dismiss the discrimination claim.

## D.    Plaintiff's Arguments Insufficiently Challenge the District Court's Order

The District Court's opinion is well grounded, and fully supports dismissal of Plaintiff's complaint. Further, Plaintiff's appellate brief presents no arguments, or references to the record, that warrant reversal of the District Court's opinion. Frontier nevertheless briefly responds to her conclusory statements and unsupported arguments.

### a.  "Hostile Environment"

Plaintiff argues that Frontier's actions signify a "hostile environment." R 15, at p. 11. She further refers to Frontier's "known history" of "treating their [sic] passengers very poorly" and that where there is a "systemic pattern of hostile environment," the court should "be cautious about accepting" pretextual reasons. R 15, at pp 12-13. Plaintiff also makes a number of allegations regarding "hundreds of social media posts, customer complaints" and "platforms including the 'I Hate Frontier Airlines Facebook Page,' with a whopping 6.5K members." None of this is relevant to the issue of whether she pleaded sufficient facts to prevail on a Section 1981 claim.

### b. "Inevitability of Evidence Consideration"

Plaintiff claims that the District Court "blatantly disregarded essential evidence that should have been considered vital to its determination." R 15, at p. 15. She further suggests that the District Court's discretion to exclude certain evidence was "nuts, because it ignores the very essence of judicial efficiency and fairness." In so arguing, Plaintiff appears to misunderstand the purpose of a motion brought under Rule 12(b)(6), which addresses the sufficiency of her pleadings, and whether her allegations – even when viewed most favorably to her — can sustain a claim for relief.

Moreover, in support of her argument, Plaintiff cites two cases – one of which (*Crowe v. McKinney*) is incorrectly cited. In the other case, *McGriff v. American Airlines, Inc.*, 431 F.Supp. 2d 1145 (N.D. Okla. 2006), the court addressed an employee's motion for summary judgment in a Title VII employment discrimination case. It sheds no light on whether the District Court's opinion regarding Plaintiff's failure to plead facts sufficient to state a *prima facie* case was proper or not.

### c. "Racial Inference and the Burden of Proof"

Plaintiff argues that that the District Court erred in refusing to draw inferences of racial discrimination from the established facts, contrary to the principles articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1972). Plaintiff is under the misimpression that because a case is "landmark" and addresses

discrimination, it somehow has bearing on the present dispute. *McDonnell Douglas* established a burden shifting legal framework for proving employment discrimination under Title VII of the Civil Rights Act. The issue here is whether Plaintiff alleged facts sufficient to state a claim for discrimination under 42 U.S.C. § 1981. The District Court – after reviewing Plaintiff's allegations – determined that the allegations were not sufficient to support a Section 1981 racial discrimination claim under governing precedents. R 10-3, at p. 132.

### d. "Flawed Timeline and Mischaracterization of Facts"

Plaintiff takes issue with the "timeline of events surrounding [her] communications with the agents." She argues that "an accurate timeline is crucial in evaluating discrimination claims," and then suggests that "the assertion that Appellant Amarsingh's claims of urgency only arose after the flight's departure misrepresents the factual timeline and places undue burden on the Appellant." R 15, at pp 21-22. Her failure to cite to relevant portions of the record or the District Court's order makes it impossible for Frontier to respond to this argument in any meaningful way. Further, her citation to *Dixon v. Smith* in support of her argument is incorrect.[6]

---

6 Plaintiff provided a citation for *Dixon* in the Table of Authorities, but not in the body of her argument. The Westlaw citation she included is incorrect; the docket number she provided 5:08-CV-2883, appears correct, but the opinion (located at 2010 U.S. Dist. Lexis 85966) does not address any timing issues, except the requirement that parties file

### e. "Selectivity and Unsubstantiated Deference to Respondent"

Plaintiff suggests that the District Court failed to "rigorously evaluate" Frontier's arguments in its motion to dismiss, leading to an "impression of nonchalant acceptance" of its justification for the treatment of Plaintiff.  R 15, at p. 22. Again, the focus of the District Court's analysis was – as it should be -- on Plaintiff's allegations in her complaint, and whether she pleaded a *prima facie* case of discrimination under Section 1981. Plaintiff's argument that the District Court acted improperly is baseless.

We also note that the one case to which Plaintiff cites in support of her argument, *Hodge v. KNS Servs,* is incorrectly cited, and counsel was unable to otherwise locate it to determine what, if any, guidance it might provide to this Court.

### f. "Presence of Racial Dynamics"

Plaintiff claims that the District Court's "assertion that the presence of a white male passenger negates any possibility of discrimination represents a fundamentally flawed understanding of racial dynamics and discrimination." R 15, at p. 23. In making this argument, Plaintiff fails to cite to the record or the District Court's opinion, so it is unclear to what "assertion" Plaintiff is referring.  That said, the only reference to the presence of a "white male" in the District Court's opinion is a

---

objections to a magistrate judge's report and recommendation within fourteen days of service. See *Dixon v. Smith*, 20100 U.S. Dist. Lexis 85966 (N.D Ohio 2010) at *2.

reference to Plaintiff's allegation that "the remaining waiting passengers were six Hispanic; one White male, one African American male . . . another woman of Indian descent and a group including an Asian woman, a child and a White woman." R 10-3, at p 123. The District Court did not state that the presence of a White male passenger negated the possibility of discrimination. Rather, the District Court stated that Frontier's denial of boarding to an African American passenger was fatal to Plaintiff's argument that "if she were African American, she would have been allowed to board." R 10-3, at p. 130.

### g. "Burdens of Proof and Accountability"

In this argument, Plaintiff states that the "airline's assertion that discrimination must be directed solely at one racial group to be actionable illustrates a profound misunderstanding of legal principles underpinning claims of discrimination." R 15, at p. 24. Plaintiff again does not cite to the record, so Frontier is at a loss to determine where, if at all, it made any such assertion or what context such representation was made. That said, the argument fails to address how the District Court's order dismissing Plaintiffs' discrimination claim was improper or erroneous any way. Finally, Plaintiff cites two cases in support of this argument – *Harris v. City of Santa Fe* and *Caldwell v. Colorado Dept. of Corrections*, that ostensibly involved "systemic discrimination." R 15, at p. 25. Again, Plaintiff's

citations are incorrect, and Frontier is unable to find the cases to which Plaintiff refers.

### h. "Necessity of *De Novo* Review"

In her final argument, Plaintiff states that "given the Magistrate's failure to articulate coherent findings on the objections presented, this Court is compelled to undertake a *de novo* review of the prior proceedings. R 15, at p. 25.  Frontier does not dispute the District Court's dismissal under Rule 12(b)(6) is reviewed by the Court of Appeals *de novo. See Rutila*, 2024 U.S. App. LEXIS 32048 at *2.

### CONCLUSION

For the reasons stated herein, this Court should AFFIRM the November 6, 2024, Order of the District Court (R 10-3, at pp. 98-110) and Judgment entered contemporaneously therewith (R 10-3, at p. 111).

Dated: February 25, 2025          Respectfully Submitted,

**FRONTIER AIRLINES, INC.**

By:    /s/ Brian T. Maye
One of its Attorneys

Brian T. Maye
**FITZPATRICK, HUNT
& PAGANO LLP**
10 South LaSalle Street
Suite 3400
Chicago IL 60603
Tel: (312) 728-4908
brian.maye@fitzhunt.com

Thomas Werge
**WERGE & CORBIN LAW GROUP**
1736 Race Street
Denver Colorado, 80206
(303) 586-4900

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32 (g) and 6th Cir. Rule 32(a), I hereby certify that this Brief contains less than 5000 words. The Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Times New Roman font.

/s/ Brian T. Maye

Brian T. Maye
brian.maye@fitzhunt.com
**FITZPATRICK, HUNT**
**& PAGANO LLP**
10 South LaSalle Street
Suite 3400
Chicago IL 60603
Tel: (312) 728-4908
Fax: (312) 728-4950

# ATTACHMENT A

Opinion of District Court Judge granting Frontier's Motion to Dismiss

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 23-cv-01875-GPG-KAS

KUSMIN L. AMARSINGH,

     Plaintiff,

v.

FRONTIER AIRLINES, INC.,

     Defendant.

---

## ORDER

---

Before the Court is Plaintiff Kusmin L. Amarsingh's Plaintiff Objections to Magistrate Amended Order and Recommendation (D. 33) regarding the Amended Order and Recommendation of United States Magistrate Judge (Recommendation) (D. 44) by U.S. Magistrate Judge Kathryn A. Starnella. Judge Starnella recommended that Defendant Frontier Airlines Inc.'s Motion to Dismiss with Prejudice (Motion) (D. 22) be granted for failure to state a claim and by denying supplemental jurisdiction over the state law breach of contract claim. Judge Starnella also denied Plaintiff's Request for Court to Consider Supplemental Evidence (Supplement) (D. 28) as moot in light of the recommended dismissal. For the reasons set forth below, the Court ADOPTS the Recommendation, OVERRULES Plaintiff's Objection, and GRANTS in part and DENIES in part the Motion. [1]

---

[1] The Motion's requested dismissal with prejudice, but the Recommendation recommends dismissal without prejudice (D. 33 at 13). Neither party objected to dismissal being without prejudice. This "in part" disposition merely reflects that the Court does not grant all relief sought.

## I. BACKGROUND

On June 13, 2023, Mrs. Amarsingh had a terrible experience at the airport in Philadelphia with Defendant Frontier Airlines, Inc. (Frontier) (D. 14 at ¶ 1).[2]  She did her part.  Mrs. Amarsingh checked into her flight online, arrived at the departure gate "well before the flight departure time," and waited to board (*id*. at ¶ 3). Three Frontier agents, who appeared (to Plaintiff) to be African American, were at the boarding gate (*id*., ¶¶ 3, 5).  Frontier's "lead agent, Mr. Tyron or Tyrone, announced that the flight was overbooked by approximately 10 passengers" (*id*. at ¶ 3).  Frontier's agent asked for volunteers to receive a refund and rebook their flight, and later offered an additional $800.00 for volunteers—but no one volunteered (*id*.).  Thereafter, the boarding process began by zone number (*id*. at ¶ 4).

Mrs. Amarsingh's zone was called, and she approached the gate agent (*id*. at ¶ 4).  But she had not been assigned a seat, and her boarding pass stated, "Seat: TBD" (*id*.).  The agent told Mrs. Amarsingh that they were only boarding passengers with an assigned seat (*id*. at ¶ 5).  Mrs. Amarsingh requested a seat assignment but was told that she needed to wait until after boarding (*id*.).

Mrs. Amarsingh is a United States Citizen, Army JAG Attorney[3], and "proud veteran" (D. 14 at ¶ 20).  She is also "clearly of Indian descent, and, [her] name on the passenger log, last name 'Amarsingh' is also telling [of her] descent" (*id*. at ¶ 19).  She waited with several other passengers awaiting seat assignments (id.at ¶ 5).  Based on their appearance, Mrs. Amarsingh alleges that the

---

[2] The Court draws the operative facts from the operative Complaint (Complaint) (D. 14), which is the fifth complaint filed in this case, unless otherwise indicated.

[3] She is proceeding *pro se* in this action.

others waiting assignments included a family of 8 to 10 African Americans, most of whom did not

have assigned seats (*id*.). She alleges that remaining waiting passengers were six Hispanics; one

White male; one African American male;[4] another woman of Indian descent; and a group including

an Asian woman, a child, and a White woman (*id*. at ¶¶ 6, 9).

"After all passengers with seat assignments boarded, the Frontier agent asked the party of

three, with the child passenger, if one of the adults would give up their seat" (D. 14 at ¶ 7). "The

child and the adult Asian female passenger were given seats and allowed to board" (*id*.). "Next,

the lead Frontier Agent, Tyron(e) came out from behind the Frontier Counter and approached the

party of 8–10 African American passengers and ushered them on board" (*id*.). Ms. Amarsingh

alleges that the African American agents' decisions about who to seat on the plane were based on

race and discriminatory against non-African Americans (*id*. at ¶ 19).

After these passengers had also boarded, Mrs. Amarsingh approached the agents at the

counter to inquire about a seat assignment and explain the issues related to her travel plans (D. 14

at ¶ 8). She had traveled to Philadelphia to "attend a funeral of a close family friend[] and loved

one" (*id*. at ¶ 1). She was traveling to St. Louis to "reunite with [her] minor daughter who was

missing [her] tremendously, [her] husband, and[ her] recently born Grandson, Jonah[,] who [she]

had yet to meet" (*id*. at ¶ 2). Mrs. Amarsingh was connecting through Orlando, and "there were

no other alternative / feasible flights for [her] schedule for at least a week" (*id*. at ¶ 8). There were,

however, several other flights to Florida that could have accommodated other passengers without

connections (D. 28-1). A female agent "kept interrupting" Mrs. Amarsingh by saying "'have as

---

[4] Ms. Amarsingh alleges that this individual may have been "part of [sic] African American" or "possible [sic] mixed race" (D. 14 at ¶¶ 6, 9).

seat'" "about 25 times" before switching to repeating "'I can hear you'" in a "rude and very unprofessional manner" (D. 14 at ¶ 8).

The putative passengers continued to wait without updates until the monitor updated to show that the flight had departed, 30 minutes after it had actually departed (D. 14 at ¶ 10). Now realizing that they had been bumped from the flight, the disappointed passengers approached the counter, but the agents "became irate and told everyone to sit down in a very loud voice" (*id.*). The other passenger of Indian descent, who had an international connection, approached the counter to speak with the lead agent, who "began yelling at her in what sounded like a mocking Indian accent and while pointing to each passenger in front of him asked her do you think you are more important than her, him, her . . . etc." (*id.*).

Various and sundry indignities followed in Mrs. Amarsingh's interactions with Frontier, but she does not suggest that they had racial overtones (D. 14 at ¶¶ 10–17). She never got a refund or other compensation from Frontier (*id.* at ¶ 17). The following day, Plaintiff booked a flight home to Florida with a different airline rather than attempting to get to St. Louis (*id.* at ¶ 16). She "lost approximately $1000.00 in flights, but more importantly lost the opportunity to attend [her] grandson's birth announcement and family reunion in his honor" (*id.*). Mrs. Amarsingh seeks up to "$100 million dollars for fees, expenses, and[] emotional distress caused by Frontier" (*id.* at 10, ¶ 2).

Plaintiff's Complaint raises two causes of action: breach of contract (Claim One) and racial discrimination (Claim Two) (D. 14 at 3; D. 24 at 16 (identifying claims)). Plaintiff asserts the Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over her racial discrimination claim, and she asserts diversity jurisdiction, pursuant to 28 U.S.C. § 1332, over her breach of

contract claim (D. 14 at 2).  Defendant asks the Court to dismiss both claims under Rule 12(b)(6)

because Plaintiff "fails to plead sufficient facts to support either cause of action" (D. 22 at 1).

## III.  LEGAL STANDARDS

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of

Civil Procedure 72(b)(3) requires that the district judge "determine de novo any part of the

magistrate judge's [recommendation] that has been properly objected to."  An objection to a

recommendation is properly made if it is both timely and specific.  *United States v. 2121 East 30th

St.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996).  An objection is sufficiently specific if it "enables the

district judge to focus attention on those issues—factual and legal—that are at the heart of the

parties' dispute."  *Id.* at 1059.  In conducting its review, "[t]he district judge may accept, reject, or

modify the [recommendation]; receive further evidence; or return the matter to the magistrate

judge with instructions."  Fed. R. Civ. P. 72(b)(3).

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true and interpreted in the light most favorable

to the non-moving party, to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Additionally,

the complaint must sufficiently allege facts supporting all the elements necessary to establish an

entitlement to relief under the legal theory proposed; however, a complaint may be dismissed

because it asserts a legal theory not cognizable as a matter of law.  *Forest Guardians v. Forsgren*,

478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo.

2004).  A claim is not plausible on its face "if [the allegations] are so general that they encompass

a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

## IV. ANALYSIS

Mrs. Amarsingh's Objection raises several issues with the Recommendation that fall into three categories: (1) factual issues with the Recommendation's discussion of the allegations and evidence, (2) issues with its analysis of the racial discrimination claim, and (3) a dispute over the amount in controversy.

### A. The Court Has Considered the Additional Allegations and Evidence that Mrs. Amarsingh Highlights in Her Objection.

In her Objection, Mrs. Amarsingh notes a number of allegations and supplemental evidence that she contends are not properly reflected in the Recommendation. The Court will consider this evidence.

First, Mrs. Amarsingh notes that the Recommendation did "not mention or refer to" the other "direct flight leaving the same gate less than 30 minutes direct to Orlando that could accommodate the African American passengers and that the next available flight for Plaintiff was a week later" (D. 35 at 6). She also notes her Supplement contained evidence of additional flights

to Orlando the same date, some leaving from the same gate (*id*. at 7). Generally, it would be inappropriate for the Court to consider matters outside the pleadings in relation to a motion under Rule 12(b)(6). *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). However, the flight schedule is referenced in the Complaint as supporting her claim and Frontier neither disputes its authenticity nor objects to its consideration. *Id*. (allowing consideration of matters outside the pleadings without converting a motion to dismiss into a motion for summary judgment if the document is (1) referred to in the complaint, (2) central to the plaintiff's claim, and (3) the parties do not dispute its authenticity). The Court will consider the travel schedule (D. 28-1) in its review of the Objection and has included it in the discussion below. *See* Fed. R. Civ. P. 72(b)(3).

Second, Mrs. Amarsingh notes that her allegations include her speaking with Frontier's agents about her situation before they selected additional passengers for boarding (D. 35 at 10). The Court has included this context in the background and will specifically consider it.

Third, Mrs. Amarsingh notes that the Recommendation "failed to state the complete reasons for Plaintiff's travel" because it omitted that she was in Philadelphia for a funeral of a loved one (D. 35 at 11). She acknowledges that "this fact does not have any bearing on the Defendant's discriminatory intent," she asserts that it is important context and potentially related to her "emotional damages" (*id*.). The Court has included Mrs. Amarsingh's reasons for travel in the background and will specifically consider them.

### B. The Additional Allegations and Evidence Do Not Change the Ultimate Conclusion on the Racial Discrimination Claim.

To establish a prima facie case of discrimination under 42 U.S.C. § 1981, a plaintiff must show that: (1) she is a member of a protected class; (2) the defendant intended to discriminate against her on the basis of race; and (3) the discrimination interfered with a protected activity as

defined in § 1981. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001). These prima facie elements "are flexible and are not to be applied rigidly"; however, Plaintiff still "must show that [D]efendant intentionally discriminated against her." *Id*. at 1102, 1111. In § 1981 cases, "a plaintiff bears the burden of showing that race was a but-for cause of its injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020).

Judge Starnella found that Mrs. Amarsingh had sufficiently pled the first element by alleging that she was a member of a protected, namely, a woman of Indian descent (D. 33 at 9). The Court assumes without deciding that travel on a common carrier such as Frontier pursuant to a contract of carriage is a protected activity under the third element. *See Hampton*, 247 F.3d at 1104 (holding a retail transaction could constitute a contract for the purpose of § 1981). Thus, the Court is left with only the issue of whether Mrs. Amarsingh has sufficiently alleged intentional racial discrimination.

Mrs. Amarsingh argues that the Recommendation incorrectly considered whether the passengers selected were "diverse" rather than whether she was discriminated against as a non-African American (D. 35 at 4–5). She also argues that her allegations show that Frontier did not rely on objective factors in determining who to seat and instead relied on race (*id*. at 8–9). According to her, such objective factors "typically include considerations such as the severity of hardship that would be caused by denying boarding to certain passengers, such as those who are physically handicapped or unaccompanied minors, and the fare class of the ticket purchased" (*id*. aty 12). In Mrs. Amarsingh's view, the allegations "demonstrated that if she were African American, she would have been boarded," thereby satisfying the but-for test of discrimination (*id*. at 11). Mrs. Amarsingh strenuously argues that, when her allegations are viewed in the light most

favorable to her, it is reasonable to infer that Frontier's agents were motivated by racial animus such that it was a deciding factor and it is unreasonable to infer that there was a race-neutral basis for Frontier's actions (D. 35 at 2–3, 6–9, 12–15). In her view, "Frontier used race as the deciding factor" (*id*. at 12).

There are, no doubt, allegations supporting an inference of racial discrimination, including the Frontier agents treating the non-African Americans[5] so badly, such as by speaking to the other woman of Indian descent "like the character 'Apu' from the Simpsons" (D. 35 at 9). But there are two glaring issues with Mrs. Amarsingh's argument that she does not address: (1) some of the African American passengers traveling in the group already had assigned seats and (2) the other African American man was bumped.

Mrs. Amarsingh acknowledges that the severity of hardship that would be caused by denying boarding to certain passengers is a race-neutral basis for determining who to allow to board the plane. If a group of people is traveling together, it would certainly be a hardship to split them up and force them to travel separately. Mrs. Amarsingh's alleges that some people in the group of African American passengers already had assigned seats and, therefore, were free to board the plane. In order not to split the group and cause them the hardship of traveling separately, Frontier had to give the others assigned seats or take away the assigned seats of passengers who already had them. Nowhere does Mrs. Amarsingh suggest that Frontier could or should take away already assigned seats on an overbooked flight. Regardless, that too would be a hardship. Thus,

---

[5] The bumped African American man spoke with the gate agents and left after letting Mrs. Amarsingh use her phone, before the worst of the yelling started (D. 14 at ¶ 9).

Mrs. Amarsingh's allegations show that there was a race-neutral basis dependent on hardship that could support Frontier's actions.

Frontier's agents also boarded two passengers that were not African American—the Asian woman and child.[6]  In doing so, they left an African American man behind.  If the agents were motivated by racial discrimination in favor of African Americans, this action would have been contrary to their motivation.  Indeed, this is fatal to Mrs. Amarsingh's argument that, if she were African American, she would have been allowed to board.  He was African American and was not allowed to board.  Instead, they allowed two non-African American passengers traveling together to remain together, albeit by one from their alleged group voluntarily agreeing to remain behind. If race were truly the deciding factor, Frontier's agents would have seated the African American. Instead, they bumped him.

Thus, Mrs. Amarsingh's argument that it is unreasonable to infer that Frontier had a non-discriminatory reason for its actions and argument that Frontier did not use any permissible criteria for seating passengers on the overbooked flight is belied by her own allegations.  *See Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1036 (D. Ariz. 2021), *aff'd*, No. 21-15326, 2022 WL 474170 (9th Cir. Feb. 16, 2022) (dismissing complaint for failure to state racial discrimination claim where the "reasonable inference to be drawn from these allegations is that Defendants were motivated, in part, by their previous encounters with Dr. Sharifi, not his race").  The allegations in the

---

[6] Mrs. Amarsingh notes that, "[i]n this instance, the Defendant did exercise a non-race-based determination because there was an unaccompanied minor," and argues that it was therefore not relevant (D. 35).  This argument is based in an apparent misunderstanding.  An "unaccompanied minor" is a young child traveling without a legal guardian or adult.  *See, e.g., When Kids Fly Alone*, U.S. Dept. of Transportation, https://www.transportation.gov/sites/dot.gov/files/docs/Kids_Fly_Alone.pdf.  The specific age categories vary by airline.  *Id.*

Complaint show that the flight was overbooked, and it is plain from the alleged circumstances that there were legitimate permissible criteria for the selection of passengers allowed to board. Frontier's agents kept groups together to the extent possible and, in doing so, left an African American off the plane contrary to Mrs. Amarsingh's assertion that race was the deciding factor.

Implicit in Mrs. Amarsingh's argument is an assumption based on the facts available to her that her reasons for being on the plane were more compelling than those of the passengers allowed to board. For example, her insistence that the group of African American passengers could have taken a later flight is, in effect if not explicitly, an argument that it would be less of a hardship for them to be left off the plane that it was for her. Perhaps this is true, but none of the authority that Mrs. Amarsingh cites establishes that an airline must take the *most* hard-up passengers or use any particular criteria. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 294 (1976) (discussing regulations requiring "each airline to establish priority rules for boarding passengers" to determine who is bumped from overbooked flights). Under binding precedent that this Court must follow, any criteria that is not but-for discrimination based on race is sufficient to avoid § 1981 liability. *Comcast Corp.,* 589 U.S. at 333.

With this context, the fact that she spoke with the agents about her situation before the additional boarders were selected has relevance only to whether the agents were aware of the potential hardship to her. Consistent with the allegations, the Court has assumed the agents knew. Yet, even if they knew of her substantial hardship, it does not follow that they did not use any legitimate criteria for choosing among the passengers without seat assignments. Most importantly, because Frontier's agents bumped an African American passenger, they *cannot* have used the racial criteria that Mrs. Amarsingh asserts that they used. What Mrs. Amarsingh alleges happened

11

is absolutely awful nonetheless, but her allegations are not sufficient to support a § 1981 racial discrimination claim under governing precedents. Accordingly, the Court will dismiss Mrs. Amarsingh's second claim for racial discrimination.

### C. The Court Will Also Dismiss the Breach of Contract Claim.

Judge Starnella found that Mrs. Amarsingh had failed to allege sufficient damages to support diversity jurisdiction over her contract claim because emotional damages are not available for such claims in the absence of allegations of willful and wanton breach (D. 33 at 11 (citing *Brossia v. Rick Constr., L.T.D. Liab. Co.*, 81 P.3d 1126, 1131 (Colo. App. 2003)). This limitation applies to the additional emotional impact related to Mrs. Amarsingh traveling for a funeral such that it does not affect the amount in controversy.

Mrs. Amarsingh alleges that she intends to join all known parties to meet the $75,000.00 minimum amount in controversy for diversity jurisdiction and "respectfully requests that the Court grant supplemental jurisdiction or view the Contract Claim as based on federal question jurisdiction" (D. 35 at 14).

Mrs. Amarsingh's intention to join the other bumped passengers does not provide a non-speculative basis to find potential diversity jurisdiction. There is no reason to believe that these passengers would agree to join as plaintiffs.[7] Further, Frontier is a Colorado airline and, if any of the bumped passengers are citizens of Colorado, it would destroy the complete diversity necessary for jurisdiction. *See* 28 U.S.C. § 1332. The Court cannot "view" the contract claim as a federal claim without a federal question. *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003)

---

[7] In particular, there is no reason to believe the bumped African American man would join claims that he was discriminated against based on race.

(discussing exceptions to the well-pleaded complaint rule). The circumstances under which the Court should exercise supplemental jurisdiction in the absence of a federal question are extremely limited, and such circumstances are not present here. *See Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998). Under 28 U.S.C. § 1367(c)(3), when all the "federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Id.* Accordingly, the Court will also dismiss Mrs. Amarsingh's first claim for breach of contract.

## V. CONCLUSION

Accordingly, this Court ADOPTS Judge Starnella's Recommendation (D. 33) and OVERRULES Plaintiff's Objection consistent with the above analysis. It is ORDERED that Defendant Frontier Airlines Inc.'s Motion to Dismiss with Prejudice (D. 22) is GRANTED in part and DENIED in part. It is FURTHER ORDERED that all claims are DISMISSED without prejudice. It is FURTHER ORDERED that the Clerk of the Court shall close this case.

DATED September 24, 2024.

BY THE COURT:

Gordon P. Gallagher
United States District Judge

# ATTACHMENT B

# Judgment Entered by the District Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher**

Civil Action No. 23-cv-01875-GPG-KAS

KUSMIN L. AMARSINGH,

      Plaintiff,

v.

FRONTIER AIRLINES, INC.,

      Defendant.

---

### DEFAULT JUDGMENT

---

      In accordance with the orders filed during the pendency of this case, and pursuant to Fed.

R. Civ. P. 58(a), the following Final Judgment is hereby entered.

      Pursuant to the [D. 38] Order entered by Judge Gordon P. Gallagher on September 24,

2024, it is

      ORDERED that the Amended Recommendation of the United States Magistrate Judge

[D. 33] is AFFIRMED and ADOPTED as an Order of the Court. It is

      FURTHER ORDERED that Plaintiff's Objection is OVERRULED. It is

      FURTHER ORDERED that Defendant Frontier Airlines Inc.'s Motion to Dismiss with

Prejudice [D. 22] is GRANTED in Part and Denied in Part. It is

      FURTHER ORDERED that all claims are DISMISSED without Prejudice.

This case will be closed.

Dated at Grand Junction, Colorado this 24th day of September 2024.

FOR THE COURT:
JEFFREY P. COLWELL, CLERK

By:   s/D. Clement
      D. Clement
      Deputy Clerk

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2025, I electronically filed the foregoing

Brief of Defendant-Appellant with the Clerk of the Court for the United States Court

of Appeals for the Tenth Circuit by using the appellate CM/EFC system. I certify

that all participants in the case are registered with the CM/EFC systems and that

service will be accomplished via the appellate CM/ECF system.

<u>/s/ Brian T. Maye</u>

Brian T. Maye
**FITZPATRICK, HUNT
& PAGANO LLP**
10 South LaSalle Street
Suite 3400
Chicago IL 60603
Tel: (312) 728-4908
Fax: (312) 728-4950
brian.maye@fitzhunt.com